UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X
                                          :

| | |
|---|---|
| JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC | : **NOTICE OF REMOVAL** |
| | : |
| | : Removed from: |
| Plaintiffs, | : Supreme Court of the State of |
| | : New York, County of New York |
| -against- | : |
| | : Index No. 652329/2024 |
| GEORGE WEISS, | : |
| | : |
| Defendant. | : |
| | : |

------------------------------------------------- X

       **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant George Weiss, by and through his undersigned counsel, hereby removes the action entitled *Jefferies Strategic Investments, LLC and Leucadia Asset Management Holdings LLC*, Index No. 652329/2024 (the "Action") from the Supreme Court of New York, County of New York (the "State Court") to the United States District Court for the Southern District of New York, and states as follows:

## BACKGROUND

### The Action and Service

       1.      On May 6, 2024, Plaintiffs Jefferies Strategic Investments, LLC ("JSI") and Leucadia Asset Management Holdings LLC ("LAMH") commenced the Action against Defendant George Weiss ("Weiss") by filing a summons and complaint in New York Supreme Court. Copies of the summons and complaint in the Action are attached hereto as Exhibit A. In the complaint, Plaintiffs assert two causes of action for breach of contract, alleging that Weiss breached a forbearance agreement. The complaint seeks damages totaling $101,295,570 for alleged breach of a performance guarantee, and $470,379.98 for breach of an alleged spending cap.

2.     Weiss contends that he did not breach the forbearance agreement, and that the express terms of the forbearance agreement make clear the he was not guaranteeing payment of Jefferies Debt.  Nor was there a breach of the alleged spending cap.

3.      In addition, the forbearance agreement is being challenged in an adversary proceeding on the ground that it is unenforceable because it constitutes a preference under bankruptcy law.  The bankruptcy case is In re Weiss Multi-Strategy Fund Advisors LLC, *et al.*, Case No. 24-10743 (MG) (Jointly Administered).

4.     The summons and complaint have not yet been served on Weiss.

**BASIS FOR REMOVAL**

5.     Weiss removes this case based on diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(c)(1), 1441(a), and 1446.

6.     Plaintiff JSI is a limited liability company organized under the laws of Delaware with its principal place of business located in New York.

7.     Plaintiff LAMH is a limited liability company organized under the laws of Delaware with its principal place of business located in New York.

8.     Weiss is an individual who resides in and is domiciled in Florida.

9.     Although the complaint does not plead the place(s) of citizenship of the members of Plaintiffs JSI and LAMH,[1] the summons states that "Plaintiffs reside in [New York] County." *See* Exhibit A.  Moreover, upon information and belief, based on publicly available documents, each Plaintiff is a citizen of New York because the sole member of each of these limited liability companies – Jefferies Financial Group Inc. ("JFG") – is a citizen of New York.

---

[1]     A limited liability company "takes the citizenship of all of its members." *Platinum-Montaur Life Sciences, LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 615 (2d Cir. 2019).

10.     Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." Upon information and belief, JFG is incorporated in New York and its principal place of business is in New York. Therefore, insofar as JFG is the sole member of both JSI and LAMH, each Plaintiff is a citizen of New York.

11.     "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Van Buskirk v. United Group of Companies, Inc.,* 935 F.3d 49, 53 (2d Cir. 2019). Weiss is domiciled in Florida.

12.     Accordingly, because Plaintiffs are citizens of New York and Defendant is a citizen of Florida, there is complete diversity of citizenship between Plaintiffs and Defendant.

13.     Plaintiffs claim damages of $101,295,570.00 in their first cause of action and $470,370.98 in their second cause of action. Therefore, the $75,000 jurisdictional threshold is satisfied. 28 U.S.C. § 1346(c)(2).

14.     Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1332.

15.     As Weiss has not yet been served, this Notice of Removal is timely filed. 28 U.S.C. § 1446(b)(1) ("[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based"). The thirty period does not begin to run until service. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999); *Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 65 (2d Cir. 2012); *Creative Kids Far East Inc. v. Griffin*, No. 15-cv-06027, 2016 WL 8710479, at *3 (S.D.N.Y. Jan. 22, 2016) (for purposes of § 1446 "one becomes a party officially, and is required to take action in that

capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend") (quoting *Murphy*, 526 U.S. at 350).

16.     This action is being removed "to the district court of the United States for the district and division embracing the place where such action is pending," pursuant to 28 U.S.C. § 1441(a).  The United States District Court for the Southern District of New York embraces New York County where the action is pending.  28 U.S.C. § 112(b).

17.     No previous application has been made for the removal requested herein.

18.     Written notice of the filing of this Notice of Removal will be served upon Plaintiffs, and a copy of this Notice of Removal will be filed with the Clerk of the Supreme Court of New York, County of New York, in accordance with 28 U.S.C. § 1446(d).

19.     By filing this Notice of Removal, Defendant does not waive any defenses available to him and does not admit any allegations in Plaintiffs' complaint.

WHEREFORE, Defendant Weiss respectfully gives notice that the above-captioned civil action pending in the Supreme Court of the State of New York, County of New York, is removed to this Court, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

Dated: New York, New York
        June 7, 2024

KAPLAN RICE LLP


By:  */s/Howard J. Kaplan*
        Howard J. Kaplan
        Michelle A. Rice

142 West 57th Street
Suite 4A
New York, NY 10019
Tel. (212) 235-0300
Fax (212) 235-0301
hkaplan@kaplanrice.com
mrice@kaplanrice.com


OLSHAN FROME WOLOSKY LLP
Brian A. Katz, Esq.
1325 Avenue of the Americas
New York, New York 10019
Tel.  (212) 451-2300
Fax  (212) 451-2222
bkatz@olshanlaw.com

*Attorneys for Defendant George Weiss*

# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC, | Index No. _____ |
| Plaintiffs, | |
| -against- | **SUMMONS** |
| GEORGE WEISS, | |
| Defendant. | |

**TO THE ABOVE-NAMED DEFENDANT:**

    **YOU ARE HEREBY SUMMONED** to appear in this action and to serve a copy of your answer to the complaint in this action upon the undersigned attorneys for plaintiffs Jefferies Strategic Investments, LLC and Leucadia Asset Management Holdings LLC ("Plaintiffs") within twenty (20) days after service of this summons, exclusive of the day of service, or within thirty (30) days after service is completed if the summons is not personally delivered to you within the State of New York.  In case of your failure to answer or appear, judgment will be taken against you by default for the relief demanded in the complaint.

    Plaintiffs designate New York County as the place of trial pursuant to: (i) C.P.L.R. § 501 because defendant consented to venue in this Court pursuant to the agreement that is at issue in this case; and (ii) C.P.L.R. § 503(a) because Plaintiffs reside in this County and a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in this County.

*[Remainder of Page Intentionally Blank – Signature Page Follows]*

1

Dated: New York, New York
        May 6, 2024

HERBERT SMITH FREEHILLS
  NEW YORK LLP
By: /s/ *Scott S. Balber*

    Scott S. Balber
    Michael P. Jones
    Daniel Gomez
450 Lexington Avenue
New York, New York 10017
Telephone:  (917) 542-7600
Facsimile:   (917) 542-7601
Email:        Scott.Balber@hsf.com
             Michael.Jones@hsf.com
             Daniel.Gomez@hsf.com

*Attorneys for Plaintiffs*
*Jefferies Strategic Investments, LLC and*
*Leucadia Asset Management Holdings LLC*

2

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

JEFFERIES STRATEGIC INVESTMENTS, LLC
and LEUCADIA ASSET MANAGEMENT
HOLDINGS LLC,

                Plaintiffs,

        -against-

GEORGE WEISS,

                Defendant.

Index No. _____

**COMPLAINT**

Plaintiffs Jefferies Strategic Investments, LLC ("JSI") and Leucadia Asset Management Holdings LLC ("LAM Holdings," and with JSI, "Plaintiffs"), by and through their undersigned counsel, allege against defendant George Weiss as follows:

## PRELIMINARY STATEMENT

1.      This case arises from defendant George Weiss' failure to pay more than $100 million worth of debts that are owed by a series of companies that he owns and controls (the "George Weiss Companies"), and which he personally guaranteed.

2.      The George Weiss Companies' inability to pay Plaintiffs has been exacerbated by Weiss' use of the George Weiss Companies as a personal piggy bank, diverting company funds (which should have been used to pay the amounts owed to Plaintiffs) to pay for private air travel and personal litigation matters, and to line the pockets of members of his inner circle.

3.      In an extreme exercise of sufferance and good faith, Plaintiffs were willing to overlook these transgressions in the dashed hopes that Weiss' misconduct would cease, and that Weiss would assist—as he promised—the George Weiss Companies in repaying the debts owed to Plaintiffs.

Case 1:24-cv-04369   Document 1   Filed 06/07/24   Page 10 of 27

4.      Indeed, Weiss' transgressions were substantially responsible for the George Weiss Companies' insolvency.  Plaintiffs were willing to work with and support Weiss and the George Weiss Companies so they could raise capital that would enable them to pay off their debts.  To that end, the parties entered into a formal forbearance agreement that included, among other things, a "Deferral Condition" that required the George Weiss Companies to implement a compensation plan with cash deferral and equity grants to preserve much-needed cash and capital.

5.      By September 2022, the Debtors' financial condition continued to deteriorate, and Plaintiffs had the right to call for the immediate payment of the debts owed to them.  Yet Plaintiffs again agreed to forbear from exercising their rights until July 2023.  Weiss once again promised that the George Weiss Companies would continue to abide by the Deferral Condition and its restrictions on employee compensation.

6.      Finally, by the end of 2023, as the Debtors' financial position continued to deteriorate, Plaintiffs demanded full repayment.

7.      During this entire time—and, in particular, at the end of 2023 and the beginning of 2024—Weiss repeatedly informed Plaintiffs that he was in the process of raising additional capital that could have revived the George Weiss Companies and, in turn, assisted in the repayment of the debts owed to Plaintiffs.  In keeping with their good-faith accommodation, Plaintiffs agreed to forebear on their right to take action to recover the amounts they were owed to give Weiss one more chance.  Again, Weiss' results failed to match his words.

8.      Throughout all of the George Weiss Companies' breaches and liquidity crunches, including when Weiss chose to liquidate his fund and close down his business, Weiss repeatedly

confirmed that Plaintiffs have acted appropriately in their dealings with him and the George Weiss Companies.

9.      Weiss, however, did not return that favor.  Instead, he abused Plaintiffs' good faith, including during the George Weiss Companies' insolvency and recent liquidation.  In what can only be viewed as an exercise in subterfuge or worse, Weiss induced Plaintiffs to forebear on their rights to collect more than $100 million by personally guaranteeing the George Weiss Companies' existing debts to Plaintiffs.  Yet, after inducing Plaintiffs' forbearance, Weiss refused to repay even a single penny that he owes to Plaintiffs.

10.     Accordingly, Plaintiffs bring this action to collect damages from Weiss for his failure to perform under the contractual guarantee.

## PARTIES

11.     JSI is a limited liability company organized and existing under the laws of Delaware with its principal place of business located at 520 Madison Avenue, New York, New York, 10022.

12.     LAM Holdings is a limited liability company organized and existing under the laws of Delaware with its principal place of business located at 520 Madison Avenue, New York, New York, 10022.

13.     On information and belief, Weiss is the founder and Chief Executive Officer of the George Weiss Companies.

## JURISDICTION AND VENUE

14.     This Court may exercise personal jurisdiction over Weiss pursuant to C.P.L.R. § 302(a)(1) because he transacted business within the State of New York by entering into the February Forbearance Agreement (defined below) with JSI and LAM Holdings, limited liability companies with their principal places of business in New York.  Under Section 10(h) of the

3

February Forbearance Agreement, Weiss agreed that "any dispute arising out of this Agreement shall be subject to the exclusive jurisdiction of the New York courts and irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in (i) any state court in the State of New York or (ii) any federal court in the State of New York, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum."

15.     Venue is proper pursuant to C.P.L.R. § 302(a) because:  (i) Plaintiffs are limited liability companies that reside in New York County; and (ii) a substantial part of the events giving rise to Plaintiffs' claims, including Weiss' execution of the February Forbearance Agreement, occurred in New York.

## **FACTS**

### I.     **GWA Executes the Note Purchase Agreements and Receives $53 Million in Loans**

16.     On or about December 3, 2019, JFG Funding LLC entered into a Note Purchase Agreement with GWA LLC ("GWA") and Weiss Multi-Strategy Advisers LLC ("WMSA") (the "2019 Note Purchase Agreement").

17.     Pursuant to Section 2 of the 2019 Note Purchase Agreement, GWA issued $50 million in notes (each a "Note"), comprised of:  (i) a $31,250,000.00 Note issued on December 3, 2019; and (ii) a $18,750,000.00 Note issued on January 13, 2020.

18.     In exchange for the Notes, JFG Funding LLC loaned GWA $50,000,000.00.

19.     JFG Funding LLC subsequently assigned its interest in the 2019 Note Purchase Agreement and the Notes to JSI, which was acknowledged by GWA.

20.     Separately, on September 21, 2022, GWA and JSI entered into an additional Note Purchase Agreement (the "2022 Note Purchase Agreement").  That same day, and pursuant to

4

the 2022 Note Purchase Agreement, GWA issued and delivered to JSI a Note in the principal

amount of $3,000,000.00.  In exchange for the Note, JSI loaned GWA $3,000,000.00.

21.     Both the 2019 Note Purchase Agreement and 2022 Note Purchase Agreement

contain several provisions that are relevant to this action.  Because the provisions are largely

similar, for ease of reference, this Complaint refers to the "Note Purchase Agreement," which is

the 2019 Note Purchase Agreement.

22.     *First*, the Note Purchase Agreement contains redemption provisions.  Section 7.2

of the Note Purchase Agreement provides JSI (and GWA) with "the right to redeem each Note,

in whole but not in part, on each applicable Optional Redemption Date," which is defined as "the

last calendar day of each month, beginning the third anniversary of the" relevant closing, "by at

least 10 calendar days' prior written notice to the other party prior to the applicable Optional

Redemption Date . . . ."  Upon exercise of the option to redeem the Notes, the amounts due under

the Notes "become due and payable on the applicable Optional Redemption Date . . . ."  The

"Optional Redemption Date" is defined to be the last calendar day of each month beginning on

the third anniversary of the December 2019 and the January 2020 Note issuances.  Or, in other

words, JSI had the right to redeem the Notes at its option beginning in December 2022 and

January 2023, respectively.[1]

23.     Separately, Section 7.3 of the Note Purchase Agreement provides JSI with the

right to redeem the Notes if GWA's members' equity in GWA dropped to less than $10 million

(a "Trigger Redemption").

---

[1]     The 2022 Note Purchase Agreement defines "Optional Redemption Date" as "monthly,
on the last calendar day of each month."  Accordingly, JSI had the right to redeem that Note,
monthly, at its discretion.

24.    *Second*, the Note Purchase Agreement sets forth specific "Events of Default" which included, *inter alia*, GWA's failure to pay the amounts due at redemption.

25.    If an Event of Default occurs under the Note Purchase Agreement, "the Notes . . . automatically become immediately due and payable" and "any holder of the Notes may at any time at its option, by notice to the Company, declare the Notes to be immediately due and payable."

26.    *Third*, the Note Purchase Agreement provides that JSI shall be entitled to recover "all costs and expenses of such holder incurred in any enforcement or collection . . . including reasonable attorneys' fees, expenses and disbursements."

## II.    GWA Enters into the Strategic Relationship Agreement

27.    Separate and apart from the loans made by JSI to GWA, on or about May 1, 2018, LAM Holding LLC, the predecessor to LAM Holdings, and GWA entered into a Strategic Relationship Agreement.

28.    Under the Strategic Relationship Agreement, Leucadia Funding LLC, a predecessor of JSI, opened an investment account to be managed by WMSA.  In return, GWA agreed to a two-tiered mechanism for revenue and profit-sharing.

29.    *First*, within 30 days of April 30, 2019, GWA was required to share a portion of the profits that it, or its subsidiaries, recognized between May 1, 2018 and April 30, 2019 (the "Profit Share Period").

30.    *Second,* upon the expiration of the Profit Share Period, GWA agreed to share—on a quarterly basis—a portion of the revenues that it, or its subsidiaries, generated.

31.    In addition, under Section 5(b) of the Strategic Relationship Agreement, GWA agreed to "indemnify and hold harmless LAM and each of its Affiliates and their respective

6

directors, officers, employees, agents and representatives . . . to the fullest extent permitted by

law from and against any and all costs, losses, Claims, Taxes incurred, damages, liabilities and

expenses, including reasonable costs of investigation and defense, and reasonable attorneys' fees

and expenses . . . incurred by the Indemnified Party as a result of, in connection with, or related

to this Agreement . . . ."

### III.    The George Weiss Companies Breach the Agreements

32.     After Plaintiffs provided GWA with millions of dollars of capital, GWA's

business floundered, all exacerbated by Weiss' apparent mismanagement of GWA's business.

33.     For example, the George Weiss Companies' financial statements indicate that

between 2020 and 2023, the George Weiss Companies spent more than $7.3 million dollars on

"transportation expense[s]." Upon information and belief, the expenses were largely attributed

to funding private air travel for Weiss on a Dassault Falcon private aircraft owned and operated

by the George Weiss Companies through a subsidiary company, Weiss Special Operations LLC.

Upon information and belief, Weiss utilized this aircraft for personal travel.

34.     Similarly, upon information and belief, Weiss has also used, or directed the use

of, monies extracted from the George Weiss Companies to fund litigation expenses in a personal

lawsuit that he commenced against the Commissioner of the United States Internal Revenue

Service. The George Weiss Companies' financial statements indicate that between 2020 and

2023, more than $31.4 million dollars was spent on "consultation and professional fees," a

significant portion of which, upon knowledge and belief, were attributable to Weiss' personal

lawsuit.

35.     As a result of Weiss' mismanagement of GWA, in late 2021, the value of GWA's

members' equity fell to below $10 million, which authorized JSI to redeem the Notes. Instead of

exercising its rights to redeem the Notes, and as a purely good faith accommodation to Weiss and the George Weiss Companies, JSI entered into a forbearance agreement.

36.     As consideration for entering into the forbearance agreement, GWA also entered into an amendment to the Strategic Relationship Agreement.  In that amendment, GWA agreed to abide by a "Deferral Condition" that required GWA to implement and maintain a compensation plan with cash deferral and equity grants.  Upon information and belief, GWA failed to maintain and consistently abide by the compensation plan that it implemented.

37.     By September 1, 2022, it became apparent that GWA's members would not be able to secure the capital required to avoid triggering JSI's right of redemption.  Nevertheless, JSI again accommodated Weiss and the George Weiss Companies, and entered into an additional forbearance agreement with GWA, pursuant to which it agreed to not exercise its Trigger Redemption right until July 1, 2023.

38.     Having failed to secure the capital required to avoid JSI's right of redemption by July 1, 2023, however, GWA remained in breach of the Note Purchase Agreement.  Once again, JSI accommodated Weiss and the George Weiss Companies and entered into a forbearance agreement.  This third forbearance agreement provided that JSI would not exercise its Trigger Redemption right until September 1, 2024.

39.     In each of the forbearance agreements, JSI left open its ability to exercise its option to redeem the Notes pursuant to Section 7.2 of the Note Purchase Agreement.

40.     Plaintiffs also entered into multiple amendments to the Strategic Relationship Agreement, which deferred GWA's obligation to make payments as long as it abided by the "Deferral Condition."

## IV.   GWA Fails to Repay the Amounts Due Under the Notes

41.     On or about December 21, 2023, JSI exercised its option to redeem the full amounts owed under the Notes.

42.     Pursuant to the Note Purchase Agreements, the full amount owed under the Notes, $54,223,111.00, became due and owing on December 31, 2023.  To date, GWA has failed to pay the full amount that it owes under the Notes.

43.     That failure constituted a separate Event of Default in breach of GWA's obligations under the Notes.  Because of the numerous Events of Default, JSI is also entitled to default interest.  As of March 31, 2024, GWA owed JSI a total of $32,411,661.00 in interest.

44.     On February 15, 2024, GWA repaid $3 million that it owed under the Notes.

45.     However, at least $50,393,178.00 remains outstanding under the Notes as of the date of this filing.

## V.   The George Weiss Companies Make
## Nearly $30 Million In Improper Transfers

46.     As a result of Weiss' mismanagement, the George Weiss Companies have long been insolvent, as is recognized by their own internal documents.

47.     One such document indicates that, by the end of year 2021, the George Weiss Companies had a total net equity value of *negative* $15.9 million dollars.  Similarly, the George Weiss Companies' financial statements for the fiscal year ending December 31, 2022 indicate that the George Weiss Companies had a total net equity value of *negative* $63.8 million dollars.

48.     Over the years, the George Weiss Companies' insolvency has worsened.  A preliminary financial statement prepared by the George Weiss Companies states that as of December 31, 2023, the George Weiss Companies had a total adjusted equity value of *negative*

Case 1:24-cv-04369   Document 1   Filed 06/07/24   Page 18 of 27

$110.8 million dollars.  Moreover, the George Weiss Companies' most recent cash flow projections reflect that, as of February 1, 2024, they had only $39.8 million in cash on hand.

49.     In late 2023, Weiss represented that he was pursuing a new "strategic relationship" with a large, institutional multi-fund manager.  Weiss claimed that this new relationship would result in an infusion of capital to the George Weiss Companies, which would be used to pay down the debt owed to Plaintiffs.

50.     Consistent with their past practice of accommodating Weiss and the George Weiss Companies, Plaintiffs elected not to immediately pursue all remedies available to them. However, in light of the George Weiss Companies' insolvency, Plaintiffs did ask for assurances that the George Weiss Companies would not make unnecessary payments while insolvent, or otherwise prioritize the payment of other creditors above the debts owed to Plaintiffs, until a transaction could be concluded with the multi-fund manager.  That proposed transaction never materialized.

51.     In early 2024, Plaintiffs received information indicating that the George Weiss Companies intended to pay, at the end of February 2024, more than $30 million, comprised of $2.7 million in "management fees," $8 million in staff and management "bonuses," and $19.6 million in "strategy payouts," notwithstanding that the George Weiss Companies:  (i) owed JSI approximately $50.3 million under the Notes; and (ii) were hopelessly insolvent.

52.     In response to Plaintiffs' concerns, Edwards, WMSA's Deputy Chief Investment Officer, repeatedly represented to Plaintiffs that the George Weiss Companies would not make those payments until the end of February 2024, so long as Plaintiffs agreed not to take immediate action to enforce their rights.

53.     Based upon the representations made by Michael Edwards that the George Weiss Companies would not make those payments until late February 2024, on February 2, 2024, Plaintiffs sent the George Weiss Companies a draft forbearance agreement.

54.     The draft forbearance agreement prohibited the George Weiss Companies from paying, granting, or transferring bonus compensation to any of their employees.

55.     Upon receiving that draft, Jeffrey Dillabough, WMSA's General Counsel, sent an email to JSI assuring that George Weiss Companies were "operating the business in the normal course."

56.     Contrary to Edwards' and Dillabough's representations, the George Weiss Companies were not operating in the "normal course."  Instead, the George Weiss Companies were liquidating assets under their control so that they could then fund excessive and improper bonus payments.

57.     On February 8, 2024, being fully informed that Plaintiffs were in good faith refraining from enforcing their rights against the George Weiss Companies in exchange for their agreement to not pay unnecessary and improper compensation, the George Weiss Companies surreptitiously—that is, without any notice to or discussion with Plaintiffs they had induced to forbear—made nearly $30 million in bonus payments (the "Payouts") to 86 employees of the George Weiss Companies, all ahead of schedule and in complete disregard of their representations and contractual obligations to Plaintiffs.

58.     Some, if not all, of the Payouts were inconsistent with the George Weiss Companies' deferred cash compensation plan and, in turn, represent a failure to abide by the "Deferral Condition."  Accordingly, all amounts owed under the Strategic Relationship Agreement became immediately due and payable within five business days.

59. Under the revenue sharing provisions of the Strategic Relationship Agreement, GWA owes LAM Holdings $50,902,392.00 of revenue sharing fees.

60. GWA has failed to pay the amounts that it owes to LAM Holdings under the Strategic Relationship Agreement.

## VI. Weiss Personally Guarantees the George Weiss Companies' Performance

61. Following the improper bonus payments, Weiss again pleaded with Plaintiffs not to exercise their rights.

62. Accordingly, on February 12, 2024, Weiss executed a further forbearance agreement (the "February Forbearance Agreement").

63. Pursuant to Section 1 of the February Forbearance Agreement, the George Weiss Companies and Weiss agreed that:

> [P]ursuant to the terms of the Note Purchase Agreements, the Notes and the Redemption Notice, GWA is past due with respect to the following payment obligations to JSI (each calculated as of February 29, 2024): (i) $18,432,823.54 on the Note dated December 3, 2019, (ii) $27,921,516.09 on the Note dated January 13, 2020 and (iii) $3,478,222.39 on the Note dated September 21, 2022 (collectively, the 'Past Due Obligations'). Each party further agrees that the Past Due Obligations are owed without defense, set-off or counter claim, and are past due.

64. Pursuant to Section 2(c) of the February Forbearance Agreement, the George Weiss Companies agreed that "none of them will . . . pay, grant or transfer (directly or indirectly) to any other person or entity an aggregate amount in excess of $10,000 on any day, except for payments made in the course of normal course trading consistent with past practices (*e.g.*, payments to prime and executing brokers, payments against delivery and payments to ISDA counterparties)," and that they would not "take any other action or fail to take any action that would be reasonably expected to reduce the net asset value of the Weiss Parties or their subsidiaries, in each case without the

Case 1:24-cv-04369   Document 1   Filed 06/07/24   Page 21 of 27

prior written consent of the Jefferies Parties, which may be granted or withheld in their sole and absolute discretion."

65.     Section 3(a) of the February Forbearance Agreement further provides that each of the George Weiss Companies "(other than GWA) . . . irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other [of the George Weiss Companies] when due (whether at the stated maturity, by acceleration or otherwise) of the Guaranteed Obligations (as herein defined)."

66.     The Guaranteed Obligations included "all the obligations of GWA and each other [of the George Weiss Companies] arising under any Note Purchase Agreement, the Notes, the [Strategic Relationship] Agreement and this Agreement, and any loss, damage, penalty, action, judgment, suit, cost, expense, disbursement, liability, claim or other obligation, incurred by or behalf of [JSI and LAM Holdings] (including but not limited to reasonable out-of-pocket attorneys' fees and costs) arising out or, relating to or in connection with any Note Purchase Agreement, any Note, the [Strategic Relationship] Agreement, this Agreement or the transaction contemplated thereby."

67.     To induce Plaintiffs to enter into the February Forbearance Agreement, Weiss personally guaranteed the performance of the Weiss Parties under the February Forbearance Agreement, the Note Purchase Agreements, the Notes, and the Strategic Relationship Agreement.

68.     Specifically, in Section 9 of the February Forbearance Agreement, Weiss expressly agreed that he "unconditionally and irrevocably guaranteed to [LAM Holdings, JSI, and their affiliates] the accuracy of the representations made by, and the performance of the agreements of, the [George Weiss Companies] hereunder."  This performance guarantee included the George

Weiss Companies' agreements (i) that $54,528,115.78 was due and owing under the Note Purchase Agreements, and the Notes, and (ii) to guarantee any amounts owed under the Note Purchase Agreements, the Notes, and the Strategic Relationship Agreement. Weiss also agreed that he would "take all actions within his control, including by exercising all of his voting, governance, management and other rights and powers with respect to each of the other [George Weiss Companies], any of their subsidiaries and any of his personal or his family's trusts to cause such persons to comply with the terms of this Agreement."

## VII.  Weiss Breaches His Personal Guarantee

69.  Despite Plaintiffs' good-faith effort to resolve the matter, Weiss again abused Plaintiffs' goodwill and breached his obligations under the February Forbearance Agreement in at least three ways.

70.  *First*, Weiss breached his contractual guarantee to ensure that the George Weiss Companies paid the amounts owed under the Notes. Specifically, under Section 9 of the February Forbearance Agreement, Weiss contractually guaranteed the "performance of the agreements" made by the George Weiss Companies, which includes: (i) the George Weiss Companies' agreement that $54,528,115.78, was due and owing under the Note Purchase Agreements and the Notes; and (ii) the George Weiss Companies' agreement to pay all amounts owed under the Note Purchase Agreements and the Notes.

71.  Despite Plaintiffs' demands that Weiss fulfil the George Weiss Companies' obligations to Plaintiffs, including by paying the amounts currently owed under the Notes, Weiss has taken no action to do so. To the contrary, for weeks Weiss led Plaintiffs to believe that there would be a monetary resolution of this matter. With the benefit of hindsight, Weiss' representations were merely further subterfuge to buy time for legal machinations.

72.     *Second*, Weiss breached his contractual guarantee to pay the amounts owed under the Strategic Relationship Agreement.  In particular, the Payouts were cash payments to the George Weiss Companies' employees that were, at least in part, inconsistent with the "Deferral Condition," which required the George Weiss Companies to implement a compensation plan with cash deferral and equity grants.

73.     Accordingly, by making the Payouts, the George Weiss Companies breached the amendments to the Strategic Relationship Agreement, which required that GWA comply with the "Deferral Condition" by maintaining and implementing a compensation plan with cash deferral and equity grants.  In turn, the $50,597,604.00 owed under the Strategic Relationship Agreement became due immediately.

74.     Under Section Section 9 of the February Forbearance Agreement, Weiss expressly guaranteed the George Weiss Companies' agreement to pay all amounts owed under the Strategic Relationship Agreement.  Yet, notwithstanding the George Weiss Companies' failure to repay the $50,597,604.00 owed under the Strategic Relationship Agreement, and Weiss' personal guarantee of the George Weiss Companies' performance, Weiss has refused to pay any of the $50,902,392.00 owed under the Strategic Relationship Agreement.

75.     *Third*, the George Weiss Companies breached the February Forbearance Agreement by making additional unauthorized payments without JSI's authorization.

76.     In particular, on or about March 1, 2024, the George Weiss Companies made four payments, each worth more than $10,000.00 (for a total of nearly $500,000.00) without providing any notice to JSI.

15

77.     Upon information and belief, Weiss directed the George Weiss Companies to make these payments, in breach of his obligation to "take all actions within his control . . . to cause [the George Weiss Companies] to comply with the terms of" the February Forbearance Agreement.

78.     JSI did not approve those payments.

79.     Since March 1, 2024, the George Weiss Companies have continued to make additional payments worth more than $10,000.00 without JSI's approval.

### FIRST CAUSE OF ACTION
**(Breach of Personal Guarantee)**

80.     Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

81.     JSI, LAM Holdings, and Weiss formed a valid contract, specifically, the February Forbearance Agreement

82.     Under the February Forbearance Agreement, Weiss guaranteed the "performance of the agreements" made by the George Weiss Companies, including the George Weiss Companies' agreements:  (i) that $54,528,115.78 was due and owing under the Note Purchase Agreements and the Notes and (ii) that they would guarantee all amounts owed under the Note Purchase Agreements, the Notes, and the Strategic Relationship Agreement.

83.     JSI and LAM Holdings performed their obligations under the February Forbearance Agreement.

84.     As set forth above, the George Weiss Companies' breached their obligations under each of the Note Purchase Agreements, the Notes, and the Strategic Relationship Agreement.

85.     In turn, Weiss breached the February Forbearance Agreement by failing pay to JSI and LAM Holdings the amounts due under the Note Purchase Agreements, the Notes, and

the Strategic Relationship Agreement causing JSI and LAM Holdings damages in the amount of $101,295,570.00.

## SECOND CAUSE OF ACTION
### (Breach of the February Forbearance Agreement Fee Requirements)

86.     Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

87.     JSI, LAM Holdings, the George Weiss Companies, and Weiss formed a valid contract, specifically, the February Forbearance Agreement.

88.     JSI and LAM Holdings performed their obligations under the February Forbearance Agreement.

89.     GWA and WMSA breached the February Forbearance Agreement by making payments of $22,100.00, $343,051.14, $13,728.20, $30,400.00, $13,075.55, $15,000.00, and $33,016.09 without JSI's approval.

90.     Defendant Weiss breached the February Forbearance Agreement by failing to take all actions within his control, including by exercising all of his voting, governance, management and other rights and powers to prevent GWA and WMSA from breaching the February Forbearance Agreement.

91.     JSI and LAM Holdings were harmed by Weiss' breaches because, by permitting the transfer of funds in violation of the February Forbearance Agreement, Weiss reduced the funds available to satisfy the George Weiss Companies' obligations to JSI and LAM Holdings by $470,370.98.

17

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

(a)     On the First Cause of Action, a judgment in JSI and LAM Holdings' favor and against Weiss for money damages in an amount to be determined at trial, but believed to be not less than $101,295,570.00, representing (i) the outstanding principal and interest owed to JSI under the Notes and (ii) all outstanding principal and interest owed to LAM Holdings under the Strategic Relationship Agreement as of December 31, 2023;

(b)     On the Second Cause of Action, a judgment in JSI and LAM Holdings' favor and against Weiss for money damages in an amount to be determined at trial, but believed to be not less than $470,370.98, representing the amounts transferred by GWA and WMSA in breach of the February Forbearance Agreement; and

(c)     An award of attorneys' fees incurred by Plaintiffs in connection with this action pursuant to Sections 10.3 and 13.1 of the Note Purchase Agreement, Section 5(b) of the Strategic Relationship Agreement, and Section 3(a) if the February Forbearance Agreement; and

(d)     Awarding Plaintiffs such other, further, and different relief as this Court may deem just and proper.

18

Case 1:24-cv-04369   Document 1   Filed 06/07/24   Page 27 of 27

Dated:   New York, New York
    May 6, 2024

        Respectfully submitted,

        HERBERT SMITH FREEHILLS
         NEW YORK LLP
        By: /s/ *Scott S. Balber*
         Scott S. Balber
         Michael P. Jones
         Daniel Gomez
        450 Lexington Avenue
        New York, New York 10017
        Telephone:  (917) 542-7600
        Facsimile:   (917) 542-7601
        Email:  Scott.Balber@hsf.com
           Michael.Jones@hsf.com
           Daniel.Gomez@hsf.com

        *Attorneys for Plaintiffs*
        *Jefferies Strategic Investments, LLC and*
        *Leucadia Asset Management Holdings LLC*

19