UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC,

                              Plaintiffs,

        -against-

GEORGE WEISS,

                              Defendant.

Case No. 1:24-cv-04369 (AH)

---

**DEFENDANT GEORGE WEISS'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND, IN ADDITION OR AS AN ALTERNATIVE, FOR A STAY OF THE ACTION**

Howard J. Kaplan
Michelle A. Rice
Kaplan Rice LLP
142 West 57th Street
Suite 4A
New York, New York 10019
(212) 235-0300

Brian A. Katz
Daniel M. Stone
Olshan Frome Wolosky LLP
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

Attorneys for George Weiss

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ......................................................................................................2

    A.    The Contracts Between Plaintiffs and Certain of the Weiss Parties ................................2

    B.    The Forbearance Agreements ........................................................................................4

RELEVANT PROCEDURAL HISTORY ................................................................................6

THE APPLICABLE STANDARDS ........................................................................................8

ARGUMENT ............................................................................................................................9

    I.    THE CLAIM AGAINST WEISS FOR BREACH OF A PERFORMANCE
        GUARANTY SHOULD BE DISMISSED ................................................................9

    II.    IN ADDITION, OR IN THE ALTERNATIVE, THIS CASE SHOULD BE
         STAYED PENDING RESOLUTION OF THE ADVERSARY
         PROCEEDING ........................................................................................................17

Table of Authorities

Page

CASES

*665-75 Eleventh Ave. Realty Corp. v. Schlanger*,
  265 A.D.2d 270 (1st Dep't 1999) .........................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................8

*Autocrafting Fleet Sols., Inc. v. Alliance Fleet Co.*,
  148 A.D.3d 1564 (4th Dep't 2017)........................................................15

*Banco de La Republica de Colombia v. Bank of New York Mellon*,
  No. 10 Civ. 536, 2013 WL 3871419 (S.D.N.Y. July 26, 2013) ............................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................8

*Bombay Realty Corp. v. Magna Carta, Inc.*,
  100 N.Y.2d 124 (2003) ...................................................................9

*Brad H. v. City of New York*,
  17 N.Y.3d 180 (2011) .....................................................................9

*Caldor, Inc. v. Mattel, Inc.*,
  817 F. Supp. 408 (S.D.N.Y. 1993) ......................................................10

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010)...............................................................8

*Estate of Heiser v. Deutsche Bank Tr. Co. Ams.*,
  No. 11 Civ. 1608, 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012) .........................17

*In re Barney's, Inc.*,
  206 B.R. 336 (Bankr. S.D.N.Y. 1997) ..................................................17

*In re Lipper Holdings, LLC*,
  1 A.D.3d 170 (1st Dep't 2003) .........................................................16

*in re Literary Works in Elec. Databases Copyright Litig.*,
  No. 00 CIV 6049, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001) ............................19

*In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with
  Kinectiv Tech. & Versys Femoral Head Prods. Liab. Litig.*,
  No. 18-CV-10393, 2021 WL 5963392 (S.D.N.Y. Dec. 16, 2021) .........................17

Table of Authorities
(continued)

Page

*Kappel v. Comfort*,
    914 F. Supp. 1056 (S.D.N.Y. 1996)......................................................................17

*Key Bank of Long Island v. Burns*,
    162 A.D.2d 501 (2d Dep't 1990) .....................................................................10

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012)..............................................................................8

*Kramer v. Time Warner Inc.*,
    932 F.2d 767 (2d Cir. 1993)..............................................................................3

*Lo-Ho LLC v. Batista*,
    62 A.D.3d 558 (1st Dep't 2009) ......................................................................10

*Louis Dreyfus Energy Corp. v. MG Refining & Marketing, Inc.*,
    2 N.Y.3d 495 (2004) ........................................................................................9

*Madison Ave. Leasehold, LLC v. Madison Bentley Assocs. LLC*,
    30 A.D.3d 1 (1st Dep't 2006), *aff'd*, 8 N.Y.3d 59 (2006) ..............................10

*Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*,
    339 F.2d 440 (2d Cir. 1964)............................................................................17

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)..............................................................................8

*Ball on behalf of Regeneron Pharms., Inc. v. Baker*,
    No. 21 Civ. 6418 (NSR), 2022 WL 17808785 (S.D.N.Y. Dec. 18, 2022) ............19

*Roswell Cap. Partners LLC v. Alt. Constr. Techs.*,
    No. 08 Civ. 10647, 2009 WL 497578 (S.D.N.Y. Feb. 27, 2009) ...........................15

*Solco Plumbing Supply, Inc. v. Hart*,
    123 A.D.3d 798 (2d Dep't 2014) ..........................................................9, 11, 12

*Symbol Techs., Inc. v. Voicenet (Aust.) Ltd.*,
    No. CV-03-6010 SJF ARL, 2008 WL 89626 (E.D.N.Y. Jan. 4, 2008) ..................10

*Terwilliger v. Terwilliger*,
    206 F.3d 240 (2d Cir. 2000)............................................................................18

*Two Locks, Inc. v. Kellogg Sales Co.*,
    68 F. Supp. 3d 317 (E.D.N.Y. 2014) .........................................................14, 15

Table of Authorities
(continued)

Page

*UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*,
    No. 20 CV 10664 (VB), 2021 WL 6137097 (S.D.N.Y. Dec. 29, 2021 ............................19, 20

*Weissman v. Sinorm Deli, Inc.*,
    88 N.Y.2d 437 (1996) ............................................................................................................18

*White Rose Food v. Saleh*,
    99 N.Y.2d 589 (2003) ............................................................................................................10

*WorldCrisa Corp. v. Armstrong*,
    129 F.3d 71 (2d Cir. 1997).....................................................................................................17

Defendant George Weiss ("Weiss") respectfully submits this memorandum of law in support of his motion to dismiss the Complaint filed by plaintiffs Jefferies Strategic Investments, LLC ("JSI") and Leucadia Asset Management Holdings LLC ("LAM Holdings") (collectively, "Plaintiffs") for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and for a stay of the action pending resolution of the Adversary Proceeding.

## PRELIMINARY STATEMENT

Pursuant to the plain language of Weiss's alleged "performance" guaranty and the settled law governing guarantees, Plaintiffs' Complaint should be dismissed. Plaintiffs posit, through a convoluted construction of the Amended Forbearance Agreement dated February 12, 2024 (Exhibit B to the Declaration of Howard J. Kaplan, dated August 15, 2024 ("Kaplan Decl.") (hereinafter, the "Amended Forbearance Agreement")) that Weiss's limited *performance* guaranty of "agreements" of distinct Weiss entities also included an implied *payment* guaranty of more than $100 million. The language and structure of the Amended Forbearance Agreement make clear that Weiss never agreed to a payment obligation. Indeed, the "guaranty of payment" is set forth in an entirely different section of the Amended Forbearance Agreement in which only Weiss Multi-Strategy Funds, LLC ("WMSF"), Weiss Multi-Strategy Advisers LLC ("WMSA"), OGI Associates, LLC ("OGI") and Weiss Special Operations LLC ("WSPO") guaranteed the "complete payment and performance" by GWA, LLC ("GWA"), including GWA's payment obligations arising under various notes, note purchase agreements and the Strategic Relationship Agreement (the "SR Agreement").[1] It is well established that guarantees are to be strictly construed, and a

---

[1] GWA, WMSF, WMSA, OGI and WSPO are collectively defined as the "Weiss Parties" in the preamble to the Amended Forbearance Agreement. The defined term "Weiss Parties" does not include Weiss himself. Plaintiffs do not use the same defined terms for the relevant Weiss entities in their Complaint and refer only to the "George Weiss Companies," without defining that term or otherwise indicating whether the definition is the same as that found in the Amended Forbearance Agreement. This lack of definitional clarity would appear not to be inadvertent and is confusing. Accordingly, to aid the Court in its review of

$100 million obligation cannot be implied.  Had Plaintiffs believed that they were receiving a guaranty of a $100 million obligation from Weiss, such a provision was required to be expressly and plainly stated in the guaranty as they did with WMSF, WMSA, OGI and WSPO.

Plaintiffs filed their retaliatory Complaint against Weiss because the Weiss Parties previously filed Chapter 11 proceedings and an adversary complaint against Plaintiffs JSI and LAM Holdings, which, among other things, seeks to avoid the Weiss Party payment and performance guarantees in the Amended Forbearance Agreement as preferential transfers entered into within ninety (90) days of the filing of the bankruptcy petitions and/or fraudulent conveyances. If the Weiss Parties are successful in doing so, they will have no obligations and Weiss, concomitantly, will have no performance to guarantee.  Thus, allowing this action to proceed in parallel with the adversary proceeding will result in an avoidable waste of judicial and party resources.  For this reason, Weiss requests, in addition to (or as an alternative to) a dismissal of the Complaint, a stay of this action pending resolution of the adversary complaint in the bankruptcy proceedings.

## STATEMENT OF FACTS

A.    The Contracts Between Plaintiffs and Certain of the Weiss Parties

George Weiss is the founder of the Weiss Parties, including GWA.  GWA is a holding company that holds the equity interests in the other Weiss Parties.

Plaintiffs entered into two sets of agreements with certain of the Weiss Parties.  Weiss is not personally a party to any of them.

---

the Amended Forbearance Agreement, which is appended as Exhibit B to the Kaplan Decl.  Weiss uses the defined terms from that agreement in this motion.

2

In May 2018, LAM Holdings agreed to invest funds with WMSA, and simultaneously agreed to a revenue and profit-sharing arrangement, which the Complaint calls a Strategic Relationship Agreement (the "SR Agreement"). The SR Agreement was between LAM Holdings and GWA, and GWA agreed to share revenue and profits with LAM Holdings in accordance with the terms of the agreement. Compl. ¶¶ 27-28. WMSA, WMSF, OGI, WSPO and Weiss were not parties to the SR Agreement and provided no guarantees, security interests or rights of set-off. *See* Kaplan Decl., Exhibit A (Amended Adversary Complaint, *In re Weiss Multi-Strategy Advisors LLC, et al.,* Adv. Proc. No. 24-01350 (MG)) (¶ 41) (hereinafter, "Adv. Compl.").[2]

Simultaneously, JSI also agreed to invest with WMSA. JSI (under its former name Leucadia Fundings LLC) entered into an Investment Manager Agreement (the "IMA") with WMSA, a registered investment adviser. Adv. Compl. ¶ 31. Under the IMA, WMSA invested and traded a securities account, in return for management and incentive fees, for JSI.

JSI also made several loans to GWA. In late 2019 and early 2020, Plaintiff JSI[3] loaned approximately $50 million to GWA. Compl. ¶¶ 12-18. These loans were represented by two promissory notes dated December 3, 2019 and January 13, 2020, respectively. Compl. ¶ 17. WMSA also signed the note purchase agreements. The note purchase agreements and notes contained no guarantees, security interests or rights of set-off. Adv. Compl. ¶ 38. Weiss is not personally a party to these notes or note purchase agreements.

---

[2]     The Debtors in the related bankruptcy proceeding have filed an adversary proceeding against Plaintiffs to avoid or invalidate the Amended Forbearance Agreement, including the subsidiary payment guarantees in Section 3 of that agreement (the "Adversary Proceeding"). The Court may take judicial notice that factual allegations relevant to this matter also have been made in another proceeding. *See* Fed. R. Evid. 201(b); *Kramer v. Time Warner Inc.,* 932 F.2d 767, 774 (2d Cir. 1993) ("courts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings").

[3]     Plaintiff JSI alleges that the original lender was JFG Funding LLC, and that JFG Funding assigned its interests in the notes to JSI. Compl. ¶ 19.

JSI loaned GWA an additional $3 million in 2022. This loan was also documented as a note (dated September 21, 2022), signed only by GWA. Compl. ¶ 20.

According to the Complaint, the note purchase agreements allow Jefferies to redeem in two circumstances: (i) if the GWA members equity in GWA drops to less than $10 million, and (ii) on an "optional redemption date," defined as the last day of each month beginning on the third anniversary of the closing. Compl. ¶¶ 21-23.

B.    The Forbearance Agreements

The Complaint alleges that, in late 2021, GWA's members' equity fell below $10 million. Compl. ¶ 35.

Instead of exercising its redemption rights, JSI agreed to a forbearance agreement with GWA dated January 1, 2022. Compl. ¶ 35; Adv. Compl. ¶¶ 42-43. JSI agreed to extend the forbearance agreement with GWA on September 21, 2022 and July 25, 2023. *See* Compl. ¶¶ 35-37; Adv. Compl. ¶¶ 46, 50. The effect of these forbearance agreements was to (i) delay payments of accrued revenue share under the IMA, and (ii) require forbearance from JSI exercising its remedies until September 1, 2024, for non-payment of principal and interest on the notes. Compl. ¶ 38; Adv. Compl. ¶ 50. With Plaintiffs' knowledge and consent, GWA and WMSA continued to operate in the ordinary course of business under these forbearance agreements. Adv. Compl. ¶ 51.

Although the forbearance agreement was not set to expire until September 1, 2024, JSI issued a purported Notice of Optional Redemption of the notes, on December 21, 2023. This notice claimed a default under the optional redemption provision of the notes and required payment of the notes by December 31, 2023. Compl. ¶¶ 41-42.

GWA had fully disclosed the financial condition of the company throughout this period, including by providing schedules showing revenues and expenses. Adv. Compl. ¶ 54. Moreover, GWA was in the process of negotiating for alternative financing at this time. *Id.* The GWA

4

schedules fully disclosed the payments owed to employees, including contractually required compensation, for the year 2023.  On February 2, 2024, JSI sent over a draft forbearance agreement, which, among other things, prohibited the Weiss Parties from making payments to their employees of accrued contractual and discretionary bonuses without JSI's consent.  *Id.*  ¶ 56.  The Weiss Parties believed this proposed provision violated their fiduciary duties and would seriously impair the Weiss Parties' ability to continue to operate and raise financing.  *Id.* ¶ 56.  That draft agreement was not signed.  The Weiss Parties paid the year-end compensation and bonuses to their employees as scheduled.

On February 12, 2024, at 2:10 am, Plaintiffs transmitted the Amended Forbearance Agreement to the Weiss Parties and Weiss and threatened that, if it was not signed by 7 am, they would commence litigation against the Weiss Parties and Weiss, who had no obligations under the note purchase agreements or notes.  *Id.* ¶¶ 57-58.  Plaintiffs also threatened to claw back compensation payments to employees, freeze the Weiss Parties' bank accounts and ruin Weiss's reputation in the industry.  *Id.*  The Weiss Parties believed that Plaintiffs' threats would lead to the immediate demise of the Weiss Parties.  *Id.* ¶¶ 59-60).

On February 12, 2024, at 4 am, the Weiss Parties and Weiss, under duress, signed the Amended Forbearance Agreement.  Compl. ¶ 62; Adv. Compl. ¶ 60; Amended Forbearance Agreement.  Under Section 3 of the Amended Forbearance Agreement, the Weiss Parties, other than GWA and definitionally excluding Weiss, guaranteed "the prompt and complete payment and performance by GWA and each other Weiss Party when due (whether at the stated maturity, by acceleration or otherwise) of the Guaranteed Obligations. . . . [under] any Note Purchase Agreement, the Notes, the SR Agreement and this Agreement. . . ."  Amended Forbearance Agreement § 3; *see* Compl. ¶ 66.

Under Section 9, Weiss agreed only to guarantee "the accuracy of the representations made by, and the performance of the agreements of, the Weiss Parties hereunder." Amended Forbearance Agreement § 9; *see* Compl. ¶ 68.  The reference to the "agreements of[] the Weiss Parties hereunder" is not a catch-all; there is a section in the Amended Forbearance Agreement titled the "Weiss Parties' Agreements," which required Weiss to use his authority to ensure the performance of those agreements by the Weiss Parties.  Amended Forbearance Agreement § 2.  Critically, there is no provision in the Amended Forbearance Agreement pursuant to which Weiss personally guaranteed payment of over $50 million in notes or note purchase agreements.  There also is no provision in the Amended Forbearance Agreement pursuant to which Weiss personally guaranteed payment of over $50 million allegedly due under the SR Agreement.  Indeed, Weiss's sole affirmative covenant is contained in Section 9 and is strictly a performance guaranty relating to the Weiss Parties' Agreements in Section 2.  *Id.* § 9.  If, as the Weiss Parties contend in the Adversary Proceeding, the Weiss Parties have no legal obligations under the Amended Forbearance Agreement, then there is nothing for Weiss to guarantee.

For their part, under the Amended Forbearance Agreement, JSI simply agreed to forbear from commencing an action to recover under the notes for no more than two business days and LAM Holdings has no obligations.  Amended Forbearance Agreement § 6; Adv. Compl. ¶ 65.  The Amended Forbearance Agreement is governed by New York law.  Amended Forbearance Agreement § 10(h).

On February 15, 2024, GWA repaid $3 million owed under the notes.  Compl. ¶ 44.

## RELEVANT PROCEDURAL HISTORY

On April 29, 2024, GWA, WMSA, OGI and WSPO filed voluntary petitions under chapter 11 of title 11 of the United States Code.  On the same day, as noted above, GWA, WMSA, OGI and WSPO commenced an Adversary Proceeding against JSI and LAM Holdings.  The Adversary

Proceeding seeks, among other things, to set aside the Amended Forbearance Agreement and the Weiss Parties' guarantees and obligations contained therein. If the Weiss Parties obtain a judgment in their favor in the Adversary Proceeding, the Amended Forbearance Agreement may be rescinded, or their guarantees and obligations avoided or invalidated, such that the claims in the Complaint will be mooted.

On June 19, 2024, WMSF, a broker-dealer, filed a voluntary petition under chapter 11 of title 11 of the United States Code, as it first needed to be de-registered. The bankruptcy proceedings are being jointly administered and WMSF has been joined as a plaintiff in the Adversary Proceeding against JSI and LAM Holdings. The amended complaint in the Adversary Proceeding was filed on June 25, 2024 and became the operative pleading on July 11, 2024.

On July 16, 2024, JSI and LAM Holdings moved for partial dismissal of the Adversary Proceeding against them. On August 6, 2024, the Weiss Parties (also the "Debtors") opposed the partial motion to dismiss. The motion will be fully submitted on August 16, 2024.

On May 6, 2024, Plaintiffs sued Weiss in New York State Supreme Court. ECF Doc. No. 1. Weiss removed the action to federal court on June 7, 2024. ECF Doc. No. 1. The timely removal was not subsequently opposed by Plaintiffs.

On June 20, 2024, the Court so-ordered the parties' stipulation scheduling the filing of Weiss's motion to dismiss on or before August 15, 2024, the filing of an opposition to the motion to dismiss on or before October 17, 2024 and the filing of a reply on the motion to dismiss on or before November 7, 2024. ECF Doc. No. 8.

## <u>THE APPLICABLE STANDARDS</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

However, a complaint should be dismissed where the allegations, "however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When deciding a motion to dismiss, the Court must assume all well pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). That principle does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"A complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (citation omitted). Where "a document is not incorporated by reference, the court may [nevertheless] consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted). "This generally occurs when the material considered is a 'contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason – usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim – was not attached to the complaint.'" *Nicosia*, 834 F.3d at 231 (citation omitted).

# ARGUMENT

## I.   THE CLAIM AGAINST WEISS FOR BREACH OF A PERFORMANCE GUARANTY SHOULD BE DISMISSED

In the first claim in the Complaint, Plaintiffs principally allege that Weiss breached the Amended Forbearance Agreement in two ways:  first, Weiss allegedly "breached his contractual guarantee to ensure that the [Weiss Parties] paid the amounts owed under [the Note Purchase Agreements and] the Notes, totaling $54,528,115.78, Compl. ¶¶ 70, 82, and second, Weiss allegedly "breached his contractual guarantee to pay the amounts owed under the [SR Agreement," totaling $50,597,604.00, Compl. ¶¶ 73-74, 82.   Both breaches are based on a fundamentally unreasonable and contrived interpretation of the Amended Forbearance Agreement, which as a matter of law must be construed narrowly in favor of Weiss, the guarantor.   When interpreted as written, it is manifest that Weiss never personally guaranteed the Weiss Party obligations under the notes, note purchase agreements or SR Agreement.   Accordingly, the first claim in the Complaint must be dismissed.

A guaranty is a contract and in interpreting it a court looks first to the words the parties used.   *Louis Dreyfus Energy Corp. v. MG Refining & Marketing, Inc.*, 2 N.Y.3d 495, 500 (2004).   "All parts of a contract must be read in harmony to determine its meaning," and "[o]ne portion . . . should not be read so as to negate another portion."   *Bombay Realty Corp. v. Magna Carta, Inc.*, 100 N.Y.2d 124, 127 (2003).   "To determine whether a writing is unambiguous, language should not be read in isolation because the contract must be considered as a whole."   *Brad H. v. City of New York*, 17 N.Y.3d 180, 185 (2011).   "[A] court should not read a contract so as to render any term, phrase, or provision meaningless or superfluous, but should give effect to all of the contract's provisions."   *Solco Plumbing Supply, Inc. v. Hart*, 123 A.D.3d 798, 800 (2d Dep't 2014) (cleaned up).

"The terms of the guaranty . . . are to be strictly construed in favor of a private guarantor." *665-75 Eleventh Ave. Realty Corp. v. Schlanger*, 265 A.D.2d 270, 272 (1st Dep't 1999); *see also Symbol Techs., Inc. v. Voicenet (Aust.) Ltd.*, No. CV-03-6010 SJF ARL, 2008 WL 89626, at *2 (E.D.N.Y. Jan. 4, 2008) ("A court must interpret a guaranty in the strictest manner in favor of the guarantor.") (cleaned up); *White Rose Food v. Saleh*, 99 N.Y.2d 589, 591 (2003) ("A guaranty is to be interpreted in the strictest manner."); *Lo-Ho LLC v. Batista*, 62 A.D.3d 558, 559 (1st Dep't 2009) (same). "In particular, the obligations of the guarantor must be strictly construed according to the terms of the agreement and cannot be altered, extended or enlarged by the creditor . . . without the guarantor's consent, since he cannot be held responsible to guarantee a performance different from that which he intended or specified in the guaranty." *Caldor, Inc. v. Mattel, Inc.*, 817 F. Supp. 408, 410-11 (S.D.N.Y. 1993) (citation omitted); *see also Key Bank of Long Island v. Burns*, 162 A.D.2d 501, 503 (2d Dep't 1990) ("It is well settled that the liability of a guarantor is to be narrowly construed and cannot be extended by construction beyond the plain and explicit language of the contract.").

In interpreting a guaranty, a court also will consider the reasonable expectations of the parties and the business purpose to be served by their contract. *Madison Ave. Leasehold, LLC v. Madison Bentley Assocs. LLC*, 30 A.D.3d 1, 8 (1st Dep't 2006), *aff'd*, 8 N.Y.3d 59 (2006). "Besides the common meaning of the language employed, the expectations and purposes of the parties in view of the factual context in which the agreement was made must be considered in interpreting a contract term, with due regard to the parties' sophistication." *Id.* A guaranty should be construed to give effect to the parties' intentions, *Caldor*, 817 F. Supp. at 410, and "should be interpreted consistently with the parties' reasonable expectations, not to so defeat them," *Banco de*

*La Republica de Colombia v. Bank of New York Mellon*, No. 10 Civ. 536, 2013 WL 3871419, at *6 (S.D.N.Y. July 26, 2013).

Here, the Second Department decision in *Solco* demonstrates how strictly New York courts construe guarantees and the general unwillingness to imply terms when interpreting a guaranty. In that case, the Appellate Division addressed the enforceability of a personal guarantee of payment made by the defendant – the principal of a plumbing company – in connection with a credit agreement entered into between the plumbing company and the plaintiff supplier. The guarantee provided:

> the undersigned, ***being financially interested in the above customer***, hereby, jointly and severally, unconditionally, guarantee payment when due of all indebtedness of the above customer including any amount currently due to [the plaintiff] as such indebtedness may exist from time to time together with interest and/or finance charges.

*Solco Plumbing Supply, Inc. v. Hart*, 123 A.D.3d 798, 799 (2d Dep't 2014).

After the defendant sold his interest in the plumbing company, the plaintiff sued the defendant on the guaranty seeking to recover amounts owed by the plumbing company. The plaintiff contended that the phrase "being financially interested," as used in the guarantee, was merely descriptive language meant to identify the guarantor's relationship with the plumbing company as of the date the credit agreement was executed and was not meant to limit the liability of the defendant if he no longer had a financial interest in plumbing company. *Id.* at 799-800. The defendant moved to dismiss the complaint, arguing that at the time the debt was incurred he no longer had a financial interest in the plumbing company and, therefore, was not obligated under the plain language of the guarantee. The court granted the defendant's motion despite the plaintiff's different interpretation.

The Appellate Division affirmed, explaining that "[t]he terms of a guaranty are to be strictly construed, and a guarantor should not be found liable beyond the express terms of the guaranty."

*Id.* at 800 (cleaned up). The court further observed that "in determining the meaning of contractual language, 'a court should not read a contract so as to render any term, phrase, or provision meaningless or superfluous,' but should give effect to all of the contract's provisions." *Id.* (cleaned up). In concluding that dismissal of the guaranty claim was warranted, the Appellate Division reasoned that the guaranty must be "construed strictly and interpreted in the light most favorable to the defendant" and interpreted the guaranty to be conditioned on the requirement that the guarantor be "'financially interested' in Gotham at the time that any purported liability under the guaranty arose." *Id.* (emphasis added).

GWA is the sole obligor on all of the notes that are said to be past due and GWA and/or WMSA, along with JSI, are the only parties to the note purchase agreements. Amended Forbearance Agreement, Recitals, § 1. GWA and LAM Holdings are the only parties to the SR Agreement. *Id.*, Recitals.

The Amended Forbearance Agreement expressly and substantially differentiates between the guaranty given by Weiss and the guarantees given by the Weiss Parties, both by its language and in the structure of the agreement. The term "Weiss Parties" is defined in the preamble to include only GWA, WMSA, WMSF, OGI and WSPO; it does not include Weiss. *Id.* The preamble and signature page also limit Weiss' obligations to "Section 5(a), 9 and 10(c)" of the Amended Forbearance Agreement. *Id.*

Section 2 sets forth the new "Weiss Parties Agreements," which includes, among other things, the delivery of the following information by "no later than 5:00 p.m. on February 13, 2024:"

(i)    "A schedule of bonus payments made to each employee during 2024 . . . ."

(ii)   "Schedules of assets and liabilities of each of GWA, WMSF, OGI, WSPO, WMSA and each of their subsidiaries as of each of January 31, 2024 and February 9, 2024."

(iii)     "Copies of statements from each brokerage, futures, commodities, custodial, bank, deposit or similar account held by any of the entities referred to in clause (ii) above."

(iv)     "The name and address of each entity referred to in clause (ii) above and of each bank or brokerage firm where the accounts referred to in clause (iii) above are held."

(v)      "A schedule of each client account managed by WMSA or its affiliates (the "Weiss Client Accounts"), including the amount of any accrued but unpaid fees or allocations owed to WMSA from each Weiss Client Account."

(vi)     "The operative and offering documents of each Weiss Client Account, . . ."

(vii)    "Copies of every invoice for accrued but unpaid fees or allocation that have been sent to any Weiss Client."

*Id.* § 2.[4]

Section 3 contains the "payment and performance" guaranty made by each of the Weiss Parties and expressly excludes GWA as the obligor under the notes.  *Id.*  Section 3 nowhere references Weiss.  In this section, each of the Weiss Parties, other than GWA, "irrevocably and unconditionally guarantees . . . the prompt and complete **payment** and performance **by GWA and each other Weiss Party** when due (whether at the stated maturity, by acceleration or otherwise) of the Guaranteed Obligations. . . ."  *Id.*  (emphasis added).  The term "Guaranteed Obligations" is defined later in the same section as the "obligations **of GWA and each other Weiss Party** arising under any Note Purchase Agreement, the Notes, the SR Agreement and this Agreement. . . ."  *Id.* (emphasis added).  In other words, Section 3 only concerns a payment guarantee of Weiss Parties, imposing no obligation on Weiss personally whatsoever.

---

[4]     Plaintiffs' second claim for relief alleges a breach by Weiss of Section 2.  Compl. ¶¶ 86-91.

In contrast, Weiss's personal guaranty in Section 9 is limited to "the accuracy of the representations made by, and the performance of the agreements of, the Weiss Parties hereunder."[5] *Id.* Section 9 does not contain the word "payment" or provide a guaranty of payment, unlike Section 3. Section 9 instead clearly refers to the "Weiss Party Agreements," which are set forth in Section 2.

In the Complaint, Plaintiffs appear to contend that Weiss's guarantee of the performance of the "agreements" of the Weiss Parties "hereunder" impliedly includes the obligation by Weiss to guaranty payment under the notes, note purchase agreements and SR Agreement if GWA and each of the other Weiss Parties fail to make such payments. A guaranty of $100 million by implication is unreasonable, and fails to interpret the agreement as a whole, much less give "[e]ffect and meaning . . . to every term of the contract," or attempt to "harmonize all of its terms." *Two Locks, Inc. v. Kellogg Sales Co.*, 68 F. Supp. 3d 317, 331 (E.D.N.Y. 2014).

*First*, there is a defined term in Section 3 – namely, the term "Guaranteed Obligations" – which is defined to include the obligations for the notes, the note purchase agreements and the SR Agreement. *Id.* There is no reasonable basis for Plaintiffs to conclude that "agreements" of the Weiss Parties "hereunder" in Section 9 is a reference to the "Guaranteed Obligations" in Section 3, or the agreements covered thereby, given that the same defined term could have been, but was not, used in Section 9.

*Second*, Section 2 of the Amended Forbearance Agreement bears the heading "Weiss Parties Agreements" and sets forth the new agreements undertaken by the Weiss Parties in executing this agreement, albeit under duress. Amended Forbearance Agreement § 2. The

---

[5]      Weiss also guaranteed the accuracy of the representations contained in Section 5 of the Amended Forbearance Agreement, which bears the heading "Representations." Amended Forbearance Agreement § 5. Weiss is expressly identified in Section 5(a), which contains the representations concerning the enforceability of the Amended Forbearance Agreement. *Id.*

narrower interpretation of the "agreements" "hereunder" is that the "agreements" mentioned in Section 9 in fact reference the "Weiss Parties Agreements" identified in Section 2. *Id.* § 9. This interpretation also gives effect and meaning to every term in the Amended Forbearance Agreement and harmonizes them.

*Third*, if Weiss was intended to provide a payment guaranty as a backstop to the Weiss Parties payment obligations under the notes, note purchase agreements or SR Agreement, he could have been easily and expressly included as a guarantor in Section 3, which specifically identifies the notes, note purchase agreements and SR Agreement as "Guaranteed Obligations."

"[W]hen faced with two interpretations of a provision, courts generally prefer the narrower interpretation absent a clear manifestation of intent." *Two Lock, Inc.*, 68 F. Supp. 3d at 329; *see also Roswell Cap. Partners LLC v. Alt. Constr. Techs.*, No. 08 Civ. 10647, 2009 WL 497578, at *2 (S.D.N.Y. Feb. 27, 2009) ("[w]here one interpretation is broader than another, courts should not apply the broader interpretation absent a clear manifestation of intent," and "there is no basis to interpret an agreement as impliedly stating something which the parties have neglected to specifically include") (cleaned up); *Autocrafting Fleet Sols., Inc. v. Alliance Fleet Co.*, 148 A.D.3d 1564, 1565 (4th Dep't 2017) ("the obligation that plaintiff seeks to enforce . . . was not included in the guarantee clause").  In Section 9, there is no language demonstrating an intent to create a **payment** guaranty by Weiss of the notes, note purchase agreements and the SR Agreement, none of which are mentioned or referred to in Section 9.  Moreover, the decision to exclude Weiss as a guarantor from Section 3 is a clear manifestation of the agreement's intent not to require a payment guaranty from Weiss with respect to the "Guaranteed Obligations" described in Section 3.  Indeed, Section 9's invocation of the Weiss Parties' "agreements" can only be harmoniously read to refer to Section 2.

Finally, "[a] contract should not be interpreted to produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties." *In re Lipper Holdings, LLC*, 1 A.D.3d 170, 171 (1st Dep't 2003) (cleaned up). Plaintiffs' claim that Weiss agreed to personally guarantee more than $100 million in obligations of the Weiss Parties is inconsistent with the reasonable expectations of the parties, commercially unreasonable and absurd because, as interpreted by the Plaintiffs, the Weiss Parties and Weiss all agreed to give, among other things, broad payment and performance guarantees in exchange for Plaintiffs' agreement to forbear from bringing a lawsuit for two business days. It defies all reason, commercially or otherwise, for Weiss to agree to guarantee $100+ million of GWA's payment obligations to Plaintiffs – in exchange for at most two business days of forbearance – when prior to the Amended Forbearance Agreement Weiss had no obligations at all for the notes, note purchase agreements or SR Agreement. The Court should not strain to interpret Weiss's carefully and narrowly defined and delimited personal performance guarantee under the Amended Forbearance Agreement to lead to such an absurd result.

Because Weiss's purported performance guaranty cannot be rationally and strictly interpreted thereunder as a payment guaranty of the obligations under the notes, the note purchase agreements and the SR Agreement, the first claim in the Complaint should be dismissed.[6]

---

[6]    As noted above, the second claim for relief in the Complaint seeks payments for Weiss's purported breach of the fee requirements in Section 2 of the Amended Forbearance Agreement. Because the Amended Forbearance Agreement may be avoided or invalidated in the Adversary Proceeding, this claim also may fail – i.e., if there is no existing Weiss Party obligation, there can be no secondary performance obligation of Weiss.

## II.    IN ADDITION, OR IN THE ALTERNATIVE, THIS CASE SHOULD BE STAYED PENDING RESOLUTION OF THE ADVERSARY PROCEEDING

As stated above, the Complaint is deficient as a matter of law and should be dismissed. Regardless of whether the Court agrees, however, it should, at a minimum, stay this action pending resolution of the Adversary Proceeding.

It is axiomatic that district courts may stay a case pursuant to "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) (citing *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441-42 (2d Cir. 1964)).  Courts should use this power to "stay litigation pending resolution of another case or arbitration proceeding where it will dispose of or narrow the issues to be resolved in that litigation." *In re Barney's, Inc.*, 206 B.R. 336, 343 (Bankr. S.D.N.Y. 1997).

In determining whether to stay a federal action pending resolution of a concurrent pending federal action, courts consider the following five *Kappel* factors:  "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Estate of Heiser v. Deutsche Bank Tr. Co. Ams.*, No. 11 Civ. 1608, 2012 WL 5039065, at *2 (S.D.N.Y. Oct. 17, 2012) (citing *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). These factors are designed "to conserve resources when the outcome of a parallel proceeding will simplify the legal or factual issues in the stayed case." *See In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & Versys Femoral Head Prods. Liab. Litig.*, No. 18-CV-10393, 2021 WL 5963392, at *4 (S.D.N.Y. Dec. 16, 2021).

Plaintiffs' alleged claims against Weiss rely entirely on the primary obligations of the Weiss Parties; obligations that the Weiss Parties contend are avoidable in the Adversary Proceeding. Plaintiffs allege that Mr. Weiss breached the personal guaranty by failing to ensure that the Weiss Parties paid amounts owed under Section 3 of the Amended Forbearance Agreement or by allowing the Weiss Parties to make payments allegedly barred by Section 2(c) of the Amended Forbearance Agreement. Compl. ¶¶ 70-79. But it is these obligations, and the concomitant granting of preferential security interests, that the Weiss Parties argue, *inter alia,* constituted avoidable preferential transfers, constructive fraudulent conveyances, and are void for lack of consideration. Adv. Compl. ¶¶ 82-97, 105-123. If, as the Weiss Parties argue in the Adversary Proceeding, the Weiss Parties have no performance obligations under Sections 2 or 3 of the Amended Forbearance Agreement, Mr. Weiss's guarantee of the Weiss Parties' performance—and, by extension, this action—will be rendered moot. Because Plaintiffs' claims—unsupported as they are—are entirely contingent on the outcome of the Adversary Proceeding, it would be a waste of judicial and party resources to litigate this matter prior to resolving the antecedent question of whether there remain any obligations for Mr. Weiss to even guarantee. Here, each of the five *Kappel* factors favors granting Weiss's motion for a stay.

*First*, Plaintiff will suffer no prejudice whatsoever from awaiting resolution of the Adversary Proceeding — indeed a stay would prevent them from wasting needless resources litigating Weiss's guaranty of an avoidable agreement. Because "[a] guarantor [is] required to make payment only when the primary obligor has first defaulted," and the Adversary Proceeding seeks to invalidate any obligations of the primary obligors, it would be premature to litigate the scope of Weiss's guarantee here. *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (quoting *Weissman v. Sinorm Deli, Inc.*, 88 N.Y.2d 437, 446 (1996)). No discovery has been taken

in this action and, to the extent relevant discovery exists, it is being preserved and pursued in the Adversary Proceeding.  Thus, while Plaintiffs have the same interest as all other plaintiffs to "proceed expeditiously," here they would suffer no prejudice from a temporary stay (and indeed may benefit from avoiding unnecessary litigation). *See UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*, No. 20 CV 10664 (VB), 2021 WL 6137097, at *3 (S.D.N.Y. Dec. 29, 2021) (Plaintiff suffered no prejudice from stay because no discovery had been taken and the relevant evidence would be preserved).

*Second*, Weiss would similarly benefit from the stay of needless litigation.  Because the Adversary Proceeding calls into question the very foundation of Plaintiffs' claims, a stay will avoid burdening Weiss and avoid the potential for inconsistent outcomes in two concurrent litigations. *See id.* at * 4 (overlap in claims between two federal actions weighs in favor of a stay to avoid potentially inconsistent outcomes).

*Third*, the Court would avoid needless and repetitious litigation regarding the Amended Forbearance Agreement in favor of allowing the Bankruptcy Court to administer core bankruptcy claims of preferential and fraudulent transfers.  Indeed, "[f]ederal courts disfavor duplicative litigation." *Ball on behalf of Regeneron Pharms., Inc. v. Baker*, No. 21 Civ. 6418 (NSR), 2022 WL 17808785, at *6 (S.D.N.Y. Dec. 18, 2022).  Here, absent a stay, the instant matter could proceed for months before the Bankruptcy Court determines that the Amended Forbearance Agreement was avoidable, rendering the Complaint moot.  In the meantime, two parallel litigations "inevitably risks inconsistent rulings." *Id.*  Because a stay would be "efficient for the trial court's docket and the fairest course for the parties," the third factor also weighs in favor of staying this case pending resolution of the Adversary Proceeding. *See in re Literary Works in Elec. Databases Copyright Litig.*, No. 00 CIV 6049, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001).

*Fourth*, no non-party has an interest in this litigation that would be negatively impacted by a stay.

*Fifth*, and finally, the public interest favors a stay. Indeed, "[t]he public interest is served by promoting the efficient use of judicial resources and minimizing the possibility of conflicts between different courts." *UnitedHealthcare Ins.*, 2021 WL 6137097, at *5 (citation omitted). Plaintiffs' claims depend entirely upon their success in the Adversary Proceeding — the only efficient use of judicial resources is to await that result.

Accordingly, the five *Kappel* factors favor a stay of this Action pending resolution of the Adversary Proceeding. Thus, in addition to or as an alternative to dismissing one or both claims in the Complaint, the Court should stay this litigation pending resolution in the Adversary Proceeding.

Dated: New York, New York
      August 15, 2024

                        KAPLAN RICE LLP

                        By:   */s/Howard J. Kaplan*
                              Howard Kaplan
                              Michelle Rice
                              142 West 57th Street
                              Suite 4A
                              New York, New York 10019
                              (212) 235-0300

                        OLSHAN FROME WOLOSKY LLP

                        By:   */s/Brian A. Katz*
                              Brian A. Katz
                              Daniel M. Stone
                              1325 Avenue of the Americas
                              New York, New York 10019
                              (212) 451-2300

                        *Attorneys for George Weiss*