UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>GEORGE WEISS,<br><br>Defendant. | Case No. 1:24-cv-04369 (AH)<br><br>DEFENDANT GEORGE WEISS'S STATEMENT OF MATERIAL FACTS <u>PURSUANT TO LOCAL RULE 56.1</u> |

Pursuant to Local Rule 56.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York, defendant George Weiss respectfully submits this Statement of Material Facts in support of his motion for summary judgment against plaintiffs Jefferies Strategic Investments, LLC ("JSI") and Leucadia Asset Management Holdings LLC ("Leucadia") (collectively, "Jefferies" or "Plaintiffs").

A.   <u>The Parties</u>

1.   George Weiss is the founder of each of GWA, LLC ("GWA"), Weiss Multi-Strategy Funds LLC ("WMSF"), OGI Associates LLC ("OGI"), Weiss Special Operations LLC ("WSPO"), Weiss Multi-Strategy Advisers LLC ("WMSA," and collectively with GWA, WMSF, OGI, and WSPO, the "Weiss Companies"). Declaration of George Weiss, dated November 5, 2024 ("Weiss Decl.") ¶ 4.

1

2. Until recently, the Weiss Companies were some of the longest tenured hedge funds in the United States, managing approximately $4 billion at their peak.  Weiss Decl. ¶ 5.

3. In 46 years of operation, the Weiss Companies ended a financial year with losses on only four occasions.  Weiss Decl. ¶ 5.

4. Plaintiff JSI is a Delaware LLC and a subsidiary of Jefferies Financial Group.  Complaint, ECF No. 1, Ex. A ¶ 11.

5. Plaintiff Leucadia is a Delaware LLC and a subsidiary of Jefferies Financial Group.  Complaint, ECF No. 1, Ex. A ¶ 12.

B. The Contracts Between Plaintiffs and Certain Weiss Companies

6. Jefferies has been in business with the Weiss Companies since 2018, when Leucadia entered into a "Strategic Relationship Agreement" with the Weiss Companies.  Weiss Decl. ¶ 7; Declaration of Jeffrey Dillabough, dated November 5, 2024 ("Dillabough Decl.") ¶ 5.

7. As part of this arrangement, Jefferies provided financing to GWA through promissory notes.  Weiss Decl. ¶ 7; Dillabough Decl. ¶ 5.

8. Mr. Weiss is not personally a party to any of these agreements and did not guaranty any of the Weiss Companies' obligations.  Weiss Decl. ¶ 7.

C. The Working Relationship Between the Weiss Companies and Jefferies

9. Beginning in 2018, Jefferies and the Weiss Companies worked cooperatively to market the Weiss Companies, including to Jefferies clients.  Dillabough Decl. ¶ 7.

10. Over the years, the Weiss Companies paid down a portion of the amounts owed to Jefferies under the Strategic Relationship Agreement and to JSI under the promissory notes, but the amounts continued to accrue.  The parties operated under the assumption that GWA would pay these amounts down as cash became available.  Weiss Decl. ¶ 8; Dillabough Decl. ¶ 6.

12687684-5

11.     The financial condition of the Weiss Companies was fully disclosed to Jefferies, and the Weiss Companies regularly provided Jefferies with financial records and projections. Weiss Decl. ¶ 9.

12.     In November 2023, Mr. Weiss began having discussions with a potential new strategic partner (the "Strategic Partner").  Weiss Decl. ¶ 10; Dillabough Decl. ¶ 8.

13.     Mr. Weiss promptly informed Jefferies's CEO, Richard Handler, and co-presidents Brian Friedman and Nick Daraviras, about these discussions.  Weiss Decl. ¶ 11; Dillabough Decl. ¶ 9.

14.     Jefferies initially expressed support for the proposed transaction.  Weiss Decl. ¶ 11; Dillabough Decl. ¶ 9.

D.     <u>Negotiations with the Strategic Partner and the Forbearance Agreement</u>

15.     On February 1, 2024, Jefferies sent the Weiss Companies a draft Forbearance Agreement (the "Draft Forbearance Agreement").  Weiss Decl. ¶ 13; Dillabough Decl. ¶ 11; Dillabough Decl. Ex. 1

16.     This draft prohibited the Weiss Companies from paying "any bonus compensation or other compensation or other payment in excess of base salaries to any of their employees . . . in respect of any period" unless Jefferies agreed in its "sole and absolute discretion." Dillabough Decl., Ex. 1 § 2(b).

17.     In exchange, JSI offered not to seek relief under title 11 of the bankruptcy code or take any other enforcement action for at most five business days.  Dillabough Decl., Ex. 1 § 3.

18.     Mr. Dillabough, general counsel to the Weiss Companies, informed Jefferies' representative Mr. Daraviras that the Weiss Companies could not agree to this provision and that

the Weiss Companies had to maintain control over the payment of bonuses.  Dillabough Decl. ¶ 12.

19. Mr. Dillabough and another representative of the Weiss Companies advised Mr. Daraviras that paying the bonuses was necessary for the Weiss Companies to survive and for the potential pending deal with the Strategic Partner to progress.  Dillabough Decl. ¶ 12; *see* Weiss Decl. ¶ 14.

20. Mr. Dillabough also was concerned that delegating to a creditor this decision concerning the retention of the Weiss Companies' employees and compliance with its contractual commitments to the portfolio managers could breach the Weiss Companies' duties to their clients.  Dillabough Decl. ¶ 12.

21. During the week of February 5, 2024, Jefferies threatened to seek a temporary restraining order from a court, including in an email to Mr. Dillabough, on February 8, 2024.  Dillabough Decl. ¶ 13; Weiss Decl. ¶ 15.

22. The email again demanded that the Weiss Companies not pay bonuses, including bonuses that the Weiss Companies were contractually committed to pay to its portfolio managers, even though Mr. Dillabough had just explained that failing to pay these bonuses would destroy the firm and would jeopardize the negotiations with the potential Strategic Partner.  Dillabough Decl. ¶ 13; Weiss Decl. ¶ 14.

23. Mr. Weiss and Mr. Dillabough both viewed these threats as bullying tactics and an effort to gain leverage in connection with the negotiations with the Strategic Partner.  Dillabough Decl. ¶ 14; Weiss Decl. ¶ 15.

E. <u>The Superbowl Sunday Ultimatum</u>

24. On February 11, 2024, Jefferies was told that the Weiss Companies had paid the bonuses due. Dillabough Decl. ¶ 15.

25. On February 11, 2024, Jefferies CEO, Richard Handler, called Mr. Weiss and accused him of committing securities fraud in "stealing" Jefferies' money. Mr. Handler also said that there would be a public news article that would destroy Mr. Weiss's reputation and the reputations of key Weiss employees. Weiss Decl. ¶ 17.

26. Mr. Handler further threatened that unless Defendant signed a forthcoming revised forbearance agreement, Jefferies would sue Mr. Weiss and employees of the Weiss Companies. Mr. Handler did not mention a personal guarantee. Weiss Decl. ¶ 17.

27. On February 11, 2024, Jefferies' outside counsel, Scott Balber, arranged a call between Mr. Weiss, Mr. Dillabough, Mr. Daraviras, and others. During that call, Mr. Daraviras and Mr. Balber railed against Mr. Weiss and Mr. Dillabough. Weiss Decl. ¶ 18; Dillabough Decl. ¶ 15.

28. They reiterated Mr. Handler's threat to ruin the reputations of everyone involved in a public litigation to be filed the following morning unless the Weiss Companies signed a new forbearance agreement they would send over later that evening. Weiss Decl. ¶ 18; Dillabough Decl. ¶ 15.

29. Plaintiffs also threatened to claw back compensation payments to employees, freeze the Weiss Companies' bank accounts and ruin Mr. Weiss's reputation in the industry. Weiss Decl. ¶ 18; Dillabough Decl. ¶ 15.

30. At no point did anyone on the February 11, 2024 call arranged by Mr. Balber discuss Mr. Weiss personally guaranteeing any amounts owed to Jefferies. Weiss Decl. ¶ 18; Dillabough Decl. ¶ 16.

31. On February 12, 2024, at 2:10 am and 2:20 am, Plaintiffs sent a revised Forbearance Agreement to the Weiss Companies and reminded them of the deadline to sign "by 7 am today, Monday, Feb 12" or face litigation. Dillabough Decl. ¶ 17; Dillabough Decl., Ex. 2.

32. The Weiss Companies believed that Jefferies' threats would lead to the immediate demise of the Weiss Companies. Dillabough Decl. ¶ 24.

33. Before this point, only GWA and WMSA had contractual obligations to Jefferies—none of the remaining entities nor Mr. Weiss had any contractual obligations to Jefferies. *See* Dillabough Decl. ¶ 22; *see also* Dillabough Decl., Ex. 3 Recitals.

34. There was no discussion or negotiation concerning the terms of the draft forbearance agreement. Jefferies sent the draft and demanded that Weiss sign it as written. Dillabough Decl. ¶ 17; Weiss Decl. ¶ 20.

F.  The Terms of the Forbearance Agreement

35. On February 12, 2024, at 4 am, the Weiss Companies and Mr. Weiss, under threat of imminent public destruction, signed a modified version of the forbearance agreement that Jefferies had sent. Weiss Decl. ¶ 22; Dillabough Decl. ¶ 24; Dillabough Decl., Ex. 2.

36. Mr. Weiss signed a version of the Forbearance Agreement that the Weiss Companies edited to remove two admissions Jefferies sought from Mr. Weiss and the Weiss Companies – specifically, that the bonus payments were made "in contravention of the statements made by the Weiss" Companies. Dillabough Decl. ¶¶ 18, 24; Dillabough Decl., Ex. 4.

37. This version of the Forbearance Agreement has three categories of parties: the Weiss Companies; Mr. Weiss himself; and Jefferies. *See* Dillabough Decl. ¶ 24; Dillabough Decl., Ex. 3.

12687684-5

38. Mr. Weiss was only a party to "Sections 5(a), 9, and 10(c)." Dillabough Decl., Ex. 3 Preamble, Signatures.

    1) The Weiss Companies' Obligations Three Primary Obligations

39. Pursuant to the Forbearance Agreement, the Weiss Companies purported to undertake three primary obligations. Dillabough Decl., Ex. 3 §§ 2-4.

40. *First*, Section 2 contains the "Weiss [Companies] Agreements," which generally required the Weiss Companies to provide specific information to Jefferies no later than 5:00 pm on February 13. Dillabough Decl. ¶ 20; Dillabough Decl., Ex. 3 § 2.

41. The "Weiss [Companies] Agreements" also include that they would not make any payment, grant or transfer in excess of $10,000 "except for payments made in the course of normal trading consistent with past practices" "without the prior written consent of [Jefferies], which may be granted or withheld in their sole and absolute discretion." Dillabough Decl. ¶ 20; Dillabough Decl., Ex. 3 § 2(c).

42. *Second*, in Section 3 of the Forbearance Agreement, the Weiss Companies, other than GWA and definitionally excluding Mr. Weiss, purported to guaranty "the prompt and complete payment and performance by GWA and each other Weiss [Company] when due (whether at the stated maturity, by acceleration or otherwise) of the Guaranteed Obligations . . . [under] any Note Purchase Agreement, any Note, the [Strategic Relationship] Agreement [and] this Agreement . . . ." Dillabough Decl., Ex. 3 § 3(a); *see* Dillabough Decl. ¶ 22.

43. Section 3 turned each of WMSF, OGI, and WSPO into guarantors for the notes and the SR Agreement. *See* Dillabough Decl. ¶ 22; Dillabough Decl., Ex. 3 § 3(a).

44. Section 3 was clear that the "guaranty [was] an irrevocable, absolute, and continuing guaranty of the full and punctual payment and performance and not a guaranty of collection." Dillabough Decl., Ex. 3 § 3(b).

45. *Third*, the Weiss Companies agreed to grant Jefferies a security interest in all of their assets. Dillabough Decl., Ex. 3 § 4(a).

46. Section 5 of the Forbearance Agreement, the "Representations," set forth several representations from the Weiss Companies, including, among others, representations that they were authorized to enter the agreements, that no default of the underlying agreements had occurred, and that the financial statements were correct. Dillabough Decl., Ex. 3 § 5.

2) Mr. Weiss's Limited Obligations

47. The Forbearance Agreement provides that Mr. Weiss was only a party "for purposes of Section 5(a), 9, and 10(c)." Dillabough Decl., Ex. 3 Preamble, Signatures.

48. Section 5(a) is a limited representation that the contract is enforceable, subject to "equitable principles relating to enforceability." Dillabough Decl., Ex. 3 § 5(a).

49. Section 10(c) is a purported acknowledgement that the agreement was supported by "reasonably equivalent value." Dillabough Decl., Ex. 3 § 10(c).

50. Section 9 provides:

> Weiss unconditionally and irrevocably personally guarantees to the Jefferies Entities the accuracy of the representations made by, and the performance of the agreements of, the Weiss [Companies] hereunder. Weiss further agrees that he shall take all actions within his control, including by exercising all of his voting, governance management and other rights and powers with respect to each of the other Weiss [Companies], any of their subsidiaries and any of his personal or his family's trusts to cause such persons to comply with the terms of this agreement.

Dillabough Decl., Ex. 3 § 9.

12687684-5

51. The reference to the "agreements of[] the Weiss [Companies] hereunder" in Section 9 is a direct reference to Section 2, the "Weiss [Companies] Agreements," which required Mr. Weiss to use his authority to ensure the performance of those agreements by the Weiss Companies. Dillabough Decl., Ex. 3 § 2.

52. Nowhere in the agreement does Mr. Weiss guarantee any payment, much less "the full and punctual payment and performance" guaranteed by Weiss Companies. Dillabough Decl., Ex. 3 §§ 3(b), 9.

53. There is no provision in the Forbearance Agreement pursuant to which Mr. Weiss personally guaranteed payment of over $50 million in notes or note purchase agreements. Dillabough Decl. ¶ 25; *see* Dillabough Decl., Ex. 3.

54. There is also no provision in the Forbearance Agreement pursuant to which Mr. Weiss personally guaranteed payment of over $50 million allegedly due under the Strategic Relationship Agreement. Dillabough Decl. ¶ 25; *see* Dillabough Decl., Ex. 3.

55. At no point prior to the initiation of this lawsuit did Jefferies ever discuss with Mr. Weiss a $100 million guaranty of the Weiss Companies' corporate debts or assert that Section 9 could be understood to include a personal payment guarantee. Weiss Decl. ¶ 31

    3) JSI's Sole Obligation Under the Forbearance Agreement.

56. JSI had a single obligation under the Forbearance Agreement: it simply agreed to forbear from commencing an action to recover under the notes against the Weiss Companies for no more than two business days. Dillabough Decl., Ex. 3 § 6.

57. JSI did not agree to forego suit against Mr. Weiss or any Weiss Companies' employees for any period. Dillabough Decl., Ex. 3 § 6.

58. Leucadia had no obligations whatsoever under the Forbearance Agreement. *See* Dillabough Decl., Ex. 3.

G. <u>Jefferies Rejects the "Unilaterally Modified" Forbearance Agreement</u>

59. At 8:53 am on February 12, 2024, Jefferies' outside attorney, Mr. Balber, wrote a letter to the Weiss Companies stating that the Weiss Companies' edits to the Forbearance Agreement were not acceptable. Dillabough Decl. ¶ 27; Dillabough Decl., Ex. 5.

60. Mr. Balber explained, "At 2:20 a.m. this morning, the Jefferies Parties provided you with a draft Forbearance Agreement, pursuant to which they offered to temporarily forego commencing any Enforcement Action against the Weiss [Companies] during the Forbearance Period. As part of that offer, the Jefferies Parties ***required*** that: the Weiss [Companies] admit that they had made statements to the Jefferies Parties that they would not make certain bonus payments under the second half of February 2024 . . . [and] admit that they had paid the bonuses on February 8, 2024." Dillabough Decl., Ex. 5 (emphasis added).

61. As a result of the Weiss Companies' deletion of the required admissions, Jefferies made clear that there was no agreement, but nonetheless demanded that, "in the meantime," the Weiss Companies comply with their representations and the agreement to produce financial records. Dillabough Decl., Ex. 5.

62. The letter also noted that the "Jefferies Parties reserve[d] all of their rights to bring claims and pursue remedies arising from the Weiss [Companies'] misconduct." Dillabough Decl., Ex. 5.

63. In other words, Jefferies informed the Weiss Companies that it was not bound by its sole obligation not to bring a claim to enforce the notes. Dillabough Decl. Ex. 5; Dillabough Decl. Ex. 3 § 6.

10

64. Jefferies never signed the Forbearance Agreement. Dillabough Decl. ¶ 28.

65. During the week of February 12, in the hopes that Jefferies would refocus on negotiations with the Strategic Partner, the Weiss Companies transmitted the information requested in the Forbearance Agreement — most of which Jefferies already possessed. Dillabough Decl. ¶ 28.

66. The Weiss Companies did not comply with certain provisions of the purported forbearance agreement, such as setting up account control agreements, since Jefferies never accepted or signed the modified Forbearance Agreement that Mr. Dillabough had sent them. Dillabough Decl. ¶ 28.

67. On February 15, 2024, GWA repaid $3 million owed under the notes. Dillabough Decl. ¶ 29.

68. Both the Weiss Companies and Jefferies refocused on the transaction with the Strategic Partner, exchanging numerous term sheets and discussing what amount Jefferies would accept to be bought out of its position. Dillabough Decl. ¶ 29.

69. The negotiations with the Strategic Partner included paying Jefferies a $30 million payment from the Strategic Partner, and additional consideration of approximately $12 million from the Weiss Companies, in full satisfaction of the amounts owed to Jefferies. Weiss Decl. ¶ 25; Dillabough Decl. ¶ 8.

H. <u>The Weiss Companies Shut Down and Jefferies Ramps Up Threats of Litigation to Maximize Its Payment</u>

70. On February 17, five days after rejecting the "unilaterally modified Forbearance Agreement," Mr. Daraviras emailed Mr. Dillabough a draft complaint (the "February Draft Complaint"). Dillabough Decl. ¶ 30; Dillabough Decl., Ex. 6; Weiss Decl. ¶ 26.

11

71. The February Draft Complaint was a threat to sue Mr. Weiss, GWA, WMSA, and 79 other employees of the Company personally. Dillabough Decl. ¶ 30; Dillabough Decl., Ex. 6; Weiss Decl. ¶ 26.

72. The February Draft Complaint does not reference the Forbearance Agreement. *See* Dillabough Decl. Ex. 6.

73. The February Draft Complaint does not allege that Mr. Weiss guaranteed the corporate debts owed to Jefferies. *See* Dillabough Decl., Ex. 6.

74. After transmitting the February Draft Complaint, Jefferies rejected the $30 million offer made by the Strategic Partner and demanded $50 million in cash. Weiss Decl. ¶ 28; Dillabough Decl. ¶ 31.

75. On February 28, 2024, the Strategic Partner informed Mr. Weiss that it would not agree to the transaction at the level that Jefferies was demanding. Weiss Decl. ¶ 29; Dillabough Decl. ¶ 31.

76. On March 26, 2024, Jefferies, through counsel, Mr. Balber, sent a second draft complaint (the "March Draft Complaint"). Dillabough Decl. ¶ 32; Dillabough Decl., Ex. 7; Weiss Decl. ¶ 30.

77. The March Draft Complaint dropped the 79 employees from the suit, and alleged that Mr. Weiss and "his close cronies" abused their position and treated the companies as their "personal piggy bank." *See* Dillabough Decl., Ex. 7 ¶ 1.

78. The March Draft Complaint does *not* allege that Mr. Weiss personally guaranteed the corporate debts owed to Jefferies. Dillabough Decl., Ex. 7 ¶¶ 70-78.

79. The sole allegation regarding Mr. Weiss's breach of the Forbearance Agreement was that he "fail[ed] to take all actions within his control" to prevent the Weiss Companies from making the March 1 payments to vendors. Dillabough Decl., Ex. 7 ¶¶ 76, 106-09.

80. The Demand for Relief summarizes Jefferies' understanding that Mr. Weiss could only be found liable for a breach of the Weiss Party Agreements, not for a Section 3 guaranty:

> WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against defendants as follows:
>
> (a) On the First Cause of Action, a judgment in JSI's favor and against ==GWA, WMSA, WMSF, OGI, and WSPO== for money damages in an amount to be determined at trial, but believed to be not less than $49,832,562.00, representing the outstanding principal and interest owed to JSI under the Notes;
>
> (b) On the Second Cause of Action, a judgment in LAM Holdings' favor and against ==GWA, WMSA, WMSF, OGI, and WSPO== for money damages in an amount to be determined at trial, but believed to be not less than $50,597,604.00, representing all outstanding principal and interest owed to LAM Holdings under the Strategic Relationship Agreement as of December 31, 2023;
>
> (c) On the Third and Fourth Causes of Action, a judgment in Plaintiffs' favor and against the Insiders voiding the voidable transfers set forth above;
>
> (d) On the Fifth Cause of Action, a judgment in JSI's and LAM Holdings' favor and against ==GWA, WMSA, WMSA, WMSF, OGI, WSPO, and George Weiss== for money damages in an amount to be determined at trial, but believed to be not less than $470,370.98, representing the amounts transferred by GWA and WMSA in breach of the February Forbearance Agreement on March 1, 2024;

Dillabough Decl., Ex. 7, Demand for Relief (emphasis added).

81. At no point before, during or after the signing of the Forbearance Agreement did anyone communicate to Mr. Weiss that Mr. Weiss might be personally responsible for the entire amount owed. Weiss Decl. ¶¶ 3, 21, 23, 31.

Dated: New York, New York
November 5, 2024

        KAPLAN RICE LLP

        By: */s/ Howard Kaplan*
            Howard Kaplan
            Michelle Rice
            142 West 57th Street
            Suite 4A
            New York, New York 10019
            (212) 235-0300

        OLSHAN FROME WOLOSKY LLP

        By: */s/ Brian A. Katz*
            Brian A. Katz
            Daniel M. Stone
            1325 Avenue of the Americas
            New York, New York 10019
            (212) 451-2300

        *Attorneys for George Weiss*

12687684-5