**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JEFFERIES STRATEGIC INVESTMENTS, LLC
and LEUCADIA ASSET MANAGEMENT
HOLDINGS LLC,

                    Plaintiffs,

        -against-

GEORGE WEISS,

                    Defendant.

Case No. 1:24-cv-04369-AKH

**JEFFERIES STRATEGIC INVESTMENTS, LLC AND LEUCADIA**
**ASSET MANAGEMENT HOLDINGS LLC'S MEMORANDUM OF LAW IN**
**OPPOSITION TO GEORGE WEISS'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ..............................................................................................3

    I.    Weiss Executes the Forbearance
          Agreement to Protect the George Weiss Companies ......................................3

    II.    Plaintiffs Accept the Forbearance Agreement by their Conduct ..................5

    III.   The George Weiss Companies Declare Bankruptcy
          and the Bankruptcy Court Rejects Weiss's Arguments ...............................5

ARGUMENT ...................................................................................................................7

    I.    The Forbearance Agreement is Enforceable ................................................8

          A.    Weiss is Collaterally Estopped from Disputing
                the Enforceability of the Forbearance Agreement .........................8

          B.    There Was a "Meeting of the Minds" as a Matter of Law...........10

    II.    Weiss Personally Guaranteed His Companies' Payment Obligations ........14

          A.    Weiss is Collaterally Estopped
                from Disputing His Payment Obligation .....................................14

          B.    Weiss's Guarantee Requires Payment as a Matter of Law...........14

          C.    Weiss's Textual Arguments are Unavailing ................................15

CONCLUSION...............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

*Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*,
  578 F. Supp. 3d 467 (S.D.N.Y. 2022) ................................................................. 11

*Am. Trading Co. v. Fish*,
  42 N.Y.2d 20 (1977) ............................................................................... 15, 17

*Asesores y Consejeros Aconsec CIA, S.A. v. Glob. Emerging Markets N. Am., Inc.*,
  841 F. Supp. 2d 762 (S.D.N.Y. 2012) ................................................................. 12

*Bazak Int'l Corp. v. Tarrant Apparel Grp.*,
  378 F. Supp. 2d 377 (S.D.N.Y. 2005) ................................................................. 11

*Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*,
  310 F. Supp. 2d 556 (S.D.N.Y. 2003) ................................................................. 16

*Eldor Contracting Corp. v. Cnty. of Nassau*,
  272 A.D.2d 509 (2d Dep't 2000) ....................................................................... 13

*Fernicola v. Specific Real Prop. in Possession,
  Custody, Control of Healthcare Underwriters Mut. Ins. Co.*,
  2001 WL 1658257 (S.D.N.Y. Dec. 26, 2001) ................................................... 9, 14

*GWA, LLC v. Jefferies Strategic Inv., LLC
  (In re Weiss Multi-Strategy Advisers LLC)*,
  2024 WL 4276161 (Bankr. S.D.N.Y. Sept. 24, 2024) ..................................... 6, 7, 10

*HSH Nordbank AG v. Street*,
  421 Fed. App'x 70 (2d Cir. 2011) ...................................................................... 7

*J. Pub. Co. v. Am. Home Assur. Co.*,
  740 F. Supp. 1015 (S.D.N.Y. 1990) ................................................................... 19

*Kaplan v. Bennett*,
  465 F. Supp. 555 (S.D.N.Y. 1979) ..................................................................... 8

*Keis Distribs., Inc. v. Northern Distrib. Co.*,
  226 A.D.2d 967 (3d Dep't 1996) ...................................................................... 11

*Kensington House Co. v. Oram*,
  293 A.D.2d 304 (1st Dep't 2002) ...................................................................... 7

*Merch. Cash & Cap., LLC v. Haute Soc'y Fashion, Inc.*,
  2017 WL 2912452 (E.D.N.Y. July 6, 2017) ..................................................... 15, 17

*Muscatello v. Artco Chem. Inc.*,
    251 A.D.2d 882 (3d Dep't 1998) ........................................................................ 12

*Quadrant Structured Prod. Co. v. Vertin*,
    23 N.Y.3d 549 (2014) ........................................................................................ 18

*Richman v. Brookhaven Servicing Corp.*,
    80 Misc. 2d 563 (Dist. Ct. Suffolk Cnty. 1975) .................................................. 12

*Roche Diagnostics GmbH v. Enzo Biochem, Inc.*,
    992 F. Supp. 2d 213 (S.D.N.Y. 2013) ................................................................ 14

*Savignano v. Play*,
    210 A.D.3d 1228 (3d Dep't 2022) ...................................................................... 13

*Sterling Investor Servs., Inc. v. 1155 Nobo Assocs., LLC*,
    30 A.D.3d 579 (2d Dep't 2006) .......................................................................... 18

*Superior Funding Corp. v. Big Apple Cap. Corp.*,
    738 F. Supp. 1468 (S.D.N.Y. 1990) ................................................................ 9, 10

*Taj Int'l Corp. v. Bashian & Sons, Inc.*,
    674 N.Y.S.2d 307 (1st Dep't 1998) .................................................................... 11

*Tucker Leasing Cap. Corp. v. Pizzuti Dev., Inc.*,
    1992 WL 554186 (E.D.N.Y. Jan. 7, 1992) ........................................................ 16

*U.S. Bank N.A. v. Perlmutter*
*(In re S. Side House, LLC)*,
    470 B.R. 659 (Bankr. E.D.N.Y. 2012) ................................................................ 8

*U.S. Tr. Co. of N.Y. v. Sec. Planners, Inc.*,
    238 A.D.2d 114 (1st Dep't 1997) ...................................................................... 18

*Wang v. Pataki*,
    396 F. Supp. 2d 446 (S.D.N.Y. 2005) ............................................................ 9, 14

*WCW, Inc. v. Atlantis Indus., Inc.*,
    698 F.Supp.3d 708 (D. Vt. 2023) ...................................................................... 11

*Westside Winery, Inc. v. SMT Acquisitions, LLC*,
    2022 WL 4329735 (E.D.N.Y. Sept. 19, 2022) .................................................. 11

**Rules**

Fed. R. App. P. 4 ...................................................................................................... 10

Plaintiffs Jefferies Strategic Investments, LLC ("JSI") and Leucadia Asset Management Holdings LLC ("LAM Holdings," and with JSI, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to the motion for summary judgment (ECF No. 24; the "Motion") filed by defendant George Weiss ("Weiss").

## PRELIMINARY STATEMENT

Weiss moves for summary judgment seeking to disavow the plain terms of an agreement he signed and to relitigate a dispute he already lost. The Motion should be denied.

In February 2024, a group of hedge fund companies bearing Weiss's name (the "George Weiss Companies") owed approximately $100 million to Plaintiffs. In a calculated effort to protect those entities from Plaintiffs' imminent collection activities, Weiss entered into a Forbearance Agreement with Plaintiffs on behalf of the George Weiss Companies and in his personal capacity. As part of that agreement, Plaintiffs agreed to temporarily "forbear from seeking relief or exercising any remedies under title 11 of the United State Code," and from bringing any "enforcement action, suit, litigation, claim or other action" to recover the amounts owed by the George Weiss Companies. (CSUF ¶ 56).

In return, the George Weiss Companies agreed to guarantee each other's obligations, provide security for their obligations, and furnish Plaintiffs with certain information. (CSUF ¶¶ 40–45). And Weiss, personally, agreed that he "unconditionally and irrevocably personally guarantee[] to [the Plaintiffs] . . . the performance of the agreements of, the [George Weiss Companies] hereunder." (CSUF ¶ 50). As the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has already held when analyzing the Forbearance Agreement, that guarantee constitutes a promise from Weiss to ensure the "prompt and complete payment" of the George Weiss Companies' obligations "when due." *See GWA, LLC v. Jefferies*

*Strategic Inv., LLC (In re Weiss Multi-Strategy Advisers LLC)*, 2024 WL 4276161, at *28 (Bankr. S.D.N.Y. Sept. 24, 2024).

Nonetheless, through this Motion, Weiss seeks an order declaring that: (i) he is not bound by the Forbearance Agreement—even though he signed it and Plaintiffs performed under it— because there was no "meeting of the minds"; and (ii) the personal guarantee contained in the Forbearance Agreement does not guarantee the George Weiss Companies' payment obligations (even though it does exactly that). Neither of these arguments has any merit.

Weiss's contention that there was not a "meeting of the minds" ignores reality and fails as a matter of law. The record unequivocally shows, and the Bankruptcy Court already found as a matter of law, that Plaintiffs accepted the Forbearance Agreement through their objective actions, including by filing U.C.C. financing statements which perfected security interests granted to them in the Forbearance Agreement. Weiss is precluded from relitigating this issue here.

Weiss's argument that the Forbearance Agreement does not contain a "payment guarantee" is equally misplaced. Under well-settled New York law, a personal guarantee of "performance," like the one here extends, of course, to the performance of the underlying payment obligation. For that very reason, the Bankruptcy Court specifically rejected Weiss's identical argument. Weiss attempts to avoid this well-settled law by vainly ignoring the Bankruptcy Court's decision, and introducing after-the-fact affidavits attesting to what Weiss and his subordinates now claim they believed when he signed the Forbearance Agreement. This extrinsic evidence is irrelevant and should not be considered as any basis to undermine the words in the document Weiss signed. Indeed, the Forbearance Agreement contains a clear, unambiguous, and unavoidable merger clause that expressly precludes the consideration of the kind of extraneous "facts" which Weiss seeks to deploy here.

Accordingly, because Weiss contractually guaranteed the George Weiss Companies' payment obligations, the Motion should be denied.

## STATEMENT OF FACTS

### I.  Weiss Executes the Forbearance Agreement to Protect the George Weiss Companies

Defendant George Weiss is the founder of the George Weiss Companies.  (CSUF ¶ 1).[1] From 2018 to 2022, one of those companies—GWA, LLC ("GWA")—entered into several agreements with Plaintiffs, pursuant to which GWA assumed certain payment obligations to Plaintiffs.  (CSUF ¶¶ 6–7, 82–86).  At least $95,664,183.00 is due and owing under those agreements and, as of February 12, 2024, Plaintiffs were entitled to pursue the entirety of those amounts.  (*See* CSUF ¶¶ 90–105, 107–110, Balber Decl. Ex. 1-I).[2]

In his Motion, Weiss creates a one-sided account of the negotiations that occurred in early 2024 regarding this indebtedness.  (*See generally* Weiss Memo at 5–6).[3]  While Plaintiffs disagree with nearly every single implication of this narrative (and note that it is uncontested that Plaintiffs had previously provided the George Weiss Companies with **years** of forbearances), Weiss's entire exercise is irrelevant.  What matters is that on February 12, 2024, in a calculated move to protect his companies from Plaintiffs' collection efforts, Weiss—a 46-year veteran of the hedge fund business, who was being directly counselled by experienced counsel—reviewed, amended, and then signed the Forbearance Agreement.  (CSUF ¶¶ 2–3, 35).

---

[1]      "CSUF" refers to the Plaintiffs' Responses to Defendant George Weiss's Statement of Material Facts Pursuant to Local Rule 56.1.

[2]      "Balber Decl." refers to the Declaration of Scott S. Balber (ECF No. 30).  References to "Ex. __" refer to the exhibits to the Balber Decl.

[3]      "Weiss Memo" refers to Defendant George Weiss's Memorandum of Law in Support of Motion for Summary Judgment (ECF No. 25).

Section 3(a) of the Forbearance Agreement provides that each of the George Weiss Companies, "(other than GWA) . . . irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other [of the George Weiss Companies] when due (whether at the stated maturity, by acceleration or otherwise) of the Guaranteed Obligations (as herein defined)."  (CSUF ¶ 43).  The Guaranteed Obligations included, *inter alia*, "all the obligations of GWA and each other [of the George Weiss Companies] arising under any Note Purchase Agreement, the Notes, the [Strategic Relationship] Agreement and this Agreement . . . ."  (CSUF ¶¶ 43–44).

George Weiss also agreed to a sweeping personal guarantee of the George Weiss Companies' performance under the Forbearance Agreement.  The personal guarantee provides:

> ***Weiss unconditionally and irrevocably personally guarantees*** to the [Plaintiffs] the accuracy of the representations made by, and ***the performance of the agreements of, the [George Weiss Companies] hereunder***.  Weiss further agrees that he shall take all actions within his control, including by exercising all of his voting, governance, management and other rights and powers with respect to each of the other Weiss Parties, any of their subsidiaries and any of his personal or his family's trusts to cause such persons to comply with the terms of this Agreement.

(CSUF ¶ 50 (emphasis added)).

In addition, the Forbearance Agreement contains a broad merger clause which provides that:

> All agreements, covenants, representations and warranties, express or implied, oral and written, of the parties hereto concerning the subject matter hereof, are contained herein.  No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party hereto to any other concerning the subject matter hereof.   All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter hereto are merged herein.

(CSUF ¶ 87).

II.     **Plaintiffs Accept the Forbearance Agreement by their Conduct**

The record is clear that Plaintiffs offered not to enforce their rights against Weiss and the George Weiss Companies in exchange for Weiss and his companies' agreeing to the terms of the Forbearance Agreement.  The record is equally clear that Weiss and the George Weiss Companies, all represented by experienced counsel, accepted that offer and agreed to the terms of the Forbearance Agreement.  And, the record is also clear that Plaintiffs performed under the Forbearance Agreement.  Under the Forbearance Agreement, the Plaintiffs were required to forbear from bringing suit until the "earlier of (x) two Business Days after such date or (y) the occurrence of any Forbearance Default."  (CSUF ¶ 56).  Plaintiffs did just that:  they did not bring any actions against the Weiss Companies within the two business days following its execution.  (*See* CSUF ¶ 70).  They also did not threaten to bring any actions against the Weiss Companies in those two days.  (*See* CSUF ¶ 70).

Moreover, on February 13, 2024—one day after Weiss executed the Forbearance Agreement—JSI filed a UCC Financing Statement with the New York Department of State, recording the security interests granted to it through the Forbearance Agreement.  (CSUF ¶ 88).

III.    **The George Weiss Companies Declare Bankruptcy
        and the Bankruptcy Court Rejects Weiss's Arguments**

Notwithstanding their obligations under the Forbearance Agreement, the George Weiss Companies failed to make payment of any of the Guaranteed Obligations.  (CSUF ¶¶ 90–105, 107–110).  As of this filing, the George Weiss Companies admit that they owe—either pursuant to the pre-existing contractual agreements or the Forbearance Agreement—$95,664,183.00 to Plaintiffs.  (CSUF ¶¶ 90–105, 107–110).  Not a single penny of that has been paid, either by the George Weiss Companies or by Weiss as guarantor.

Instead, on April 29, 2004, the George Weiss Companies filed voluntary petitions under chapter 11 of title 11 of the United States Code.  Simultaneously, the George Weiss Companies filed an adversary proceeding against the Plaintiffs which sought, in relevant part, to invalidate the Forbearance Agreement, including Weiss's personal guarantee.  (CSUF ¶ 111).  As part of that adversary proceeding, both Weiss and the George Weiss Companies had a full and fair opportunity to present their arguments that Weiss's guarantee was not a "payment guarantee," but lost their arguments.  (CSUF ¶¶ 115–117).  The Bankruptcy Court expressly and unequivocally rejected the argument raised by Weiss, holding that "*a strict construction of the 2024 Forbearance Agreement, even in Weiss's favor, makes clear that Weiss's performance guarantee was also a guarantee of payment*."  *GWA, LLC*, 2024 WL 4276161, at \*28 (emphasis added).

The George Weiss Companies also "demand[ed] judgment holding that the Amended Forbearance Agreement [and, in turn, the personal guarantee contained therein] is null and void, and unenforceable" reasoning that there was not a "meeting of the minds" because Plaintiffs "never executed and returned the Amended Forbearance Agreement," but instead "indicated that they did not agree with certain of the modified terms."  (CSUF ¶ 113).

The Bankruptcy Court expressly rejected that argument as well, finding—as a matter of law—as follows:

> The Debtors further allege that the . . . Forbearance Agreement should be deemed null and void as the Jefferies Entities' actions "*further indicated that they had no intention of complying*" with its terms, including "*subsequent continued correspondence and threat to commence action against the Debtors and their employees*."  The Jefferies Entities' actions taken after the Debtors signed the . . . Forbearance Agreement suggest otherwise.  Therefore, the FAC has not alleged sufficient facts to support a plausible claim that the Jefferies Entities did not intend to comply with the terms of the 2024 Forbearance Agreement.

*GWA, LLC*, 2024 WL 4276161, at *24 (emphasis added) (citations omitted).  The Bankruptcy Court supported that decision and found that Plaintiffs established their agreement to the terms of the Forbearance Agreement by taking "'objective' actions [that] show[ed] that they intended to be bound by the [] Forbearance Agreement," including by (i) "fil[ing] UCC-1 financing statements to perfect the security interests granted under the [] Forbearance Agreement"; and (ii) by refraining from bringing suit, or providing the George Weiss Companies with notice that they intended to bring suit, until after they fulfilled their agreement to forbear.  *Id.* at *25.

Weiss's Motion ignores that binding decision.  Instead, Weiss cites to a letter that was sent by Plaintiffs' counsel shortly following Weiss's execution of the Forbearance Agreement.  Weiss claims that letter announced that Plaintiffs were "not bound by [their] sole obligation not to bring a claim against the [George] Weiss Companies to enforce the notes." (Weiss Memo at 10).  But the letter says no such thing.  Rather, in direct contrast to Weiss's current contention, the letter states that Plaintiffs "expect[ed] the Weiss Parties to abide by the representations made to [Plaintiffs] in the unilaterally modified Forbearance Agreement." (*Id.*).

Now, through this Motion, Weiss repeats both of the arguments that the Bankruptcy Court expressly rejected, and claims that he is entitled—as a matter of law—to dismissal of the guarantee claims that have been asserted against him. (Weiss Memo at 13–23).  For the reasons set forth below, Weiss's Motion must be denied.

## ARGUMENT

To establish its right to summary judgment dismissing a breach of guarantee claim, a guarantor must show that there is no triable fact that there is:  (i) no guaranty; (ii) no underlying debt; or (iii) no failure to perform under the guarantee.  *HSH Nordbank AG v. Street*, 421 Fed. App'x 70, 72 (2d Cir. 2011) (quoting *Kensington House Co. v. Oram*, 293 A.D.2d 304, 305 (1st Dep't 2002)).

The Weiss Memo does nothing to establish any of these points. Indeed, it fails to even attempt to rebut Plaintiffs' showing that the very opposite is true, since: (i) Weiss "unconditionally and irrevocably personally guarantee[d] . . . the performance of the agreements of, the [George Weiss Companies]" under the Forbearance Agreement (CSUF ¶ 50); (ii) at least $95,664,183.00 is due and owing under the Strategic Relationship Agreement, the Notes, and the Note Purchase Agreements (CSUF ¶¶ 90–105, 107–110); and (iii) Weiss has not made any payment to Plaintiffs of the amounts owed (CSUF ¶¶ 90–105, 107–110).

Because Weiss cannot meet his burden to prove that any of the above elements are not met, he must establish—as a matter of law—a *bona fide* defense to his liability. *See U.S. Bank N.A. v. Perlmutter (In re S. Side House, LLC)*, 470 B.R. 659, 677 (Bankr. E.D.N.Y. 2012). His Motion fails to do so.

## I. The Forbearance Agreement is Enforceable

Weiss argues that he is entitled to summary judgment because—in his self-serving, after-the-fact view—there is no genuine issue of material fact that "the material terms of the Forbearance Agreement were never mutually agreed to by the parties, there was no meeting of the minds and no contract was formed." (Weiss Memo at 13). This argument fails for several reasons.

### A. Weiss is Collaterally Estopped from Disputing the Enforceability of the Forbearance Agreement

This Court need not even consider Weiss's challenge to the enforceability of the Forbearance Agreement because he has already litigated this precise issue and lost and, in turn, is collaterally estopped from raising this argument again.

Collateral estoppel bars a party from relitigating: (i) an "issue necessarily decided on the merits in [a] prior suit;" (ii) where they "had a full and fair opportunity to litigate the issue."

*Kaplan v. Bennett*, 465 F. Supp. 555, 559 (S.D.N.Y. 1979).  Here, both elements of the test are satisfied.

*First*, Weiss had a full and fair opportunity to litigate the issue.  A party has a full and fair opportunity to litigate an issue where the "previous action involve[s] the [same party] or those in privity with them." *Fernicola v. Specific Real Prop. in Possession, Custody, Control of Healthcare Underwriters Mut. Ins. Co.*, 2001 WL 1658257, at *4 (S.D.N.Y. Dec. 26, 2001).

Here, Weiss's own counsel appeared and argued at the hearing before the Bankruptcy Court.  (*See* Balber Decl. Ex. 17 45:5–15, 49:10–15).  That alone is sufficient to establish that Weiss availed himself of a full and fair opportunity to litigate his position.  *See Wang v. Pataki*, 396 F. Supp. 2d 446, 455 (S.D.N.Y. 2005) (precluding relitigating issue in later case where the defendant's principal made an appearance in prior case).  But, even if Weiss's personal counsel had not appeared, Weiss would also be barred be Bankruptcy Court's ruling because the George Weiss Companies are controlled by Weiss—their founder, manager, and executive—and litigated this exact issue.  *See, e.g.*, *Superior Funding Corp. v. Big Apple Cap. Corp.*, 738 F. Supp. 1468, 1470 ("The law is well settled that guarantors of payment of a corporate debt, particularly where such guarantors are controlling shareholders, executive officers and directors of that corporation, are parties to and control the lawsuit against the borrower, and had a full and fair opportunity to contest the granting of the judgment, are in privity with the corporate borrower and therefore bound by a judgment against the corporation."); *Fernicola*, 2001 WL 1658257, at *4 (precluding corporate officer from relitigating issue decided in litigation against the company he led).

*Second*, the issue was already plainly decided by the Bankruptcy Court.  In    both    the adversary proceeding and on this Motion, Weiss argues that:

(i)    "the Amended Forbearance Agreement is null and void, and unenforceable," (*compare* Balber Decl. Ex 14 ¶ 123, *and* Balber Decl. Ex. 16 at 20, *with* Weiss Memo at 13–16);

(ii)    Plaintiffs "never executed and returned the Amended Forbearance Agreement," "indicated that they did not agree with certain of the modified terms," and "that they had no intention of complying with the . . . Forbearance Agreement, including [in] subsequent continued correspondence and threat[s] to commence action against the Debtors and their employees" (*compare* Balber Decl. Ex 14 ¶ 120, *and* Balber Decl. Ex. 16 at 20, *with* Weiss Memo at 15–16, *and* CSUF ¶¶ 62, 70–81); and

(iii)    there was at least a question of fact as to whether there was a "meeting of the minds" with respect to the Forbearance Agreement (*see* Balber Decl. Ex. 16 at 20).

The Bankruptcy Court properly rejected these arguments, finding that Plaintiffs established their agreement to the terms of the Forbearance Agreement by taking "'objective' actions to show that they intended to be bound by the [] Forbearance Agreement," including by (i) "no later than one day after [Weiss] signed the [] Forbearance Agreement, . . . fil[ing] UCC-1 financing statements to perfect the security interests granted under the [] Forbearance Agreement"; and (ii) by refraining from bringing suit, or providing the George Weiss Companies with notice that they intended to bring suit until after they fulfilled their agreement to forbear. *GWA, LLC*, 2024 WL 4276161, at *24–25 (citations omitted).

Accordingly, the question as to whether Plaintiffs agreed to the Forbearance Agreement has been definitively decided in Plaintiffs' favor. *See Superior Funding Corp.*, 738 F. Supp. at 1470–71 (S.D.N.Y. 1990) (determination of liability under contract collaterally estopped relitigating issues in action regarding guarantee).[4]

## B.    There Was a "Meeting of the Minds" as a Matter of Law

Even if this Court were to consider Weiss's argument that there was no "meeting of the minds and no contract was formed," (Weiss Memo at 13), Weiss's Motion would still fail.

---

[4]    The George Weiss Companies have not filed a notice of appeal from the Bankruptcy Court's order.  The time to appeal expired on October 24, 2024.  Fed. R. App. P. 4.

To obtain summary judgment that a contract is invalid for lack of the meeting of the minds, Weiss must show that "[c]onstruing evidence in the light most favorable to the non-moving party," the parties' actions do not "demonstrate . . . objective assent for a reasonable jury to find intent to form a contract." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 389 (S.D.N.Y. 2005). This standard is exceedingly high. *See Westside Winery, Inc. v. SMT Acquisitions, LLC*, 2022 WL 4329735, at *3 (E.D.N.Y. Sept. 19, 2022) ("[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." (alterations in original)). Indeed, in assessing an evidentiary showing that there was no meeting of the minds, "the court looks 'not to the[] [parties'] after-the-fact professed subjective intent, but their objective intent as manifested by their expressed words and deeds at the time'" of contracting. *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 497 (S.D.N.Y. 2022) (alterations in original). When the parties' "expressions and conduct would lead a reasonable person to conclude that they intended to reach a binding agreement, the agreement is enforceable." *Id.*

Here, there can be no dispute that Weiss, a seasoned industry professional who was represented by experienced counsel, agreed to the terms of the Forbearance Agreement by signing it. *See Taj Int'l Corp. v. Bashian & Sons, Inc.,* 674 N.Y.S.2d 307, 309 (1st Dep't 1998) (defendant's signature and actions taken consistent with the agreement following its signing, pointed towards the binding nature of the agreement and the parties "mutual intent to be bound" by the agreement); *Keis Distribs., Inc. v. Northern Distrib. Co.,* 226 A.D.2d 967, 968 (3d Dep't 1996) (plaintiff's signing an offer was enough to bind the parties despite plaintiff's indication that counsel needed to work out the "wording of the final details"); *see also WCW, Inc. v. Atlantis*

*Indus., Inc.*, 698 F.Supp.3d 708, 719–720 (D. Vt. 2023) (signing of agreement indicated acceptance of terms, despite requesting changes to the terms of the offer).

Moreover, the plain purpose of the Forbearance Agreement was to bind Weiss. (*See* Dillabough Decl. Ex. 3 § 5(a) ("Each Weiss Party and Weiss hereby represents and warrants that . . . this Agreement is the legal, valid and binding obligation of such Weiss Party and Weiss . . . .")). That alone should dispose of the issue. *See Muscatello v. Artco Chem. Inc.*, 251 A.D.2d 882, 883 (3d Dep't 1998) ("The absence of a signature by the party seeking to enforce the agreement is without legal significance."); *see also Richman v. Brookhaven Servicing Corp.*, 80 Misc. 2d 563, 565 (Dist. Ct. Suffolk Cnty. 1975) ("The promise of the defendant to close the mortgage for a discount rate of 3 percent was made binding and obligatory upon the plaintiff's acts of forbearing to seek out another mortgage banker, submitting the mortgage application to defendant, and scheduling and preparing for the closing of title."). Nonetheless, in a futile effort to avoid his obligations, Weiss crafts two arguments.

*First*, Weiss claims that he rejected the Forbearance Agreement by changing two of the WHEREAS clauses that existed in a prior draft. (Weiss Memo at 15). But wishes do not make things come true. Weiss and the George Weiss Companies executed the Forbearance Agreement, which contained the exact same performance obligations as the draft agreement that Weiss purportedly rejected. Plaintiffs also unquestionably performed all of the obligations set forth in that agreement. Indeed, as the record shows, Plaintiffs: (i) fully complied with their obligation and did forbear from bringing suit against GWA (*see* CSUF ¶ 70); and (ii) promptly filed UCC-1 financing statements against certain of the parties to the Forbearance Agreement, in an effort to perfect the security interests granted under the Forbearance Agreement (*see* Balber Decl. Ex. 1 ¶ 22; Ex. 1-J). Plaintiffs' "objective manifestations of the intent" made clear that they "accepted

[the Forbearance A]greement . . . ," even as modified by Weiss. *Asesores y Consejeros Aconsec CIA, S.A. v. Glob. Emerging Markets N. Am., Inc.*, 841 F. Supp. 2d 762, 766 (S.D.N.Y. 2012); *Savignano v. Play*, 210 A.D.3d 1228, 1231 (3d Dep't 2022) ("[P]laintiff's transmission of the form contract and rider constituted an offer, and the sellers counteroffered by signing and returning to plaintiff only the form contract without the rider.  Plaintiff then accepted the counteroffer by proceeding with the inspections [on the property that was subject to the agreement], as 'a counteroffer may be accepted by conduct.'" (citations omitted)); *Eldor Contracting Corp. v. Cnty. of Nassau*, 272 A.D.2d 509 (2d Dep't 2000) (finding that a prime contractor accepted a subcontractor's terms and conditions where:  (i) the prime contractor sent the subcontractor a contract, (ii) the subcontractor sent it back "agreeing to undertake the work provided that" the prime contractor agree to, *inter alia*, abide by the subcontractor's limitations of liability in their T&C's, and (iii) the prime contractor "did not reply . . . but . . . shipped the first motor to [the subcontractor] for rehabilitation").

*Second*, Weiss argues that Plaintiffs rejected, as a matter of law, the Forbearance Agreement by sending a letter stating that they "reserve[d] all of their rights to bring claims and pursue remedies arising from the [George] Weiss [Companies'] misconduct."  (CSUF ¶ 62).  That argument fails for two reasons.  First, Weiss conveniently omits that the letter states that Plaintiffs "expect[ed] the Weiss Parties to abide by the representations made to the Jefferies Parties in the unilaterally modified Forbearance Agreement . . . ."  (Dillabough Decl. Ex. 5 at 6).  Second, the letter is irrelevant because, after it was sent, Plaintiffs objectively manifested their intent to accept the Forbearance Agreement.  (*See* Statement of Facts § II, *supra*).

Accordingly, because the evidence shows that the Plaintiffs formally offered the terms of the Forbearance Agreement, that Weiss accepted those terms, and that Plaintiffs *did* comply with the Forbearance Agreement, Weiss's argument to the contrary should be denied.

## II.    Weiss Personally Guaranteed His Companies' Payment Obligations

Weiss separately argues that he is entitled to summary judgment dismissing the claims against him because "[t]he plain language of the Forbearance Agreement makes clear that Section 9 is not a guaranty of personal payment." (Weiss Memo at 17). Weiss is estopped from making this meritless argument.

### A.    Weiss is Collaterally Estopped from Disputing His Payment Obligation

As set out in the Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment (the "Jefferies Motion Memo," ECF No. 32), this Court need not even consider the substance of Weiss's argument, since he has already litigated this precise issue and lost. (Jefferies Motion Memo § Arg. (II)(A)). Thus, just like his "meeting of the minds" argument, Weiss is also barred from disputing that the personal guarantee does not extend to a payment obligation. *See, e.g.*, *Fernicola*, 2001 WL 1658257, at \*4 (decision in case against corporation precluded relitigating issue in case against its corporate officer); *Wang*, 396 F. Supp. 2d at 455 (corporation was precluded from litigating issue already decided in earlier action against its CEO).

### B.    Weiss's Guarantee Requires Payment as a Matter of Law

Even assuming for the sake of argument that Weiss is not estopped, the Court should nevertheless deny Weiss's Motion.

"Under New York law, the first step in assessing a contract claim is to determine whether the contract is unambiguous with respect to the question disputed by the parties. That is a question of law for the court, [and s]ummary judgment is appropriate if the terms of the contract are

unambiguous." *See Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 217 (S.D.N.Y. 2013).

The guarantee in the Forbearance Agreement is unambiguous.  Weiss guaranteed "the performance of the agreements of, the [George Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (CSUF ¶¶ 43–44, 50).  These "Guaranteed Obligations" included the debts arising under Note Purchase Agreement, the Notes, and the Strategic Relationship Agreement.  (CSUF ¶¶ 43–44). Weiss's alternate reading of the guarantee is contrary to well-settled law holding that where a party "guarantee[s] performance of the terms and conditions of the agreement," which terms and conditions "require[] payment . . . , the guarantee must be interpreted as including payment according to and as provided in the agreement." *Am. Trading Co. v. Fish*, 42 N.Y.2d 20, 27–28 (1977); *see also Merch. Cash & Cap., LLC v. Haute Soc'y Fashion, Inc.*, 2017 WL 2912452, at *3 (E.D.N.Y. July 6, 2017) (personal guarantee of performance included a guarantee of payment despite the lack of explicit language providing for payment because "it would [otherwise] be challenging to prescribe some other meaningful purpose the Guaranty was intended to serve").

### C.    **Weiss's Textual Arguments are Unavailing**

As set forth above and in the Jefferies Motion Memo, a plain—and even generous—reading of the Forbearance Agreement establishes that Weiss guaranteed payment of the George Weiss Companies' debts to Plaintiffs, and in turn, Weiss's Motion should be denied.  Nevertheless, in a desperate effort to add confusion where none exists, Weiss makes four arguments, which he posits establish that his personal guarantee does *not* extend to any payment obligation.

#### i.    *Weiss's External Evidence Should be Ignored*

*First*, Weiss attempts to introduce a variety of extrinsic evidence regarding the meaning of the personal guarantee, including his—and his counsel's—after-the-fact affidavits.  (Weiss Memo

at 20–21).  However, New York law is clear that this extrinsic evidence may not be considered when interpreting an otherwise unambiguous contract.  *See, e.g.*, *Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556, 562 (S.D.N.Y. 2003) ("Under New York law, 'if a contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning.'").  Equally important and controlling, consideration of those affidavits are precluded by the Forbearance Agreement's merger clause which states:

> All agreements, covenants, representations and warranties, express or implied, oral and written, of the parties hereto concerning the subject matter hereof, are contained herein.  No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party hereto to any other concerning the subject matter hereof.  All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter hereto are merged herein.

(CSUF ¶ 87).  The affidavits cannot now be credited.  *Tucker Leasing Cap. Corp. v. Pizzuti Dev., Inc.*, 1992 WL 554186, at *9 (E.D.N.Y. Jan. 7, 1992) (merger clause precluded consideration of the parties' "understanding" or any "larger context" to vary "the contract's plain and clear meaning").

### ii.    Weiss Guaranteed the "Guaranteed Obligations"

Alternatively, Weiss argues—without any support—that:  (i) because the Forbearance Agreement defines a set of "Guaranteed Obligations," which includes payment of the Notes and Strategic Relationship Agreement obligations; and (ii) Weiss's personal guarantee does not refer to the "Guaranteed Obligations"; that (iii) Weiss's guarantee does not cover any payment obligations.  (Weiss Memo at 19–20).

However, the Forbearance Agreement nowhere excludes the "Guaranteed Obligations" from Weiss's personal guarantee.  To the contrary, Weiss broadly guaranteed all "***the***

*representations* made by, and ***the performance of the agreements of***, the [George Weiss Companies],” and additionally undertook to “***take all actions within his control***” to cause the George Weiss Companies “to comply with the terms of this Agreement.”  Balber Decl. Ex. 1-I § 9. Those “representations” and “agreements,” of course, included the George Weiss Companies’ guarantees of the “Guaranteed Obligations.”  *Fish*, 42 N.Y.2d at 27–28 (guarantee of performance “must be interpreted as including payment” where performance obligations included an obligation to pay); *Merch. Cash & Cap.*, 2017 WL 2912452, at *3 (personal guarantee of performance included a guarantee of payment despite the lack of explicit language).

> ### iii.    The Guarantee is Not Limited to the “Weiss Parties Agreements”

Weiss’s third argument is that his guarantee only applies to the “Weiss Party Agreements” set forth in Section 2 of the Forbearance Agreement, which do not specifically include a payment obligation.  (Motion at 17–19).  This argument fails for at least two reasons.

*First*, Weiss’s personal guarantee is not limited to the “Weiss Party Agreements.”  That phrase is not used in Weiss’s personal guarantee at all.  Instead, in Weiss’s guarantee, he personally guaranteed “the representations made by, and the performance of the agreements of, the [George Weiss Companies].”  As is noted above, those “agreements” *included* the George Weiss Companies’ agreement to pay the debts owed to Plaintiffs by GWA.  *See Fish*, 42 N.Y.2d at 27 (performance obligations include an obligation to pay); *Merch. Cash & Cap.*, 2017 WL 2912452, at *3 (personal guarantee of performance required payment).

*Second*, had the parties intended to limit the guarantee to obligations set forth in a particular section of the Forbearance Agreement (such as Section 2), they would have said so.  When the parties intended to limit an obligation of the Forbearance Agreement by referencing a specific section, they did so explicitly.  (*See, e.g.*, ECF No. 28-3 §§ 4(b) (“Each Weiss Party represents, warrants, and covenants that the security interest granted herein, and until expiration of the security

interests as provided in *Section 4(a)* . . . ." (emphasis added)), 4(e) ("Each Weiss Party shall within five Business Days of this Agreement, execute and deliver an account control agreement in respect of each account referred to in *Section 2(a)(iii)* . . . ." (emphasis added)), 10 ("This Agreement addresses the Past Due Obligations and the amounts under the IMA referenced in *Section 8 hereof*." (emphasis added)).  In contrast, Weiss's personal guarantee contains no reference to any other section of the Forbearance Agreement.  For that reason, Weiss's guarantee was not limited to any particular provision but rather applied to ***all obligations***—including the payment obligations—set forth in the Forbearance Agreement, regardless of the section in which they appeared.  *See Quadrant Structured Prod. Co. v. Vertin*, 23 N.Y.3d 549, 560 (2014) ("[I]f parties to a contract omit terms . . . the inescapable conclusion is that the parties intended the omission."); *Sterling Investor Servs., Inc. v. 1155 Nobo Assocs., LLC*, 30 A.D.3d 579, 581 (2d Dep't 2006) ("Under accepted canons of contract construction, when certain language is omitted from a provision but placed in other provisions, it must be assumed that the omission was intentional"); *U.S. Tr. Co. of N.Y. v. Sec. Planners, Inc.*, 238 A.D.2d 114, 114 (1st Dep't 1997) (reversing denial of plaintiffs' summary judgment motion finding that, notwithstanding the defendants' understanding that "the guaranty [was] limited to a particular sum, far less than the amount sought," summary judgment was appropriate because "[t]he guaranty contains no such limitation").

*iv.    The Forbearance Agreement is Unambiguous*

Finally, Weiss misrepresents New York law and argues that, based on his (implausible) textual arguments above, he has raised an ambiguity, which should "be strictly construed in favor of . . . Weiss," and in turn provide a basis for granting the Motion.  (Weiss Memo at 21).  This argument misses the mark.  "The mere assertion of an ambiguity [by the nonmoving party]" is insufficient to create an ambiguity.  Instead, "[a]mbiguity resides in a writing when—after it is

18

viewed objectively—more than one meaning may reasonably be ascribed to the language used." *J. Pub. Co. v. Am. Home Assur. Co.*, 740 F. Supp. 1015, 1018 (S.D.N.Y. 1990). As noted above, the meaning of Weiss's guarantee is unambiguous and apparent. Weiss's *ipse dixit* to the contrary does not warrant summary judgment in his favor.

## CONCLUSION

For the foregoing reasons, the Court should follow the Bankruptcy Court's finding of law and deny Weiss's Motion for summary judgment.

Dated:   New York, New York
         November 22, 2024

Respectfully submitted,

HERBERT SMITH FREEHILLS
  NEW YORK LLP
By: /s/ *Scott S. Balber*
     Scott S. Balber
     Michael P. Jones
     Daniel Gomez
200 Park Avenue
New York, New York 10166
Tel: (917) 542-7810
Fax: (917) 542-7601
Email:     Scott.Balber@hsf.com
           Michael.Jones@hsf.com
           Daniel.Gomez@hsf.com

*Attorneys for Plaintiffs*
*Jefferies Strategic Investments, LLC and*
*Leucadia Asset Management Holdings LLC*

19