**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS LLC,

Case No. 1:24-cv-04369-AKH

Plaintiff,

-against-

GEORGE WEISS,

Defendant.

---

### DEFENDANT WEISS'S REPLY TO JEFFERIES LOCAL RULE 56.1 COUNTERSTATEMENT

Pursuant to Local Civil Rule 56.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, defendant George Weiss, by and through his undersigned counsel, submits this REPLY to plaintiffs Jefferies Strategic Investments, LLC's ("JSI") and Leucadia Asset Management Holdings LLC's ("LAM Holdings," and with JSI, "Plaintiffs") counterstatement of material facts (ECF No. 36)

**A.    Parties**

1.    George Weiss is the founder of each of GWA, LLC ("GWA"), Weiss Multi-Strategy Funds LLC ("WMSF"), OGI Associates LLC ("OGI"), Weiss Special Operations LLC ("WSPO"), Weiss Multi-Strategy Advisers LLC ("WMSA," and collectively with GWA, WMSF, OGI, and WSPO, the "Weiss Companies"). Declaration of George Weiss, dated November 5, 2024 ("Weiss Decl.") ¶ 4.

**RESPONSE 1:  Not disputed.**

2.    Until recently, the Weiss Companies were some of the longest tenured hedge funds in the United States, managing approximately $4 billion at their peak. Weiss Decl. ¶ 5.

**RESPONSE 2:  Not disputed, but irrelevant. The assertions in paragraph 2 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). The tenure of the Weiss Companies[1] is immaterial and irrelevant to this dispute, which turns only on George Weiss's ("Weiss") failure to pay amounts under a guarantee made to Plaintiffs.**

3.    In 46 years of operation, the Weiss Companies ended a financial year with losses on only four occasions. Weiss Decl. ¶ 5.

**RESPONSE 3:  Not disputed, but irrelevant. The assertions in paragraph 3 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' financial performance over the last 46 years is immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

4.    Plaintiff JSI is a Delaware LLC and a subsidiary of Jefferies Financial Group. Complaint, ECF No. 1, Ex. A ¶ 11.

**RESPONSE 4:  Not disputed, but irrelevant. The assertions in paragraph 4 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Where JSI is organized, and its corporate structure, are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

5.    Plaintiff Leucadia is a Delaware LLC and a subsidiary of Jefferies Financial Group. Complaint, ECF No. 1, Ex. A ¶ 12.

---

[1] "Weiss Companies" refers to GWA, LLC ("GWA"), Weiss Multi-Strategy Funds LLC ("WMSF"), OGI Associates LLC ("OGI"), Weiss Special Operations LLC ("WSPO"), and Weiss Multi-Strategy Advisers LLC ("WMSA").

**RESPONSE 5: Not disputed, but irrelevant. The assertions in paragraph 5 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Where LAM Holdings is organized, and its corporate structure, are irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**B.    The Contracts Between Plaintiffs and Certain Weiss Companies**

6.    Jefferies has been in business with the Weiss Companies since 2018, when Leucadia entered into a "Strategic Relationship Agreement" with the Weiss Companies. Weiss Decl. ¶ 7; Declaration of Jeffrey Dillabough, dated November 5, 2024 ("Dillabough Decl.") ¶ 5.

**RESPONSE 6: Not disputed that on or about May 1, 2018, LAM Holding LLC and GWA entered into a Strategic Relationship Agreement (as amended, the "Strategic Relationship Agreement"). (Balber Decl. Ex. 1-A).[2] Also not disputed that, on or about October 18, 2018, LAM Holding LLC assigned all of its rights under the Strategic Relationship Agreement to LAM Holdings, pursuant to an Assignment and Assumption Agreement. (Dillabough Decl. Ex. 3 at 1; Balber Decl. Ex. 6 ¶ 26).[3]**

**Otherwise, disputed. Weiss defines "Jefferies" as JSI and LAM Holdings, and the "Weiss Companies," as including GWA, WMSF, OGI, WSPO, and WMSA. However, only LAM Holdings and GWA were parties to the Strategic Relationship Agreement. (*See* Balber Decl. Ex. 1-A). Weiss does not submit any evidence of a connection between JSI and any of the "Weiss Companies" as of 2018, and the proffered evidence shows only that LAM**

---

[2] "Balber Decl." refers to the Declaration of Scott S. Balber (ECF No. 30). References to "Ex.    " refer to the exhibits to the Balber Decl.

[3] "Dillabough Decl." refers to the Declaration of Jeffrey Dillabough (ECF No. 28). References to "Ex.    " refer to the exhibits to the Dillabough Decl.

Holdings had a contractual relationship with GWA at that time, but not any of the other Weiss Companies. (*See id.*).

7.      As part of this arrangement, Jefferies provided financing to GWA through promissory notes. Weiss Decl. ¶ 7; Dillabough Decl. ¶ 5.

**RESPONSE 7: Disputed. Under the Strategic Relationship Agreement, Leucadia Funding LLC, a non-party to this action, agreed to "open an investment account and fund it with $250,000,000 of Notional Value," and to share certain revenues and profits generated by GWA's business. (Balber Decl. Ex. 1-A at 1). The proffered evidence does not establish that JSI or LAM Holdings provided "financing to GWA through promissory notes" via the Strategic Relationship Agreement.**

**However, on or about December 3, 2019, GWA, WMSA, and JFG Funding LLC, entered into a Note Purchase Agreement (as amended, the "2019 Note Purchase Agreement"). (Balber Decl. Ex. 1-B). Then, on December 1, 2021, JFG Funding LLC and JSI entered into an Assignment and Assumption Agreement. (Balber Decl. Ex. 1- E). And, on or about September 21, 2022, GWA, WMSA, and JSI entered into a Note Purchase Agreement (as amended, the "2022 Note Purchase Agreement" and collectively with the 2019 Note Purchase Agreement, the "Note Purchase Agreements"). (Balber Decl. Ex. 1-F). Pursuant to those Note Purchase Agreements, GWA issued three notes to JSI (the "Notes"). (Balber Decl. Exs. 1-C, 1-D, 1-G).**

8.      Mr. Weiss is not personally a party to any of these agreements and did not guaranty any of the Weiss Companies' obligations. Weiss Decl. ¶ 7.

**RESPONSE 8: Disputed. It is not clear which "agreements" or "obligations" Weiss is referencing in paragraph 8. However, pursuant to a February 12, 2024 forbearance**

agreement (the "Forbearance Agreement"), the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). And Weiss, in turn, guaranteed "the performance of the agreements of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).

**C.    The Working Relationship Between the Weiss Companies and Jefferies**

9.    Beginning in 2018, Jefferies and the Weiss Companies worked cooperatively to market the Weiss Companies, including to Jefferies clients. Dillabough Decl. ¶ 7.

**RESPONSE 9:  Not disputed, but irrelevant. The assertions in paragraph 9 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Whether Jefferies and the Weiss Companies worked cooperatively at any point in the past to market the Weiss Companies is immaterial and irrelevant to this dispute.**

10.    Over the years, the Weiss Companies paid down a portion of the amounts owed to Jefferies under the Strategic Relationship Agreement and to JSI under the promissory notes, but the amounts continued to accrue. The parties operated under the assumption that GWA would pay these amounts down as cash became available. Weiss Decl. ¶ 8; Dillabough Decl. ¶ 6.

**RESPONSE 10: Not disputed that amounts owed to Plaintiffs under the Strategic Relationship Agreement and Notes have "continued to accrue." Disputed, however, that "[t]he parties operated under the assumption that GWA would pay these amounts down as cash became available."**

***First***, that assertion is improper because it does not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). The parties' "assumptions" are subjective beliefs and not fact.

***Second***, that assertion is belied by the language of the Strategic Relationship Agreement and Note Purchase Agreements, which contain merger clauses disclaiming any unwritten understandings between the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14).

11.     The financial condition of the Weiss Companies was fully disclosed to Jefferies, and the Weiss Companies regularly provided Jefferies with financial records and projections. Weiss Decl. ¶ 9.

**RESPONSE 11: It is not clear what Weiss means by "financial condition" or by the term "fully disclosed" in paragraph 11. It is undisputed that the Weiss Companies provided certain disclosures to the Plaintiffs pursuant to the agreements between the parties. (*See, e.g.*, Dillabough Decl. Ex. 3 § 2(a)). To the extent Weiss is implying that the disclosure of financial information somehow provides a defense to the claims in this action, disputed. The assertion that the Weiss Companies "fully disclosed" their financial condition is improper, because whether something is "fully disclosed" is subjective, and not a material fact "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). In any event, the Weiss Companies' disclosures of financial information to the Plaintiffs are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

12.     In November 2023, Mr. Weiss began having discussions with a potential new strategic partner (the "Strategic Partner"). Weiss Decl. ¶ 10; Dillabough Decl. ¶ 8.

12715517-1

**RESPONSE 12:  Not disputed, but irrelevant. The assertions in paragraph 12 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Discussions between Weiss and a potential new strategic partner are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

13.    Mr. Weiss promptly informed Jefferies's CEO, Richard Handler, and co- presidents Brian Friedman and Nick Daraviras, about these discussions. Weiss Decl. ¶ 11; Dillabough Decl.¶ 9.

**RESPONSE 13:  Not disputed, but irrelevant. The assertions in paragraph 13 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Discussions between Weiss and a potential new strategic partner, along with any notice Weiss provided to other members of the Weiss Companies, are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

14.    Jefferies initially expressed support for the proposed transaction. Weiss Decl. ¶ 11; Dillabough Decl. ¶ 9.

**RESPONSE 14:  Disputed. It is not clear what Weiss means by "the proposed transaction" in paragraph 14 and, in turn, Plaintiffs cannot fully respond to this assertion. In any event, the assertions in paragraph 14 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any proposed transaction with a potential new strategic partner, assuming that is what Weiss is referring to, is immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**D.**   **Negotiations with the Strategic Partner and the Forbearance Agreement**

15.   On February 1, 2024, Jefferies sent the Weiss Companies a draft Forbearance Agreement (the "Draft Forbearance Agreement"). Weiss Decl. ¶ 13; Dillabough Decl. ¶ 11; Dillabough Decl. Ex. 1

**RESPONSE 15:  Not disputed.**

16.   This draft prohibited the Weiss Companies from paying "any bonus compensation or other compensation or other payment in excess of base salaries to any of their employees . . . in respect of any period" unless Jefferies agreed in its "sole and absolute discretion." Dillabough Decl., Ex. 1 § 2(b).

**RESPONSE 16:  Not disputed.**

17.   In exchange, JSI offered not to seek relief under title 11 of the bankruptcy code or take any other enforcement action for at most five business days. Dillabough Decl., Ex. 1 § 3.

**RESPONSE 17:  Not disputed.**

18.   Mr. Dillabough, general counsel to the Weiss Companies, informed Jefferies' representative Mr. Daraviras that the Weiss Companies could not agree to this provision and that the Weiss Companies had to maintain control over the payment of bonuses. Dillabough Decl. ¶ 12.

**RESPONSE 18:  Disputed.**

**The assertions in paragraph 18 that "the Weiss Companies had to maintain control over the payment of bonuses" is improperly argumentative and a legal conclusion and should therefore be disregarded. *Epstein v. Kemper Ins. Cos*., 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002). These assertions are also improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." Whether the Weiss Companies communicated to Plaintiffs the necessity of the "Weiss Companies . . .**

8

maintain[ing] control over the payment of bonuses" is immaterial and irrelevant to this matter, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

In any event, Plaintiffs also dispute these assertions. Dillabough did not inform anyone at the Plaintiffs that "the Weiss Companies had to maintain control over the payment of bonuses."

Instead, on February 8, 2024, Nicholas Daraviras sent an email to Michael Edwards ("Edwards"), a Deputy Chief Investment Officer at WMSA, Dillabough, and Weiss. That email requested, in part, that the Weiss team: "confirm that the management team at Weiss has not undertaken any fraudulent conveyance or other bad act contrary to [the Plaintiffs'] rights and the protection of [the Plaintiffs'] interests, including the transfer of any value out of OGI or any other Weiss entity or making any bonus or other payments to employees or other owners or related parties, and will not do so while Weiss is insolvent unless we are paid what is due to us but we need this to be evidenced in writing and legally enforceable." (Mot. to Convert Decl. ¶ 20).[4]

Dillabough responded to that email stating "I can assure you that we are operating the business in the normal course. As we all agreed, it is in all of our interests not to disrupt the teams in order to preserve the value of the organization. George is meeting with [a multi-fund manager] at 3pm to try to work through some (hopefully) final hurdles." (*Id.* ¶ 21).

Yet, far from operating in the "normal course," the Weiss Companies distributed approximately $30 million in bonuses and employee compensation that same day. (*Id.* ¶ 22).

---

[4] "Mot. to Convert Decl." refers to the Decl. of Nicholas Daraviras in Support of Jefferies Strategic Investments, LLC And Leucadia Asset Management Holdings LLC Motion for Conversion of the Debtors' Cases to Chapter 7 Pursuant To 11 U.S.C. § 1112(B), In re Weiss Multi-Strategy Advisers LLC, No. 24-10743 (MG) (Bankr. S.D.N.Y.) (ECF No. 20-3).

19.    Mr. Dillabough and another representative of the Weiss Companies advised Mr. Daraviras that paying the bonuses was necessary for the Weiss Companies to survive and for the potential pending deal with the Strategic Partner to progress. Dillabough Decl. ¶ 12; see Weiss Decl. ¶ 14.

**RESPONSE 19:  Disputed.**

The assertions in paragraph 19 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Any potential bonuses paid, or pending deal with a Strategic Partner are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

In any event, Dillabough did not inform anyone at the Plaintiffs "that paying the bonuses was necessary for the Weiss Companies to survive and for the potential pending deal with the Strategic Partner to progress."

Instead, on February 8, 2024, Nicholas Daraviras sent an email to Edwards, Dillabough, and Weiss. That email requested that Weiss and his team: "confirm that the management team at Weiss has not undertaken any fraudulent conveyance or other bad act contrary to [the Plaintiffs'] rights and the protection of [the Plaintiffs'] interests, including the transfer of any value out of OGI or any other Weiss entity or making any bonus or other payments to employees or other owners or related parties, and will not do so while Weiss is insolvent unless we are paid what is due to us but we need this to be evidenced in writing and legally enforceable." (Mot. to Convert Decl. ¶ 20).

Dillabough responded to that email stating "I can assure you that we are operating the business in the normal course. As we all agreed, it is in all of our interests not to disrupt

12715517-1

the teams in order to preserve the value of the organization. George is meeting with [a multi-fund manager] at 3pm to try to work through some (hopefully) final hurdles." (*Id.* ¶ 21).

Yet, far from operating in the "normal course," the Weiss Companies distributed approximately $30 million in bonuses and employee compensation that same day. (*Id.* ¶ 22).

20.     Mr. Dillabough also was concerned that delegating to a creditor this decision concerning the retention of the Weiss Companies' employees and compliance with its contractual commitments to the portfolio managers could breach the Weiss Companies' duties to their clients. Dillabough Decl. ¶ 12.

**RESPONSE 20:  Disputed.**

**The assertions in paragraph 20 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Dillabough's subjective "concerns" over delegation are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**In any event, Dillabough did not convey those "concerns" to the Plaintiffs. Instead, on February 8, 2024, Nicholas Daraviras sent an email to Edwards, Dillabough, and Weiss. That email requested that Weiss and his team: "confirm that the management team at Weiss has not undertaken any fraudulent conveyance or other bad act contrary to [the Plaintiffs'] rights and the protection of [the Plaintiffs'] interests, including the transfer of any value out of OGI or any other Weiss entity or making any bonus or other payments to employees or other owners or related parties, and will not do so while Weiss is insolvent unless we are paid what is due to us but we need this to be evidenced in writing and legally enforceable." (Mot. to Convert Decl. ¶ 20).**

Dillabough responded to that email stating "I can assure you that we are operating the business in the normal course. As we all agreed, it is in all of our interests not to disrupt the teams in order to preserve the value of the organization. George is meeting with [a multi-fund manager] at 3pm to try to work through some (hopefully) final hurdles." (*Id.* ¶ 21).

Yet, far from operating in the "normal course," the Weiss Companies distributed approximately $30 million in bonuses and employee compensation that same day. (*Id.* ¶ 22).

21.    During the week of February 5, 2024, Jefferies threatened to seek a temporary restraining order from a court, including in an email to Mr. Dillabough, on February 8, 2024. Dillabough Decl. ¶ 13; Weiss Decl. ¶ 15.

**RESPONSE 21:  Disputed.**

The assertions in paragraph 21 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* **S.D.N.Y. Local Civil Rule 56.1(b). That "Jefferies" advised Weiss that it was considering seeking a temporary restraining order due to the conduct of Weiss and the Weiss Companies is immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

In any event, the assertion is misleading to the extent it suggests that the Plaintiffs lacked a legal basis for seeking a temporary restraining order. Indeed, in early 2024, the Plaintiffs learned that the Weiss Companies were intending to pay, at the end of February 2024, approximately $30 million in bonuses and employee compensation, comprised of $2.7 million in "management fees," $8 million in staff and management bonuses, and $19.6 million in "strategy payouts," despite being hopelessly insolvent and owing the Plaintiffs nearly $100 million. (Mot. to Convert Decl. ¶ 16). The Weiss Companies, however, represented that that

**they would not make those payments until the end of February 2024. (Mot. to Convert Decl.**
**¶¶ 16–22). Concerned that the Weiss Companies would deplete what little assets they had to**
**pay back the obligations owed to the Plaintiffs, Plaintiffs considered seeking a temporary**
**restraining order from a court. Ultimately, Plaintiffs could not seek that relief, as, in direct**
**violation of their prior representations, the Weiss Companies surreptitiously made the bonus**
**payments on February 8, 2024, mooting any potential motion. (*Id.* ¶¶ 16–22).**

22.     The email again demanded that the Weiss Companies not pay bonuses, including
bonuses that the Weiss Companies were contractually committed to pay to its portfolio managers,
even though Mr. Dillabough had just explained that failing to pay these bonuses would destroy the
firm and would jeopardize the negotiations with the potential Strategic Partner. Dillabough Decl.
¶ 13; Weiss Decl. ¶ 14.

**RESPONSE 22:  Disputed.**

        **The assertions in paragraph 22 are improper because they do not contain any**
**material facts "as to which it is contended that there exists a genuine issue to be tried." *See***
***S.D.N.Y. Local Civil Rule 56.1(b). Any purported "demands" made by Plaintiffs are***
**immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts**
**under a guarantee made to Plaintiffs.**

        **In any event, the cited email does not state that "failing to pay these bonuses would**
**destroy the firm and would jeopardize the negotiations with the potential Strategic Partner."**

        **Instead, on February 8, 2024, Daraviras sent an email to Edwards, Dillabough, and**
**Weiss. That email stated: "confirm that the management team at Weiss has not undertaken**
**any fraudulent conveyance or other bad act contrary to [the Plaintiffs'] rights and the**
**protection of [the Plaintiffs'] interests, including the transfer of any value out of OGI or any**

other Weiss entity or making any bonus or other payments to employees or other owners or related parties, and will not do so while Weiss is insolvent unless we are paid what is due to us but we need this to be evidenced in writing and legally enforceable." (Mot. to Convert Decl. ¶ 20).

Dillabough responded to that email stating "I can assure you that we are operating the business in the normal course. As we all agreed, it is in all of our interests not to disrupt the teams in order to preserve the value of the organization. George is meeting with [a multi-fund manager] at 3pm to try to work through some (hopefully) final hurdles." (*Id.* ¶ 21).

Yet, far from operating in the "normal course," the Weiss Companies distributed approximately $30 million in bonuses and employee compensation that same day. (*Id.* ¶ 22).

23.     Mr. Weiss and Mr. Dillabough both viewed these threats as bullying tactics and an effort to gain leverage in connection with the negotiations with the Strategic Partner. Dillabough Decl. ¶ 14; Weiss Decl. ¶ 15.

**RESPONSE 23:  Not disputed, but irrelevant. The assertions in paragraph 23 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." Weiss and Dillabough's "views" about any "threats" are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**E.     The Superbowl Sunday Ultimatum**

24.     On February 11, 2024, Jefferies was told that the Weiss Companies had paid the bonuses due. Dillabough Decl. ¶ 15.

**RESPONSE 24:  Not disputed, but irrelevant. The assertions in paragraph 24 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." When the Weiss Companies told the Plaintiffs they had**

14

improperly paid out bonuses is immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

25.    On February 11, 2024, Jefferies CEO, Richard Handler, called Mr. Weiss and accused him of committing securities fraud in "stealing" Jefferies' money. Mr. Handler also said that there would be a public news article that would destroy Mr. Weiss's reputation and the reputations of key Weiss employees. Weiss Decl. ¶ 17.

**RESPONSE 25:  Disputed. The assertions in paragraph 25 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**Moreover, in direct contrast to Weiss's current contention, each of the Strategic Relationship Agreement, Note Purchase Agreements, and Forbearance Agreement contain express merger clauses disclaiming any unwritten understandings or conversations between the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14; Balber Decl. Ex. 1-F § 14; Dillabough Decl. Ex. 3 § 10(g)).**

**Thus, to the extent Weiss is implying that he signed the Forbearance Agreement as a result of the statements referred to in paragraph 25, such implication is denied.**

26.    Mr. Handler further threatened that unless Defendant signed a forthcoming revised forbearance agreement, Jefferies would sue Mr. Weiss and employees of the Weiss Companies. Mr. Handler did not mention a personal guarantee. Weiss Decl. ¶ 17.

**RESPONSE 26:  Disputed. The assertions in paragraph 26 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be**

tried." Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

Moreover, in direct contrast to Weiss's current contention, each of the Strategic Relationship Agreement, Note Purchase Agreements, and Forbearance Agreement contain express merger clauses disclaiming any unwritten understandings or conversations between the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14; Balber Decl. Ex. 1-F § 14; Dillabough Decl. Ex. 3 § 10(g)). Thus, to the extent Weiss is implying that he signed the Forbearance Agreement as a result of the statements referred to in paragraph 26, such implication is denied.

27.    On February 11, 2024, Jefferies' outside counsel, Scott Balber, arranged a call between Mr. Weiss, Mr. Dillabough, Mr. Daraviras, and others. During that call, Mr. Daraviras and Mr. Balber railed against Mr. Weiss and Mr. Dillabough. Weiss Decl. ¶ 18; Dillabough Decl. ¶ 15.

RESPONSE 27:  Disputed. The assertions in paragraph 27 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

Moreover, in direct contrast to Weiss's current contention, each of the Strategic Relationship Agreement, Note Purchase Agreements, and Forbearance Agreement contain express merger clauses disclaiming any unwritten understandings or conversations between the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14;

Balber Decl. Ex. 1-F § 14; Dillabough Decl. Ex. 3 § 10(g)). Thus, to the extent Weiss is implying that he signed the Forbearance Agreement as a result of the phone call referred to in paragraph 27, such implication is denied.

28.     They reiterated Mr. Handler's threat to ruin the reputations of everyone involved in a public litigation to be filed the following morning unless the Weiss Companies signed a new forbearance agreement they would send over later that evening. Weiss Decl. ¶ 18; Dillabough Decl. ¶ 15.

**RESPONSE 28:  Disputed. The assertions in paragraph 28 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**Moreover, in direct contrast to Weiss's current contention, each of the Strategic Relationship Agreement, Note Purchase Agreements, and Forbearance Agreement contain express merger clauses disclaiming any unwritten understandings or conversations between the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14; Balber Decl. Ex. 1-F § 14; Dillabough Decl. Ex. 3 § 10(g)).**

**Thus, to the extent Weiss is implying that he signed the Forbearance Agreement as a result of the statements referred to in paragraph 28, such implication is denied.**

29.     Plaintiffs also threatened to claw back compensation payments to employees, freeze the Weiss Companies' bank accounts and ruin Mr. Weiss's reputation in the industry. Weiss Decl. ¶ 18; Dillabough Decl. ¶ 15.

**RESPONSE 29:  Disputed. The assertions in paragraph 29 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**Moreover, in direct contrast to Weiss's current contention, each of the Strategic Relationship Agreement, Note Purchase Agreements, and Forbearance Agreement contain express merger clauses disclaiming any unwritten understandings or conversations between the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14; Balber Decl. Ex. 1-F § 14; Dillabough Decl. Ex. 3 § 10(g)). Thus, to the extent Weiss is implying that he signed the Forbearance Agreement as a result of the statements referred to in paragraph 29, such implication is denied.**

30.    At no point did anyone on the February 11, 2024 call arranged by Mr. Balber discuss Mr. Weiss personally guaranteeing any amounts owed to Jefferies. Weiss Decl. ¶ 18; Dillabough Decl. ¶ 16.

**RESPONSE 30:  Disputed. The assertions in paragraph 30 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**Moreover, in direct contrast to Weiss's current contention, each of the Strategic Relationship Agreement, Note Purchase Agreements, and Forbearance Agreement contain express merger clauses disclaiming any unwritten understandings or conversations between**

18

the parties. (Balber Decl. Ex. 1-A § 8; Balber Decl. Ex. 1-B § 14; Balber Decl. Ex. 1-F § 14; Balber Decl. Ex. 1-F § 14; Dillabough Decl. Ex. 3 § 10(g)). Thus, to the extent Weiss is implying that he signed the Forbearance Agreement as a result of the phone call referred to in paragraph 30, such implication is denied.

31.     On February 12, 2024, at 2:10 am and 2:20 am, Plaintiffs sent a revised Forbearance Agreement to the Weiss Companies and reminded them of the deadline to sign "by 7 am today, Monday, Feb 12" or face litigation. Dillabough Decl. ¶ 17; Dillabough Decl., Ex. 2.

**RESPONSE 31:  Not disputed.**

32.     The Weiss Companies believed that Jefferies' threats would lead to the immediate demise of the Weiss Companies. Dillabough Decl. ¶ 24.

**RESPONSE 32:  Not disputed, but irrelevant. The assertions in paragraph 32 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' "beliefs" are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

33.     Before this point, only GWA and WMSA had contractual obligations to Jefferies— none of the remaining entities nor Mr. Weiss had any contractual obligations to Jefferies. *See* Dillabough Decl. ¶ 22; *see also* Dillabough Decl., Ex. 3 Recitals.

**RESPONSE 33:  Not disputed, but irrelevant. The assertions in paragraph 33 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Whether any parties other than GWA and WMSA "had contractual obligations to" the Plaintiffs before Weiss and**

Plaintiffs entered into the Forbearance Agreement is immaterial and irrelevant to this dispute, which turns only on Weiss's obligations under the Forbearance Agreement.

34.     There was no discussion or negotiation concerning the terms of the draft forbearance agreement. Jefferies sent the draft and demanded that Weiss sign it as written. Dillabough Decl. ¶ 17; Weiss Decl. ¶ 20.

**RESPONSE 34:  Disputed.**

The assertions in paragraph 34 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.

In any event, the cited evidence does not support Plaintiffs' assertion. Instead, the Weiss and Dillabough declarations make clear that Weiss and the Weiss Companies refused to sign the Forbearance Agreement until they had negotiated an agreement acceptable to them. For example, Weiss attests that on February 1, 2024, [Plaintiffs] emailed [his] team a draft 'forbearance agreement,'" which he and his companies "refused to sign . . . ." (Weiss Decl. ¶¶ 13–14).[5] Then, as Dillabough attests, "[o]n February 11, 2024, Superbowl Sunday, [he and Weiss] had a call with [representatives for Plaintiffs including] outside and in-house counsel . . . ." (Dillabough Decl. ¶ 11). The outcome of that call was a revised forbearance agreement, which Dillabough "reviewed." (*See id.* ¶ 18). Dillabough then "deleted . . . statements" from that agreement. (*Id.*). Under Dillabough's advice, Weiss then agreed to the

---

[5] "Weiss Decl." refers to the Declaration of George Weiss (ECF No. 27).

"revised version of the forbearance agreement" by signing it and delivering it to the Plaintiffs. (*Id.* ¶ 24, Ex. 3; Weiss Decl. ¶ 19).

F.    **The Terms of the Forbearance Agreement**

35.    On February 12, 2024, at 4 am, the Weiss Companies and Mr. Weiss, under threat of imminent public destruction, signed a modified version of the forbearance agreement that Jefferies had sent. Weiss Decl. ¶ 22; Dillabough Decl. ¶ 24; Dillabough Decl., Ex. 2.

**RESPONSE 35:  Disputed in part. Plaintiffs do not dispute that the Weiss Companies and Weiss signed the Forbearance Agreement. (Dillabough Decl. Ex. 3). Plaintiffs deny Weiss's speculation regarding the imminent "public destruction" of the Weiss Companies, which is not a "fact," and, in any event, is immaterial. Accordingly, it is not a material fact "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b).**

36.    Mr. Weiss signed a version of the Forbearance Agreement that the Weiss Companies edited to remove two admissions Jefferies sought from Mr. Weiss and the Weiss Companies – specifically, that the bonus payments were made "in contravention of the statements made by the Weiss" Companies. Dillabough Decl. ¶¶ 18, 24; Dillabough Decl., Ex. 4.

**RESPONSE 36:  Not disputed.**

37.    This version of the Forbearance Agreement has three categories of parties: the Weiss Companies; Mr. Weiss himself; and Jefferies. *See* Dillabough Decl. ¶ 24; Dillabough Decl., Ex. 3.

**RESPONSE 37:  Disputed. The cited evidence does not support Plaintiffs' assertion. Nothing in the Forbearance Agreement denotes "categories" of parties. (*See* Dillabough Decl. Ex. 3). Undisputed that Weiss, the Weiss Companies, and Plaintiffs were parties to the Forbearance Agreement. (*Id.*).**

12715517-1

38.    Mr. Weiss was only a party to "Sections 5(a), 9, and 10(c)." Dillabough Decl., Ex. 3 Preamble, Signatures.

**RESPONSE 38:  Not disputed, but irrelevant. The assertions in paragraph 38 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Whether Weiss was a party to certain sections of the Forbearance Agreement other than his personal guarantee in section 9 is immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under the guarantee contained in section 9 of the Forbearance Agreement.**

1)    1)    **The Weiss Companies' Three Primary Obligations**

39.    Pursuant to the Forbearance Agreement, the Weiss Companies purported to undertake three primary obligations. Dillabough Decl., Ex. 3 §§ 2-4.

**RESPONSE 39: Disputed. The cited evidence does not support Weiss's assertion that the Weiss Companies purported to undertake "three primary obligations." (***See*** Dillabough Decl. Ex. 3). Nothing in the Forbearance Agreement states which of the Weiss Companies' obligations were "primary."**

40.    First, Section 2 contains the "Weiss [Companies] Agreements," which generally required the Weiss Companies to provide specific information to Jefferies no later than 5:00 pm on February 13. Dillabough Decl. ¶ 20; Dillabough Decl., Ex. 3 § 2.

**RESPONSE 40: Disputed. The cited evidence does not support Plaintiffs' assertion that Section 2 "generally required the Weiss Companies to provide specific information to Jefferies no later than 5:00 pm on February 13." Rather Section 2 states, in full:**

(a)    To the extent they have not done so prior to the execution of this Agreement, the Weiss Parties agree to deliver the following information to the Jefferies Parties no later than 5:00 p.m. on February 13, 2024:

(i)    A schedule of bonus payments made to each employee during 2024 including (A) the name of the recipient employee, (B) the aggregate amounts paid to such recipient employee, and (C) the date or dates on which such bonus payments were made to such employee.

(ii)    Schedules of assets and liabilities of each of GWA, WMSF, OGI, WSPO, WMSA and each of their subsidiaries as of each of January 31, 2024 and February 9, 2024.

(iii)    Copies of statements from each brokerage, futures, commodities, custodial, bank, deposit or similar account held by any of the entities referred to in clause (ii) above.

(iv)    The name and address of each entity referred to in clause (ii) above and of each bank or brokerage firm where the accounts referred to in clause (iii) above are held.

(v)    A schedule of each client account managed by WMSA or its affiliates (the "Weiss Client Accounts"), including the amount of any accrued but unpaid fees or allocations owed to WMSA from each Weiss Client Account.

(vi)    The operative and offering documents of each Weiss Client Account, including each Private Placement Memorandum, Offering Memorandum, Limited Partnership Agreement, Limited Liability Company Agreement, Memorandum and Articles of Association, Investment Management Agreement and all similar documents.

(vii)    Copies of every invoice for accrued but unpaid fees or allocation that have been sent to any Weiss Client.

(b)    The Weiss Parties agree to provide promptly, and in any event within 24 hours of such request, any other information requested by the Jefferies Parties related to the Weiss Parties' and any of their subsidiaries' respective financial operations or financial conditions, the Past Due Obligations or the representations or obligations set forth in this Agreement.

(c)    The Weiss Parties hereby agree that none of them will (i) pay, grant or transfer (directly or indirectly) to any other person or entity an aggregate amount in excess of $10,000 on any day, except for payments made in the course of normal course trading consistent with past practices (e.g., payments to prime and executing brokers, payments against delivery and payments to ISDA counterparties), (ii) take any action or fail to take any action that may result in OGI's net assets being reduced or diminished in any respect other than permitting normal course trading consistent with past practices or (iii) take any other action or fail to take any action that would be reasonably expected to reduce the net asset value of the Weiss Parties or

23

their subsidiaries, in each case without the prior written consent of the Jefferies Parties, which may be granted or withheld in their sole and absolute discretion.

**(Dillabough Decl. Ex. 3 § 2).**

41.      The "Weiss [Companies] Agreements" also include that they would not make any payment, grant or transfer in excess of $10,000 "except for payments made in the course of normal trading consistent with past practices" "without the prior written consent of [Jefferies], which may be granted or withheld in their sole and absolute discretion." Dillabough Decl. ¶ 20; Dillabough Decl., Ex. 3 § 2(c).

**RESPONSE 41:  Not disputed.**

42.      Second, in Section 3 of the Forbearance Agreement, the Weiss Companies, other than GWA and definitionally excluding Mr. Weiss, purported to guaranty "the prompt and complete payment and performance by GWA and each other Weiss [Company] when due (whether at the stated maturity, by acceleration or otherwise) of the Guaranteed Obligations . . . [under] any Note Purchase Agreement, any Note, the [Strategic Relationship] Agreement [and] this Agreement. . . ." Dillabough Decl., Ex. 3 § 3(a); see

Dillabough Decl. ¶ 22.

**RESPONSE 42:  Disputed. The cited evidence misleadingly omits portions of Section 3 of the Forbearance Agreement, which states, in full:**

> **(a)      Guaranty of Obligations. Each Weiss Party (other than GWA) hereby irrevocably and unconditionally guarantees to each of JSI and LAM Holdings (collectively, the "Beneficiaries") and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due (whether at the stated maturity, by acceleration or otherwise) of the Guaranteed Obligations (as herein defined). This guaranty shall remain in full force and effect until the Guaranteed Obligations are paid in full, notwithstanding any increase in the amount of the Guaranteed Obligations or any modification or amendment of**

> **any instrument governing the Guaranteed Obligations. As used herein, the term "Guaranteed Obligations" shall mean all the obligations of GWA and each other Weiss Party arising under any Note Purchase Agreement, the Notes, the SR Agreement and this Agreement, and any loss, damage, penalty, action, judgment, suit, cost, expense, disbursement, liability, claim or other obligation, incurred by or behalf of any Beneficiary (including but not limited to reasonable out- of-pocket attorneys' fees and costs) arising out or, relating to or in connection with any Note Purchase Agreement, any Note, the SR Agreement, this Agreement or the transaction contemplated thereby.**

**(Dillabough Decl. Ex. 3 § 3(a)).**

43.     Section 3 turned each of WMSF, OGI, and WSPO into guarantors for the notes and the SR Agreement. *See* Dillabough Decl. ¶ 22; Dillabough Decl., Ex. 3 § 3(a).

**RESPONSE 43: Disputed. The cited evidence misleadingly omits the complete section, which states, in full:**

> **(a)     Guaranty of Obligations. Each Weiss Party (other than GWA) hereby irrevocably and unconditionally guarantees to each of JSI and LAM Holdings (collectively, the "Beneficiaries") and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due (whether at the stated maturity, by acceleration or otherwise) of the Guaranteed Obligations (as herein defined). This guaranty shall remain in full force and effect until the Guaranteed Obligations are paid in full, notwithstanding any increase in the amount of the Guaranteed Obligations or any modification or amendment of any instrument governing the Guaranteed Obligations. As used herein, the term "Guaranteed Obligations" shall mean all the obligations of GWA and each other Weiss Party arising under any Note Purchase Agreement, the Notes, the SR Agreement and this Agreement, and any loss, damage, penalty, action, judgment, suit, cost, expense, disbursement, liability, claim or other obligation, incurred by or behalf of any Beneficiary (including but not limited to reasonable out- of-pocket attorneys' fees and costs) arising out or, relating to or in connection with any Note Purchase Agreement, any Note, the SR Agreement, this Agreement or the transaction contemplated thereby.**

**(Dillabough Decl. Ex. 3 § 3(a)).**

44.     Section 3 was clear that the "guaranty [was] an irrevocable, absolute, and continuing guaranty of the full and punctual payment and performance and not a guaranty of collection." Dillabough Decl., Ex. 3 § 3(b).

**RESPONSE 44:  Not disputed.**

45.     Third, the Weiss Companies agreed to grant Jefferies a security interest in all of their assets. Dillabough Decl., Ex. 3 § 4(a).

**RESPONSE 45:  Not disputed.**

46.     Section 5 of the Forbearance Agreement, the "Representations," set forth several representations from the Weiss Companies, including, among others, representations that they were authorized to enter the agreements, that no default of the underlying agreements had occurred, and that the financial statements were correct. Dillabough Decl., Ex. 3 § 5.

**RESPONSE 46: Disputed. The Forbearance Agreement specifically acknowledged that GWA was in default under the Notes, stating: "Each party agrees that pursuant to the terms of the Note Purchase Agreements, the Notes and the Redemption Notice, GWA is past due with respect to the following payment obligations to JSI (each calculated as of January 15, 2024): (i) $23,650,410.10 on the Note dated December 3, 2019, (ii) $27,457,310.08 on the Note dated January 13, 2020 and (iii) $3,420,395.60 on the Note dated September 21, 2022 (collectively, the "Past Due Obligations"). Each party further agrees that the Past Due Obligations are owed without defense, set-off or counter claim, and are past due." (Dillabough Decl. Ex. 3 § 1).**

    **2)**    **Mr. Weiss's Limited Obligations**

47.     The Forbearance Agreement provides that Mr. Weiss was only a party "for purposes of Section 5(a), 9, and 10(c)." Dillabough Decl., Ex. 3 Preamble, Signatures.

**RESPONSE 47: Not disputed, but irrelevant. The assertions in paragraph 47 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Whether Weiss was a party to certain sections of the Forbearance Agreement other than his personal guarantee in section 9 is immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under the guarantee contained in section 9 of the Forbearance Agreement.**

48.     Section 5(a) is a limited representation that the contract is enforceable, subject to "equitable principles relating to enforceability." Dillabough Decl., Ex. 3 § 5(a).

**RESPONSE 48: Disputed. The cited evidence misleadingly fails to quote the entirety of Section 5(a), which states, in full:**

> **Each Weiss Party and Weiss hereby represents and warrants that (x) this Agreement has been duly executed and delivered by such Weiss Party and Weiss and (y) this Agreement is the legal, valid and binding obligation of such Weiss Party and Weiss, and is enforceable against each such Weiss Party and Weiss, in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and by equitable principles relating to enforceability.**

**(Dillabough Decl. Ex. 3 § 5(a)).**

49.     Section 10(c) is a purported acknowledgement that the agreement was supported by "reasonably equivalent value." Dillabough Decl., Ex. 3 § 10(c).

**RESPONSE 49: Disputed. The cited evidence misleadingly fails to quote the entirety of Section 10(c), which states in full:**

> **Each Weiss Party and Weiss acknowledges and agrees that it is receiving a direct benefit from the transactions contemplated by this Agreement, and the terms of this Agreement, including the guaranty provided herein and the security interests granted herein, constitute reasonably equivalent value for the benefit it is receiving from entering into this Agreement. Each Weiss Party and Weiss agrees that it shall not, nor shall it cause,**

**directly or indirectly, any person controlled by, or under common control with, it, to take any action inconsistent with the terms of this Agreement. Each party represents and warrants that it has full power and authority to enter into and perform this Agreement, and that the person executing this Agreement on behalf of that party has been properly authorized and empowered to enter into this Agreement and to bind that party hereto.**

**(Dillabough Decl. Ex. 3 § 10(c)).**

50.    Section 9 provides:

**Weiss unconditionally and irrevocably personally guarantees to the Jefferies Entities the accuracy of the representations made by, and the performance of the agreements of, the Weiss [Companies] hereunder. Weiss further agrees that he shall take all actions within his control, including by exercising all of his voting, governance management and other rights and powers with respect to each of the other Weiss [Companies], any of their subsidiaries and any of his personal or his family's trusts to cause such persons to comply with the terms of this agreement. Dillabough Decl., Ex. 3 § 9.**

**RESPONSE 50:  Not disputed.**

51.    The reference to the "agreements of[] the Weiss [Companies] hereunder" in Section 9 is a direct reference to Section 2, the "Weiss [Companies] Agreements," which required Mr. Weiss to use his authority to ensure the performance of those agreements by the Weiss Companies. Dillabough Decl., Ex. 3 § 2.

**RESPONSE 51:  Disputed. The assertion is improperly argumentative and a legal conclusion and should therefore be disregarded. *Epstein*, 210 F. Supp. 2d at 314. In any event, the statement is also not supported by the evidence. Under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the**

**agreements of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).**

52.    Nowhere in the agreement does Mr. Weiss guarantee any payment, much less "the full and punctual payment and performance" guaranteed by Weiss Companies. Dillabough Decl., Ex. 3 §§ 3(b), 9.

**RESPONSE 52:  Disputed. The assertion is improperly argumentative and a legal conclusion and should therefore be disregarded. *Epstein*, 210 F. Supp. 2d at 314. In any event, the statement is also not supported by the evidence. Under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the agreements, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).**

53.    There is no provision in the Forbearance Agreement pursuant to which Mr. Weiss personally guaranteed payment of over $50 million in notes or note purchase agreements. Dillabough Decl. ¶ 25; see Dillabough Decl., Ex. 3.

**RESPONSE 53:  Disputed. The assertion is improperly argumentative and a legal conclusion and should therefore be disregarded. *Epstein*, 210 F. Supp. 2d at 314. In any event, the statement is also not supported by the evidence. Under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM**

**Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the agreements of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).**

54.     There is also no provision in the Forbearance Agreement pursuant to which Mr. Weiss personally guaranteed payment of over $50 million allegedly due under the Strategic Relationship Agreement. Dillabough Decl. ¶ 25; see Dillabough Decl., Ex. 3.

**RESPONSE 54:  Disputed. The assertion is improperly argumentative and a legal conclusion and should therefore be disregarded. *Epstein*, 210 F. Supp. 2d at 314. In any event, the statement is also not supported by the evidence. Under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the agreements of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).**

55.     At no point prior to the initiation of this lawsuit did Jefferies ever discuss with Mr. Weiss a $100 million guaranty of the Weiss Companies' corporate debts or assert that Section 9 could be understood to include a personal payment guarantee. Weiss Decl. ¶ 31

**RESPONSE 55: Disputed. The assertions in paragraph 55 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any discussions with any of Plaintiffs' representatives are immaterial and irrelevant to this dispute because the Forbearance Agreement contains an express merger clause disclaiming any unwritten understandings or conversations between the parties. (Dillabough Decl. Ex. 3 § 10(g)).**

**Moreover, under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the agreements of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (***Id.* § 9).**

       **3)**     **JSI's Sole Obligation Under the Forbearance Agreement.**

56.     JSI had a single obligation under the Forbearance Agreement: it simply agreed to forbear from commencing an action to recover under the notes against the Weiss Companies for no more than two business days. Dillabough Decl., Ex. 3 § 6.

**RESPONSE 56: Disputed. Plaintiffs misleadingly omit portions of Section 6 of the Forbearance Agreement, which states in full:**

> **In exchange for the Weiss Parties agreeing to and complying with the terms of this Agreement, JSI agrees to (a) forbear from seeking relief or exercising any remedies under title 11 of the United State Code (the "Bankruptcy Code"), including, but not limited to, commencing an involuntary case against GWA under sections 301 or 303 of the Bankruptcy Code, as well as initiating or causing the initiation of an assignment for the benefit of creditors proceeding, a receivership or other similar insolvency proceeding and (b) forbear from filing an Enforcement Action,**

> **in each case, for the period (the "Forbearance Period")
> beginning on the date hereof until the earlier of (x) two Business
> Days after such date or (y) the occurrence of any Forbearance
> Default, except that the Forbearance Period will be
> automatically extended by an additional one Business Day at the
> conclusion of the Forbearance Period unless the Jefferies Parties
> give written notice of a termination of the Forbearance Period
> to the Weiss Parties on or prior to the conclusion of the
> Forbearance Period. (For the avoidance of doubt, the
> Forbearance Period shall automatically terminate upon the
> occurrence of a Forbearance Default.) For the purposes hereof,
> "Forbearance Default" shall mean the occurrence of any of the
> events described on Exhibit A attached hereto and "Business
> Day" shall have the meaning given to such term in the SR
> Agreement."**

**(Dillabough Decl. Ex. 3 § 6).**

57.    JSI did not agree to forego suit against Mr. Weiss or any Weiss Companies'

employees for any period. Dillabough Decl., Ex. 3 § 6.

**RESPONSE 57: Disputed.  Weiss  misleadingly  omits  portions  of  Section  6  of  the**

**Forbearance Agreement, which states in full:**

> **In exchange for the Weiss Parties agreeing to and complying
> with the terms of this Agreement, JSI agrees to (a) forbear from
> seeking relief or exercising any remedies under title 11 of the
> United State Code (the "Bankruptcy Code"), including, but not
> limited to, commencing an involuntary case against GWA under
> sections 301 or 303 of the Bankruptcy Code, as well as initiating
> or causing the initiation of an assignment for the benefit of
> creditors proceeding, a receivership or other similar insolvency
> proceeding and (b) forbear from filing an Enforcement Action,
> in each case, for the period (the "Forbearance Period")
> beginning on the date hereof until the earlier of (x) two Business
> Days after such date or (y) the occurrence of any Forbearance
> Default, except that the Forbearance Period will be
> automatically extended by an additional one Business Day at the
> conclusion of the Forbearance Period unless the Jefferies Parties
> give written notice of a termination of the Forbearance Period
> to the Weiss Parties on or prior to the conclusion of the
> Forbearance Period. (For the avoidance of doubt, the
> Forbearance Period shall automatically terminate upon the
> occurrence of a Forbearance Default.) For the purposes hereof,
> "Forbearance Default" shall mean the occurrence of any of the**

> **events described on Exhibit A attached hereto and "Business
> Day" shall have the meaning given to such term in the SR
> Agreement."**

**(Dillabough Decl. Ex. 3 § 6).**

58.     Leucadia had no obligations whatsoever under the Forbearance Agreement. *See*

Dillabough Decl., Ex. 3.

**RESPONSE 58:  Disputed. In the Forbearance Agreement, LAM Holdings agreed to submit**

**to jurisdiction in the New York courts and litigate any cases under New York Law.**

**(Dillabough Decl. Ex. 3 § 9(h)).**

**G.     Jefferies Rejects the "Unilaterally Modified" Forbearance Agreement**

59.     At 8:53 am on February 12, 2024, Jefferies' outside attorney, Mr. Balber, wrote a

letter to the Weiss Companies stating that the Weiss Companies' edits to the Forbearance

Agreement were not acceptable. Dillabough Decl. ¶ 27; Dillabough Decl., Ex. 5.

**RESPONSE 59:  Disputed. The letter from Plaintiffs' outside attorney does not state that the**

**edits to the Forbearance agreement "were not acceptable." Instead, the letter states that the**

**Weiss "unilaterally modified portions of the draft Forbearance Agreement, including by**

**deleting the Weiss Parties' acknowledgement that they had previously stated that the bonus**

**payments would not be made until the second half of February 2024 . . . ." (Dillabough Decl.**

**Ex. 5). The letter then notes that Plaintiffs "expect[ed] the Weiss Parties to abide by the**

**representations made to the Jefferies Parties in the unilaterally modified Forbearance**

**Agreement." (*Id.*).**

60.     Mr. Balber explained, "At 2:20 a.m. this morning, the Jefferies Parties provided

you with a draft Forbearance Agreement, pursuant to which they offered to temporarily forego

commencing any Enforcement Action against the Weiss [Companies] during the Forbearance

Period. As part of that offer, the Jefferies Parties required that: the Weiss [Companies] admit that

12715517-1

they had made statements to the Jefferies Parties that they would not make certain bonus payments under the second half of February 2024 . . . [and] admit that they had paid the bonuses on February 8, 2024." Dillabough Decl., Ex. 5 (emphasis added).

**RESPONSE 60:  Not disputed.**

61.    As a result of the Weiss Companies' deletion of the required admissions, Jefferies made clear that there was no agreement, but nonetheless demanded that, "in the meantime," the Weiss Companies comply with their representations and the agreement to produce financial records. Dillabough Decl., Ex. 5.

**RESPONSE 61:  Disputed. The letter does not state that "there was no agreement." Instead, the letter states that the Weiss "unilaterally modified portions of the draft Forbearance Agreement, including by deleting the Weiss Parties' acknowledgement that they had previously stated that the bonus payments would not be made until the second half of February 2024 . . . ." (Dillabough Decl. Ex. 5). The letter then notes that Plaintiffs "expect[ed] the Weiss Parties to abide by the representations made to the Jefferies Parties in the unilaterally modified Forbearance Agreement." (*Id.*).**

62.    The letter also noted that the "Jefferies Parties reserve[d] all of their rights to bring claims and pursue remedies arising from the Weiss [Companies'] misconduct." Dillabough Decl., Ex. 5.

**RESPONSE 62:  Not disputed.**

63.    In other words, Jefferies informed the Weiss Companies that it was not bound by its sole obligation not to bring a claim to enforce the notes. Dillabough Decl. Ex. 5; Dillabough Decl. Ex. 3 § 6.

**RESPONSE 63:  Disputed.**

This assertion is improperly argumentative and a legal conclusion and should therefore be disregarded. *Epstein*, 210 F. Supp. 2d at 314. In any event, the assertion is not supported by the evidence. The letter from Plaintiffs' outside attorney does not state that Plaintiffs were "not bound by [their] sole obligation not to bring a claim to enforce the notes." Instead, the letter states that Weiss "unilaterally modified portions of the draft Forbearance Agreement, including by deleting the Weiss Parties' acknowledgement that they had previously stated that the bonus payments would not be made until the second half of February 2024 . . . ." (Dillabough Decl. Ex. 5). The letter then notes that Plaintiffs "expect[ed] the Weiss Parties to abide by the representations made to the Jefferies Parties in the unilaterally modified Forbearance Agreement." (*Id.*).

The assertion also misleadingly ignores the objective steps Plaintiffs took reflecting that they accepted the Forbearance Agreement as modified.

For instance, under the Forbearance Agreement, the Plaintiffs were required to forbear from bringing suit until the "earlier of (x) two Business Days after such date or (y) the occurrence of any Forbearance Default." (Dillabough Decl. Ex. 3 § 6). Plaintiffs did just that, only notifying Weiss that they were considering exercising their rights five days after entering into the Forbearance Agreement. (*See* Dillabough Decl. Ex. 6).

Similarly, consistent with the Forbearance Agreement, on February 13, 2024, just one day after entering into the Forbearance Agreement, JSI filed a UCC Financing Statement with the New York Department of State, recording the security interests granted in the Forbearance Agreement. (Balber Decl. Ex. 1 ¶ 22; Ex. 1-J).

64.    Jefferies never signed the Forbearance Agreement. Dillabough Decl. ¶ 28.

**RESPONSE 64:  Not disputed, but irrelevant. The assertions in paragraph 64 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Whether or not Plaintiffs signed the Forbearance Agreement is immaterial and irrelevant to this dispute, given the ample evidence the Plaintiffs otherwise agreed to the Forbearance Agreement.**

**For instance, under the Forbearance Agreement, the Plaintiffs were required to forbear from bringing suit until the "earlier of (x) two Business Days after such date or (y) the occurrence of any Forbearance Default." (Dillabough Decl. Ex. 3 § 6). Plaintiffs did just that, only notifying Weiss that they were considering exercising their rights five days after entering into the Forbearance Agreement. (*See* Dillabough Decl. Ex. 6).**

**Similarly, consistent with the Forbearance Agreement, on February 13, 2024, just one day after entering into the Forbearance Agreement, JSI filed a UCC Financing Statement with the New York Department of State, recording the security interests granted in the Forbearance Agreement. (Balber Decl. Ex. 1 ¶ 22; Ex. 1-J).**

65.    During the week of February 12, in the hopes that Jefferies would refocus on negotiations with the Strategic Partner, the Weiss Companies transmitted the information requested in the Forbearance Agreement — most of which Jefferies already possessed. Dillabough Decl. ¶ 28.

**RESPONSE 65:  Not disputed, but irrelevant. The assertions in paragraph 65 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' "hopes" are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

66.     The Weiss Companies did not comply with certain provisions of the purported forbearance agreement, such as setting up account control agreements, since Jefferies never accepted or signed the modified Forbearance Agreement that Mr. Dillabough had sent them. Dillabough Decl. ¶ 28.

**RESPONSE 66:  Not disputed, but irrelevant. The assertions in paragraph 66 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' additional breaches of the Forbearance Agreement are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

67.     On February 15, 2024, GWA repaid $3 million owed under the notes. Dillabough Decl. ¶ 29.

**RESPONSE 67:  Not disputed.**

68.     Both the Weiss Companies and Jefferies refocused on the transaction with the Strategic Partner, exchanging numerous term sheets and discussing what amount Jefferies would accept to be bought out of its position. Dillabough Decl. ¶ 29.

**RESPONSE 68:  Not disputed, but irrelevant. The assertions in paragraph 68 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' negotiations with the Strategic Partner are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

69.     The negotiations with the Strategic Partner included paying Jefferies a $30 million payment from the Strategic Partner, and additional consideration of approximately $12 million

from the Weiss Companies, in full satisfaction of the amounts owed to Jefferies. Weiss Decl. ¶ 25; Dillabough Decl. ¶ 8.

**RESPONSE 69:  Disputed.**

**The assertions in paragraph 69 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' negotiations with the Strategic Partner are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**In any event, Plaintiffs were not aware of any offer of a "$30 million payment." Instead, as of February 23, 2024, Weiss sent Nicholas Daraviras an email indicating that the strategic partner proposed "$25-30mm for Weiss to repay Leucadia and obtain FULL RELEASE from Leucadia of any future obligations" but that "Leucadia treatment" was still not "specified" and was a "next step." (Suppl. Mot. to Convert Decl. Ex. A).[6] Daraviras responded on February 26, 2024, proposing terms which were acceptable to Plaintiffs. These included "$30MM cash from" the strategic partner. (Suppl. Mot. to Convert Decl. Ex. B). Weiss rejected that proposal highlighting that "he did]n't care how much he owe[d]" Plaintiffs. (*Id.*). Within the next two days, Daraviras was told that the proposed deal between the Weiss Companies and the strategic partner had fallen through because the strategic partner had concerns regarding certain portfolio managers associated with the Weiss Companies. (Suppl. Mot. to Convert Decl. ¶ 11).**

---

[6] "Suppl. Mot. to Convert Decl." refers to the Suppl. Decl. of Nicholas Daraviras in Support of Jefferies Strategic Investments, LLC And Leucadia Asset Management Holdings LLC Motion for Conversion of the Debtors' Cases to Chapter 7 Pursuant To 11 U.S.C. § 1112(B), *In re Weiss Multi-Strategy Advisers LLC*, No. 24-10743 (MG) (Bankr. S.D.N.Y.) (ECF No. 46-3). References to "Suppl. Mot. to Convert Decl. Ex.    " refer to the exhibits to the Suppl. Mot. to Convert Decl.

12715517-1

**H.    The Weiss Companies Shut Down and Jefferies
        Ramps Up Threats of Litigation to Maximize Its Payment**

70.    On February 17, five days after rejecting the "unilaterally modified Forbearance Agreement," Mr. Daraviras emailed Mr. Dillabough a draft complaint (the "February Draft Complaint"). Dillabough Decl. ¶ 30; Dillabough Decl., Ex. 6; Weiss Decl. ¶ 26.

**RESPONSE 70: Not disputed that, on February 17, 2024, "Mr. Daraviras emailed Mr. Dillabough a draft complaint," but that fact is irrelevant.**

**The assertions in paragraph 70 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Any action contemplated by the Plaintiffs after the Forbearance Agreement's "Forbearance Period" expired are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**Disputed that the Plaintiffs "reject[ed] the 'unilaterally modified Forbearance Agreement.'" Plaintiffs did no such thing. Under the Forbearance Agreement, the Plaintiffs were required to forbear from bringing suit until the "earlier of (x) two Business Days after such date or (y) the occurrence of any Forbearance Default." (Dillabough Decl. Ex. 3 § 6). Plaintiffs did just that, only notifying Weiss that they were considering exercising their rights five days after entering into the Forbearance Agreement. (*See* Dillabough Decl. Ex. 6).**

**Similarly, consistent with the Forbearance Agreement, on February 13, 2024, just one day after entering into the Forbearance Agreement, JSI filed a UCC Financing Statement with the New York Department of State, recording the security interests granted in the Forbearance Agreement. (Balber Decl. Ex. 1 ¶ 22; Ex. 1-J).**

71.     The February Draft Complaint was a threat to sue Mr. Weiss, GWA, WMSA, and 79 other employees of the Company personally. Dillabough Decl. ¶ 30; Dillabough Decl., Ex. 6; Weiss Decl. ¶ 26.

**RESPONSE 71:  Not disputed, but irrelevant. The assertions in paragraph 71 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." Any action contemplated by the Plaintiffs after the Forbearance Agreement's "Forbearance Period" expired are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

72.     The February Draft Complaint does not reference the Forbearance Agreement. *See* Dillabough Decl. Ex. 6.

**RESPONSE 72:  Not disputed, but irrelevant. The assertions in paragraph 72 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Whether the "February Draft Complaint" references the Forbearance Agreement is immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint that was filed in this action.**

73.     The February Draft Complaint does not allege that Mr. Weiss guaranteed the corporate debts owed to Jefferies. *See* Dillabough Decl., Ex. 6.

**RESPONSE 73:  Not disputed, but irrelevant. The assertions in paragraph 73 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Whether the "February Draft Complaint" alleges that Weiss guaranteed the corporate debts owed to Plaintiffs is immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint that was filed in this action.**

74.     After transmitting the February Draft Complaint, Jefferies rejected the $30 million offer made by the Strategic Partner and demanded $50 million in cash. Weiss Decl. ¶ 28; Dillabough Decl. ¶ 31.

**RESPONSE 74: Disputed.**

**The assertions in paragraph 74 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."**

**See S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' negotiations with the Strategic Partner are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**In any event, Plaintiffs did not reject any "$30 million payment." Instead, as of February 23, 2024, Weiss sent Nicholas Daraviras an email indicating that the strategic partner proposed "$25-30mm for Weiss to repay Leucadia and obtain FULL RELEASE from Leucadia of any future obligations" but that "Leucadia treatment" was still not "specified" and was a "next step." (Suppl. Mot. to Convert Decl. Ex. A). Daraviras responded on February 26, 2024, proposing terms which were acceptable to Plaintiffs. These included "$30MM cash from" the strategic partner. (Suppl. Mot. to Convert Decl. Ex. B). Weiss rejected that proposal highlighting that "he did|n't care how much he owe[d]" Plaintiffs. (Id.). Within the next two days, Daraviras was told that the proposed deal between the Weiss Companies and the strategic partner had fallen through because the strategic partner had concerns regarding certain portfolio managers associated with the Weiss Companies. (Suppl. Mot. to Convert Decl. ¶ 11). At no point did the Plaintiffs reject the proposal offered by the strategic partner. (Id. ¶¶ 4–6, 12).**

75.     On February 28, 2024, the Strategic Partner informed Mr. Weiss that it would not agree to the transaction at the level that Jefferies was demanding. Weiss Decl. ¶ 29; Dillabough Decl. ¶ 31.

**RESPONSE 75:  Disputed.**

**The assertions in paragraph 75 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). The Weiss Companies' negotiations with the Strategic Partner are immaterial and irrelevant to this dispute, which turns only on Weiss's failure to pay amounts under a guarantee made to Plaintiffs.**

**In any event, Plaintiffs were informed that the proposed deal between the Weiss Companies and the strategic partner had fallen through because the strategic partner had concerns regarding certain portfolio managers associated with the Weiss Companies, and not because "it would not agree to the transaction at the level that [Plaintiffs were] demanding." (Suppl. Mot. to Convert Decl. ¶ 11).**

76.     On March 26, 2024, Jefferies, through counsel, Mr. Balber, sent a second draft complaint (the "March Draft Complaint"). Dillabough Decl. ¶ 32; Dillabough Decl., Ex. 7; Weiss Decl. ¶ 30.

**RESPONSE 76:  Not disputed, but irrelevant. The assertions in paragraph 76 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried."** *See* **S.D.N.Y. Local Civil Rule 56.1(b). Whether the Plaintiffs "sent a second draft complaint" to Weiss is immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint filed in this action.**

77.    The March Draft Complaint dropped the 79 employees from the suit, and alleged that Mr. Weiss and "his close cronies" abused their position and treated the companies as their "personal piggy bank." *See* Dillabough Decl., Ex. 7 ¶ 1.

**RESPONSE 77:  Not disputed, but irrelevant. The assertions in paragraph 77 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Whether the "March Draft Complaint dropped the 79 employees from the suit, and alleged that Mr. Weiss and 'his close cronies' abused their position and treated the companies as their 'personal piggy bank'" is immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint filed in this action.**

78.    The March Draft Complaint does not allege that Mr. Weiss personally guaranteed the corporate debts owed to Jefferies. Dillabough Decl., Ex. 7 ¶¶ 70-78.

**RESPONSE 78:  Not disputed, but irrelevant. The assertions in paragraph 78 are improper because they do not contain any material facts "as to which it is contended that there exists a genuine issue to be tried." *See* S.D.N.Y. Local Civil Rule 56.1(b). Whether the "March Draft Complaint . . . allege[s] that . . . Weiss personally guaranteed the corporate debts owed to" Plaintiffs is immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint filed in this action.**

79.    The sole allegation regarding Mr. Weiss's breach of the Forbearance Agreement was that he "fail[ed] to take all actions within his control" to prevent the Weiss Companies from making the March 1 payments to vendors. Dillabough Decl., Ex. 7 ¶¶ 76, 106-09.

**RESPONSE 79:  Not disputed, but irrelevant. The assertions in paragraph 79 are improper because they do not contain any material facts "as to which it is contended that there exists**

a genuine issue to be tried." *See* **S.D.N.Y. Local Civil Rule 56.1(b). Any allegations in draft complaints not before the Court are immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint filed in this action.**

80.    The Demand for Relief summarizes Jefferies' understanding that Mr. Weiss could only be found liable for a breach of the Weiss Party Agreements, not for a Section 3 guaranty:

> WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against defendants as follows:
>
> (a)    On the First Cause of Action, a judgment in JSI's favor and against GWA, WMSA, WMSF, OGI, and WSPO for money damages in an amount to be determined at trial, but believed to be not less than $49,832,562.00, representing the outstanding principal and interest owed to JSI under the Notes;
>
> (b)    On the Second Cause of Action, a judgment in LAM Holdings' favor and against GWA, WMSA, WMSF, OGI, and WSPO for money damages in an amount to be determined at trial, but believed to be not less than $50,597,604.00, representing all outstanding principal and interest owed to LAM Holdings under the Strategic Relationship Agreement as of December 31, 2023;
>
> (c)    On the Third and Fourth Causes of Action, a judgment in Plaintiffs' favor and against the Insiders voiding the voidable transfers set forth above;
>
> (d)    On the Fifth Cause of Action, a judgment in JSI's and LAM Holdings' favor and against GWA, WMSA, WMSA, WMSF, OGI, WSPO, and George Weiss for money damages in an amount to be determined at trial, but believed to be not less than $470,370.98, representing the amounts transferred by GWA and WMSA in breach of the February Forbearance Agreement on March 1, 2024;

Dillabough Decl., Ex. 7, Demand for Relief (emphasis added).

**RESPONSE 80:  Disputed. Plaintiffs understood, and currently contend, that Weiss can be liable for failing to perform under his guarantee of any of the Weiss Companies' obligations, including their payment obligations. Under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the agreements**

of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).

Moreover, any allegations in draft complaints not before the Court are immaterial and irrelevant to this dispute, which turns on the allegations made in the Complaint filed in this action.

81.    At no point before, during or after the signing of the Forbearance Agreement did anyone communicate to Mr. Weiss that Mr. Weiss might be personally responsible for the entire amount owed. Weiss Decl. ¶¶ 3, 21, 23, 31.

**RESPONSE 81: Disputed. Under the Forbearance Agreement, the Weiss Companies "irrevocably and unconditionally guarantees to each of JSI and LAM Holdings . . . and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due . . . ." (Dillabough Decl. Ex. 3 § 3). Weiss, in turn, guaranteed "the performance of the agreements of, the [Weiss Companies]," which included "the prompt and complete payment" of the "Guaranteed Obligations" as defined in the Forbearance Agreement. (*Id.* § 9).**

\*    \*    \*

### PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

82.    On or about May 1, 2018, LAM Holding LLC and GWA entered into the Strategic Relationship Agreement. (Balber Decl. Ex. 1-A).

<u>Response:</u>    Undisputed.

83.    On or about October 18, 2018, LAM Holding LLC assigned all of its rights under the Strategic Relationship Agreement to LAM Holdings, pursuant to an Assignment and Assumption Agreement. (Dillabough Decl. Ex. 3 at 1; Balber Decl. Ex. 6 ¶ 26).

12715517-1

<u>Response:</u>        Discovery has not occurred in this case and so Mr. Weiss cannot confirm or deny the facts in this paragraph. Mr. Weiss confirms, however, that the cited paragraphs of the Forbearance Agreement and the Declaration of Pierce Archer states LAM Holding LLC assigned its rights under the Strategic Relationship Agreement to Jefferies Asset Management Holdings LLC and that Jefferies Asset Management Holdings LLC later changed its name to Leucadia Asset Management Holdings LLC.

84.        On or about December 3, 2019, GWA, WMSA, and JFG Funding LLC, entered into the 2019 Note Purchase Agreement. (Balber Decl. Ex. 1-B).

<u>Response:</u>        Undisputed.

85.        On December 1, 2021, JFG Funding LLC and JSI entered into an Assignment and Assumption Agreement. (Balber Decl. Ex. 1-E).

<u>Response:</u>        Undisputed.

86.        On or about September 21, 2022, GWA, WMSA, and JSI entered into the 2022 Note Purchase Agreement. (Balber Decl. Ex. 1-F).

<u>Response:</u>        Undisputed.

87.        The Forbearance Agreement contains a broad merger clause which provides that:

> All agreements, covenants, representations and warranties, express or implied, oral and written, of the parties hereto concerning the subject matter hereof, are contained herein. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party hereto to any other concerning the subject matter hereof. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter hereto are merged herein.

(Dillabough Decl. Ex. 3 § 10(g)).

<u>Response:</u>        Disputed.  Undisputed that the quoted text is found in Section 10(g) of the Forbearance Agreement, but the description of the merger clause as "broad" is improperly argumentative.

88.        On February 13, 2024, JSI filed a UCC Financing Statement with the New York Department of State. (Balber Decl. Ex. 1 ¶ 22; Ex. 1-J).

46

    <u>Response:</u>     Undisputed that Balber Decl. Ex. 1-J reflects a UCC Financing Statement, allegedly filed on February 13, 2024, listing the Debtor as WMSF (and no other Weiss Company).

    89.     On April 29, 2024, GWA, WMSA, WSPO, and OGI filed voluntary petitions for relief pursuant to Chapter 11 of the United States Bankruptcy Code. (Balber Decl. Exs. 2–5).

    <u>Response:</u>     Disputed to the extent that no voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code for WMSA was attached as an exhibit to the Balber Decl.  Exhibit 2 is not a voluntary petition for relief pursuant to Chapter 11 of any of GWA, WMSA, WSPO, or OGI.  Balber Decl. Ex. 2 is a voluntary petition for relief of WMSF, dated June 19, 2024. Otherwise, undisputed.

    90.     On or about June 11, 2024, WMSA filed a List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (the "WMSA Statement"). The WMSA Statement reflects that WMSA owes LAM Holdings $52,473,259.00." (Balber Decl. Ex. 7).

    <u>Response:</u>     Disputed. Balber Decl. Ex. 7 only shows that LAM Holdings had a disputed claim of $52,473,259.00.

    91.     Those amounts are owed to LAM Holdings pursuant to the Strategic Relationship Agreement. (*See* Balber Decl. Ex. 1-A, Balber Decl. Ex. 7).

    <u>Response:</u>     Disputed. Balber Decl. Ex. 7 only shows that LAM Holdings had a disputed claim to WMSA's assets, it does not identify the origin of said claim.

    92.     The WMSA Statement further reflects that WMSA owes JSI $43,190,924.00. (Balber Decl. Ex. 7).

    <u>Response:</u>     Disputed. Balber Decl. Exhibit 7 only shows that JSI had a disputed claim of $43,190,924.00.

    93.     Those amounts are owed to JSI under the Notes. (*See* Balber Decl. Exs. 1-C, 1-D, 1-G; Balber Decl. Ex. 7).

    <u>Response:</u>     Disputed. Balber Decl. Ex. 7 only shows that JSI had a disputed claim to WMSA's assets, it does not identify the origin of said claim.

94.     On or about June 11, 2024, GWA filed a List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (the "GWA Statement"). The GWA Statement reflects that GWA owes LAM Holdings $52,473,259.00. (Balber Decl. Ex. 8).

Response:     Disputed. Balber Decl. Ex. 8 only shows that LAM Holdings had a disputed claim of $52,473,259.00.

95.     Those amounts are owed to LAM Holdings pursuant to the Strategic Relationship Agreement. (*See* Balber Decl. Ex. 1-A, Balber Decl. Ex. 8).

Response:     Disputed. Balber Decl. Ex. 8 only shows that LAM Holdings had a disputed claim to GWA's assets, it does not identify the origin of said claim.

96.     The GWA Statement further reflects that GWA owes JSI $43,190,924.00. (Balber Decl. Ex. 8).

Response:     Disputed. Balber Decl. Ex. 8 only shows that JSI had a disputed claim of $43,190,924.00.

97.     Those amounts are owed to JSI under the Notes. (*See* Balber Decl. Exs. 1-C, 1-D, 1-G; Balber Decl. Ex. 8).

Response:     Disputed. Balber Decl. Ex. 8 only shows that JSI had a disputed claim to GWA's assets, it does not identify the origin of said claim.

98.     On or about June 11 2024, OGI filed a List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (the "OGI Statement"). The OGI Statement reflects that OGI owes LAM Holdings $52,473,259.00. (Balber Decl. Ex. 9).

Response:     Disputed. Balber Decl. Ex. 9 only shows that LAM Holdings had a disputed claim of $52,473,259.00.

99.     Those amounts are owed to LAM Holdings pursuant to the Strategic Relationship Agreement. (*See* Balber Decl. Ex. 1-A, Balber Decl. Ex. 9).

Response:     Disputed. Balber Decl. Ex. 9 only shows that LAM Holdings had a disputed claim to OGI's assets, it does not identify the origin of said claim.

100.    The OGI Statement further reflects that OGI owes JSI $43,190,924.00. (Balber Decl. Ex. 9).

<u>Response:</u>    Disputed. Balber Decl. Ex. 9 only shows that JSI had a disputed claim of $43,190,924.00.

101.    Those amounts are owed to JSI under the Notes. (*See* Balber Decl. Exs. 1-C, 1-D, 1-G; Balber Decl. Ex. 9).

<u>Response:</u>    Disputed. Balber Decl. Ex. 9 only shows that JSI had a disputed claim to OGI's assets, it does not identify the origin of said claim.

102.    On or about June 11, 2024, WSPO filed a List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (the "WSPO Statement"). The WSPO Statement reflects that WSPO owes LAM Holdings $52,473,259.00. (Balber Decl. Ex. 10).

<u>Response:</u>    Disputed. Balber Decl. Ex. 10 only shows that LAM Holdings had a disputed claim of $52,473,259.00.

103.    Those amounts are owed to LAM Holdings pursuant to the Strategic Relationship Agreement. (*See* Balber Decl. Ex. 1-A, Balber Decl. Ex. 10).

<u>Response:</u>    Disputed. Balber Decl. Ex. 10 only shows that LAM Holdings had a disputed claim to WSPO's assets, it does not identify the origin of said claim.

104.    The WSPO Statement further reflects that WSPO owes JSI $43,190,924.00. (Balber Decl. Ex. 10).

<u>Response:</u>    Disputed. Balber Decl. Ex. 10 only shows that JSI had a disputed claim of $43,190,924.00.

105.    Those amounts are owed to JSI under the Notes. (*See* Balber Decl. Exs. 1-C, 1-D, 1-G; Balber Decl. Ex. 10).

<u>Response:</u>    Disputed. Balber Decl. Ex. 10 only shows that JSI had a disputed claim to WSPO's assets, it does not identify the origin of said claim.

106.    On June 19, 2024, WMSF filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code. (Balber Decl. Ex. 11).

Response:    Undisputed, however, Mr. Weiss notes that WMSF's voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code is Balber Decl. Ex. 2, not Balber Decl. Ex. 11.

107.    On or about June 28, 2024, WMSF filed the Global Notes, Methodology and Specific Disclosures Regarding WMSF's Schedules of Assets and Liabilities and Statement of Financial Affairs (the "WMSF Statement"). The WMSF Statement reflects that WMSF owes LAM Holdings $52,473,259.00. (Balber Decl. Ex. 12).

Response:    Disputed. Balber Decl. Ex. 12 only shows that LAM Holdings had a disputed claim of $52,473,259.00.

108.    Those amounts are owed to LAM Holdings pursuant to the Strategic Relationship Agreement. (*See* Balber Decl. Ex. 1-A, Balber Decl. Ex. 12).

Response:    Disputed. Balber Decl. Ex. 12 only shows that LAM Holdings had a disputed claim to WMSF's assets, it does not identify the origin of said claim.

109.    The WMSF Statement further reflects that WMSF owes JSI $43,190,924.00. (Balber Decl. Ex. 12).

Response:    Disputed. Balber Decl. Ex. 12 only shows that JSI had a disputed claim of $43,190,924.00.

110.    Those amounts are owed to JSI under the Notes. (*See* Balber Decl. Exs. 1-C, 1-D, 1-G; Balber Decl. Ex. 12).

Response:    Disputed. Balber Decl. Ex. 10 only shows that JSI had a disputed claim to WMSF's assets, it does not identify the origin of said claim.

111.    On April 29, 2024, GWA, WMSA, WSPO, and OGI commenced an adversary proceeding against the Jefferies Parties captioned *GWA, LLC et al v. Jefferies Strategic Investments, LLC et al.*, No. 24-01350 (MG). (Balber Decl. Ex. 13).

Response:    Undisputed.

112.    On June 25, 2024, the Weiss Companies filed an amended complaint in the Adversary Proceeding. (Balber Decl. Ex. 14).

Response:        Undisputed.

113.    In the amended complaint in the Adversary Proceeding, the Weiss Companies "demand[ed] judgment holding that the Amended Forbearance Agreement [and, in turn, the personal guarantee contained therein] is null and void, and unenforceable" reasoning that there was not a "meeting of the minds" because Plaintiffs "never executed and returned the Amended Forbearance Agreement," but instead "indicated that they did not agree with certain of the modified terms." (Balber Decl. Ex 14 ¶¶ 120, 123).

Response:        Disputed.  The referenced paragraphs do not reference the personal guarantee nor do they state that there was not a "meeting of the minds," but rather states that the Forbearance Agreement is null and void because (a) the Weiss Companies were coerced under duress to execute it; (b) Jefferies never signed the agreement; (c) was without consideration; and (d) Jefferies did not intend to comply with the Forbearance Agreement.

114.    On July 16, 2024, Plaintiffs moved to dismiss the Weiss Companies' amended complaint in part. (*See* Balber Decl. Ex. 15).

Response:        Undisputed.

115.    On August 6, 2024, the Weiss Companies filed an opposition to the Plaintiffs' motion to dismiss. (*See* Balber Decl. Ex. 16).

Response:        Undisputed.

116.    On September 11, 2024, the Bankruptcy Court held a hearing on the Plaintiffs' (defendants in the adversary proceeding) motion to dismiss. (Balber Decl. Ex. 17).

Response:        Undisputed.

117.    Weiss's personal counsel, who is also representing Weiss in this matter, appeared at the hearing on the motion to dismiss. (*Id.* 45:5–15).

Response:        Undisputed that counsel to Mr. Weiss, spoke briefly at the hearing on the motion to dismiss to answer two questions from the Court: counsel listed certain cases as request from Counsel for the Weiss Companies and explained the procedural posture of the instant matter.

Dated: New York, New York
December 4, 2024

KAPLAN RICE LLP


By:    */s/ Howard Kaplan*
       Howard Kaplan
       Michelle Rice
       142 West 57th Street
       Suite 4A
       New York, New York 10019
       (212) 235-0300


OLSHAN FROME WOLOSKY LLP


By:    */s/ Brian A. Katz*
       Brian A. Katz
       Daniel M. Stone
       1325 Avenue of the Americas
       New York, New York 10019
       (212) 451-2300

*Attorneys for George Weiss*